10/22/2019  13:44    5202723851                    FIN CO APPRAISER                        PAGE  08
                                    PAML            Thu Oct 01 05:31:49 2015 Page 2 OF 4

| Finney County Health Department | | |
| 919 Zerr Rd | | |
| Garden City, KS  67846 |  PAML | (509) 755-8600 (800) 541-7891 FAX (509) 924-0002 |
| | MICROBIOLOGY ASSOCIATES | CLIENT SERVICES (509) 755-8999 FAX (509) 924-5127 |

| PATIENT NAME | PATIENT ID | DOB | SEX | AGE | PT. PHONE NO. | PT.LAB NO. |
|---|---|---|---|---|---|---|
| GUEBARA, PAUL | EE037597 | 03/18/1963 | M | 52 Y | | U68890 |
| PHYSICIAN | COLLECT DATE & TIME | | DATE OF SERVICE | | REQUISITION NO. | STATUS | PAGE |
| DOUTY, HANNAH | 09/28/2015 09:43 | | 09/28/2015 | | 11040014390026 | Final | 1 |

COMMENTS:    COLL TIME 1033 CST  M6759B29:AMY, CMPAC, CMPC, GFR, HEPACU, HPYG, LIPA, LIPID, T4, TPAHEM, TPDIF-
                    CDTR; AMY, CMPAC, CMPC, GFR, HEPACU, LIPA, LIPID, T4, TPAHEM, TPDIF- GARDEN CITY

For additional diagnostic criteria, see our Test Directory at www.paml.com

| | | Result | | | |
|---|---|---|---|---|---|
| Diagnostic Procedure | In Range | Out of Range | Units | Reference Range | Site Code |
| Amylase | 48 | | U/L | 17-121 | SK |
| Comp Metabolic Panel (no calc) | | | | | |
| Sodium | 141 | | mmol/L | 136-145 | SK |
| Potassium | 4.0 | | mmol/L | 3.5-5.1 | SK |
| Chloride | 108 | | mmol/L | 98-111 | SK |
| CO2 | 26 | | mmol/L | 20-30 | SK |
| Glucose | 97 | | mg/dL | 70-99 | SK |
| BUN | 11 | | mg/dL | 6-24 | SK |
| Creatinine | 0.86 | | mg/dL | 0.66-1.36 | SK |
| Calcium | 9.3 | | mg/dL | 8.5-10.1 | SK |
| Protein, Total | 7.8 | | g/dL | 6.4-8.2 | SK |
| Albumin | 4.2 | | g/dL | 3.4-5.3 | SK |
| Bilirubin, Total | 1.0 | | mg/dL | 0.2-1.2 | SK |
| Alkaline Phosphatase | 69 | | U/L | 20-125 | SK |
| AST | | 64  H | U/L | 7-37 | SK |
| ALT | | 88  H | U/L | 12-78 | SK |
| Anion Gap | 11 | | mmol/L | 6-18 | SK |
| CMP Calculations | | | | | |
| BUN/Creatinine Ratio (Calc) | 13.0 | | Ratio | 6-25 | SK |
| Globulin | 3.6 | | g/dL | 2.2-4.2 | SK |
| A/G Ratio | 1.2 | | Ratio | 0.8-2.0 | SK |
| Estimated GFR (Calc) | 100 | | ml/min/1.73m2 | | SK |

                    units = mL/min/1.73 m2
                    GFR results <60 for 3 months or longer  Chronic Kidney
                    Disease
                    GFR result <15 ; Kidney Failure
                    For African Americans, multiply the GFR result by 1.159
                    Formula used is CKD-EPI equation.

| Hepatitis Panel, Acute R/x | | | | | |
|---|---|---|---|---|---|
| HAV Ab, IgM | Nonreactive | | | NREA | S1 |

                    No indication of recent exposure to HAV - could still have
                    Ha-IgG which would indicate a past infection.

| HBs Ag Screen | Nonreactive | | | NREA | S1 |
| HBc Ab, IgM | Nonreactive | | | NREA | S1 |

                    No indication of HBV exposure.
                    No indication of HBV exposure.

| Hepatitis C Antibody | | Reactive | | NREA | S1 |

                    Exposure to HCV indicated  Potentially infectious.
                    Supplemental testing recommended as clinically indicated.

| Lipase | | 19  L | U/L | 22-51 | SK |
| Lipid Profile | | | | | |
| Cholesterol | 186 | | mg/dL | <200 | SK |

                    NCEP-ATP III Classifications (mg/dL):

Continued on next page

| GUEBARA, PAUL | 10/01/2015 05:31 | FFINCTF |
|---|---|---|

LAB WORK REVIEWED
BY ARNP
EXHIBIT L

10/22/2019  13:44  6202723951          FIN CO APPRAISER                        PAGE  05

| 2200_56308 | | (620) 272-3600 | LABORATORY REPORT | |
| Finney County Health Department | | | | |
| 919 Zerr Rd | | | | |
| Garden City KS 67846 | | | PAML | |
| | | | St Catherine Hospital Associates | |
| | | | 401 E Spruce , Garden City KS 67846 | |

| Patient Name | | Sex | Age | |
| GUEBARA, PAUL | | M | 54 | |

| Patient ID/Hospital ID | Patient Birth Date | Patient SSN | Patient Phone Number | Physician |
| 68890 | 3/18/1963 | | | Dowdy, Gretchen |

| Page | Requisition No. | Accession No. | Client Accession Number | Collection Date & Time | Report Date & Time | REPORT STATUS |
| 3 | 1852865 | M9206476 | | 10/2/2017  4:23 PM | 10/4/2017  6:27 PM | FINAL |

| TEST | IN RANGE | OUT OF RANGE | REFERENCE RANGE | UNITS | SITE CODE |
|------|----------|--------------|-----------------|-------|-----------|
| **Comp Metabolic Panel w/GFR (CONTINUED)** | | | | | |
| AST | 35 | | 7-37 | U/L | SK |
| ALT | 72 | | 12-78 | U/L | SK |
| Anion Gap | 8 | | 6-18 | mmol/L | SK |
| BUN/Creatinine Ratio (Calc) | 9.0 | | 6-25 | Ratio | SK |
| Globulin | 3.9 | | 2.2-4.2 | g/dL | SK |
| A/G Ratio | 1.0 | | 0.8-2.0 | Ratio | SK |
| Estimated GFR (Calc) | 97 | | | mL/min/1\ .73m2 | SK |

Reference range: >60.0

Units = mL/min/1.73 m2 FGFR results <60 for 3 months or longer:
Chronic kidney disease FGFR results <15: Kidney failure FIF African
American is indicated, calculation includes multiplier of 1.159.

| **Hepatitis Panel, Acute** | | | | | |
| HAV Ab, IgM | Nonreactive | | NREA | | N5 |

No Indication of recent exposure to HAV - could still have Ha-IgG
which would indicate past infection.

| HBs Ag Screen | Nonreactive | | NREA | | N5 |
| HBc Ab, IgM | Nonreactive | | NREA | | N5 |
| Hepatitis C Antibody | | A  Reactive | NREA | | N5 |

Retesting on a second sample is needed for the confirmatory RNA PCR
test. Notify patient for recollection if clinically indicated.

| **HIV 1/2 Ag/Ab RFLX to Supp)** | | | | | |
| HIV 1/2 Ag/Ab Combo | Non Reactive | | NR | | 01 |

**ORDERED TESTS:**

| AMY | Amylase |
| TPCBC | CBC with Plt + Diff |
| CMPD | Comp Metabolic Panel w/GFR |
| GLYCO | Glycohemoglobin |
| H2PACU | Hepatitis Panel, Acute |
| HIV12P | HIV 1/2 Ab RFLX to Supp] |
| LIPA | Lipase |
| LIPID | Lipid Profile |

>> REPORT CONTINUED ON NEXT PAGE <<

**EXHIBIT N**

# Finney County Sheriff's Office
## Inmate Request for <u>NON-EMERGENCY</u> Health Care



## *PLEASE PRINT*

Name: Paul Cucchara _____ Date: 11-7-15

DOB: 8-18-63   ID # 16788   Booking # 111961   Location: E

I request to see Jail medical staff for the following reason(s) (briefly describe the nature of the problem): (again) I was wandering cn I get a copy of my blood work results my stomache continues to hurt me was anything noticed in the scan done of my stomache

*ANSWER THE FOLLOWING*

When did this problem start: _____ Have you ever been treated for this in the past: Y N

Any other symptoms (like nausea, vomiting, fever, etc): _____

_____

Any past medical history: _____

What have you tried to alleviate this (medicine or therapies): _____

_____

Current medications: _____

If you have stitches or staples when were they put in: _____

Inmates will be assessed a co-pay charge to their commissary account regardless of their ability to pay. An inability to pay this charge will not affect access to medical care.

---

For Medical Staff use only:

Discussed scan results and blood work. Given copies of information about Hep C and hernias. M Newsome, R

Inmate: P.J. Cucharo   Date: 11/9/15

Deputy: R. Puf   Verbal Request

D 001886   Plaintiffs-

FISJ-M7-13

Finney County Sheriff's Office
## Inmate Request for <u>NON-EMERGENCY</u> Health Care

### *PLEASE PRINT*

Name: _Paul Loveberg_      Date: _11-10-17_

DOB: _3-18-63_   ID # _16788_   Booking # _11916_   Location: _E1_

I request to see Jail medical staff for the following reason(s) (briefly describe the nature of the problem): _I understand there is a cure and treatment for Hep-C so why haven't I been getting treatment. I also understand that no_

*ANSWER THE FOLLOWING* _treatment tears the body done_

When did this problem start: _2 Years_ _____ Have you ever been treated for this in the past: Y N

· Any other symptoms (like nausea, vomiting, fever, etc): _____

_____

Any past medical history: _____

What have you tried to alleviate this (medicine or therapies): _____

_____

Current medications: _____

If you have stitches or staples when were they put in: _____


Inmates will be assessed a co-pay charge to their commissary account regardless of their ability to pay. An inability to pay this charge will not affect access to medical care.

For Medical Staff use only:

|  |
|---|
|  |
|  |
|  |
|  |
|  |
|  |
|  |

Inmate: _Paul Loveberg_      Date: _11-10-17_

Deputy: _____

**D 001887**

_Plaintiff Exhibit - J_

FISJ-M7-13

St Catherine Hospital
401 E Spruce
GARDEN CITY KS 67846

Guebara, Paul
MRN: CEUL3017210, DOB: 3/18/1963, Sex: M
Visit date: 10/2/2017

## 10/02/2017 - Lab Requisition in St Catherine Hospital Laboratory
## FACESHEET (continued)

**Labs (continued)**

Ordering date: 10/02/17 1829
Authorized by: Provider Type-In
Frequency:  -
Quantity: 1

Ordering provider: Provider Type-In
Ordering mode: Standard
Class: Lab Collect
Lab status: Final result

**Specimen Information**

| ID | Type | Source | Collected By |
|---|---|---|---|
| 17SH-275C0825 | Blood | Blood, Venous | Psc Printer 10/02/17 1823 |

### HEPATITIS B SURFACE ANTIGEN - PERFORMABLE (Normal)       Resulted: 10/03/17 1336, Result status: Final result

Ordering provider: Provider Type-In 10/02/17 1829
Filed by: Lab, Background User 10/03/17 1336
Resulting lab: SAH LABORATORY

Order status: Completed
Collected by: Psc Printer 10/02/17 1823

**Components**

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| Hepatitis B Surface Antigen | Non-Reactive | Non-Reactive | — | SAHLab |

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 1230000010 - SAHLab | SAH LABORATORY | Unknown | 11600 W 2ND PL LAKEWOOD CO 80228 | 04/06/17 1805 - Present |

### HEPATITIS C ANTIBODY - PERFORMABLE FOR PANEL (Final result)

Order placed as a reflex to Hepatitis Acute Panel ordered on 10/02/17 at 1829
Ordering date: 10/02/17 1829
Authorized by: Provider Type-In
Frequency:  -
Quantity: 1

Ordering provider: Provider Type-In
Ordering mode: Standard
Class: Lab Collect
Lab status: Final result

**Specimen Information**

| ID | Type | Source | Collected By |
|---|---|---|---|
| 17SH-275C0825 | Blood | Blood, Venous | Psc Printer 10/02/17 1823 |

### HEPATITIS C ANTIBODY - PERFORMABLE FOR PANEL (Abnormal)       Resulted: 10/03/17 1407, Result status: Final result

Ordering provider: Provider Type-In 10/02/17 1829
Filed by: Lab, Background User 10/03/17 1407
Resulting lab: SAH LABORATORY

Order status: Completed
Collected by: Psc Printer 10/02/17 1823

**Components**

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| Hepatitis C IgG Ab | Reactive | Non-Reactive | A | SAHLab |

Comment:
Retesting on a second sample is needed for the confirmatory RNA PCR test. Notify patient for recollection if clinically indicated.

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 1230000010 - SAHLab | SAH LABORATORY | Unknown | 11600 W 2ND PL LAKEWOOD CO 80228 | 04/06/17 1805 - Present |

(Plaintiffs
Exhibit K)

01/07/2020   07:15   6202723606                                          PAGE   08/12

FINNEY COUNTY HEALTH DEPARTMENT

NAME  Paul Guebara                              PATIENT NUMBER  68890
DATE OF BIRTH  3/18/63

| DATE/TIME | COMMENTS |
|---|---|
| 10/15/15 | Discussed results of CT c̄ M. Newsome RN. Pt ⊕ for hiatal hernia ⊖ for mass ⊕ possible gastritis. Still on his antibiotics for H.pylori. + omeprazole. Continue on Omeprazole 20 mg PO BID then decreases to 20mg daily. RN reports he was sent to ER ā the pain + given Tramadol. He received 6 doses as scheduled but the script wasn't filled because the jail doesn't manage controlled meds. Pt may have Tylenol sparingly, since his liver enzymes are elevated, instead of Tramadol or Tylsirks. RN verbalized understanding + agreement c̄ plan of care, denies further question or concerns at this time |
| 10/20/15 | RN Michelle Newsome reports pt went to ER again for being found unconscious. Report shows all negative + reported low blood pressure when found. Unsure of cause. Dismissed with Levaquin only ∅ pain meds. Pt hasn't been taking any Tylenol, omeprazole, or HTN meds. Refusing all care. Currently not taking Levaquin. |

EXHIBIT CC

## 4.  MEDICAL CARTS

## POLICY:

It is the policy of the Jail Division of the Sheriff's Office to have medical carts that are appropriate for a jail environment and appropriately stocked for the medical care of inmates housed in the Finney County Jail.

## PROCEDURE:

## Medical Cart Information

1. All medical carts are set up approximately the same way.
   a. The first drawer will have medical supplies like a thermometer, glucose meter, lancets, band aids, cotton balls, etc.
   b. The second drawer will have all of the prescription, narcotic, and over the counter medications.
   c. The third drawer will have any extra medications (refills), blood pressure cuff, and a sharps container and some jail supplies.
   d. The fourth drawer may be used for jail supplies like toilet paper but nothing that can contaminate the cart such as nail clippers, hair clippers, clipper sanitizer, and any food items or drinks.
      i. The booking medical cart may have more jail supplies than the medical carts in the pods since the cell areas do not have places to store supplies.
   e. As you face the medical cart with the drawers in front of you on the right side of the cart will be a cubby that contains the MAR book and an expandable file containing various medical forms.  On the left side of the cart will be a tray that holds the blood pressure machine.  Also, on the left side of the booking medical cart is an additional file holding miscellaneous jail forms and inmate observation forms for inmates housed in the cell areas.
2. The medication carts are to be kept locked at all times when not in use.
3. The narcotics lock box which is built into the second drawer of each cart is to be locked at all times when not in use.

## Location of Medical Carts

1. **A, B, and C Pod's** medications and MAR books will be found in the medical carts assigned to each pod.  The Jail Deputies will be responsible for dispensing the medications for their assigned pod.
2. The **Booking and Cell Area's** medications and MAR book are located in the **"Rover"** medical cart which is kept in the booking area when not in use. The Jail Deputy assigned as the rover will be responsible for dispensing the medications for these areas.

Plaintiffs.
Exhibit - L

## 6. MEDICATIONS

### POLICY:

It is the policy of the Jail Division of the Sheriff's Office to provide a systematic way of addressing various types of medications for inmates housed in the Finney County Jail.

### PROCEDURE:

### Medication Information

1.  There are two types of medications; prescribed and over the counter.
2.  Most medications come in a bottle, box, or bubble pack.
    a.  Exceptions, for example, would be inhalers, creams, etc.
3.  Prescribed medications will have the inmate's name and directions on the label.
4.  Over the counter medications and directions for use will be listed on the inmate's MAR or standing orders.
5.  Additional medications (refills), if any, are kept in the third drawer of the medical cart.
    a.  If an inmate runs out of a medication check the third drawer. If not found contact your supervisor and send an email to the nurse including the name of the inmate, the medication name, pharmacy name and prescription number.

### Medication Storage

1.  All medications will be stored in the medical carts with the following exceptions.
    a.  Medication that the inmate is allowed to keep on their person.
        i.  Be sure these items are logged in the front of the MAR Book on the "Approved Med or Item Allowed" form to show what the inmate has in their cell.
    b.  Medication that requires special handling, for example, refrigeration, for certain types of insulin for diabetics.
        i.  In this example insulin is kept in the small refrigerator in the staff break room.
2.  Current medications will be primarily found in the second drawer of the medical cart.
3.  Depending on the amount of medications for any given housing area some of the smaller items may be kept in the first drawer.
4.  Additional medications, primarily refills, will be found in the third drawer.
5.  Medications that contain a narcotic, also known as a controlled substance, will be kept in the second drawer lock box.
6.  Prescription bottles and over the counter medications will be kept on the left side of the second drawer.
7.  Medications in a bubble pack will be kept in the center of the second drawer.
    a.  Bubble packs will be color coded and arranged by time using dividers to make it easier to locate the medication.
        i.  In addition to color coding and arranging by time an additional divider for housing area will be used in the booking medical cart.
    b.  Try to maintain this way of organization to make med pass easier on you as well as your fellow deputy.

### Over the Counter Medications

Over the counter (OTC) medications are medications that have been approved for sale to inmates regardless of whether the inmate has funds or not. All doses of OTC medications will be charged to the inmates fund account at $.69 per dose. Over the counter medications will be tracked by using the inmates fund account. Entries to the inmate's fund account will be completed as soon as possible by listing the name of the OTC medication and time given under "Purchase transaction, Description," for example; Headache-Tylenol @ 1630.

*Plaintiffs Exhibit. L-1*

**MEDICATION ADMINISTRATION RECORD**

**DIAMOND PHARMACY SERVICES**
1.800.882.6337  FAX: 724.349.4209

Oct 2015

| EFFECTIVE DATES | MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ORIGINAL ORDER / DISCONTINUE | Olanzapine 15mg 1/2 tab daily SC 2B SB | 2200 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ORIGINAL ORDER / DISCONTINUE | Lisinopril 20/25 mg 1 tab daily SC 30 | 1700 | DO NOT GIVE IF BP LESS THAN 100/70 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ORIGINAL / DISCONTINUE | Blood Pressure Prior to Lisinopril | 1700 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ORIGINAL ORDER / DISCONTINUE | Amoxicillan 500mg 2 Tabs 2x daily SC 2B DISES | 0630 1700 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ORIGINAL ORDER / DISCONTINUE | Clarithromycin 500mg 1 Tab 2x Daily SC 2B | 0630 1700 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ORIGINAL ORDER / DISCONTINUE | OMEPRAZOLE 20MG 1 TAB 2 x DAY Stock | 0630 1700 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| Initial | Signature | Initial | Signature | Initial | Signature | Initial | Signature | Initial | Signature |
|---|---|---|---|---|---|---|---|---|---|
| LN | | SH | | CG | | DR | Dree Rors | SS | Jason Shelter |
| | | SH | | | | MP | Mayken Guevara | JH | |
| A | Isabel | MM | | MM | | AW | Alex White | PD | Patric. |
| G2 | Roberto Guzman | | | PS | Par Jansen | Jc | Jocy Castrollon | | |

DATE OF BIRTH OR SOC. SEC. NO.  3-18-63  ALLERGIES  NKA

PATIENT NAME AND NUMBER  Nuebara, Paul

FACILITY  F-150

CHARTING FOR  10-1-15  THROUGH  10-31-15

**EXHIBIT F**

# MEDICATION NOTES

| Instructions: | Injection Site Codes: | Result Codes: | Non Administered Medication Reason Code |
|---|---|---|---|
| · INITIAL APPROPRIATE BOX WHEN MEDICATION OR TREATMENT IS GIVEN.<br>· CIRCLE INITIALS WHEN MEDICATION OR TREATMENT IS REFUSED.<br>· STATE REASON FOR REFUSAL UNDER MEDICATION NOTES.<br>· STATE REASON AND RESULT FOR PRN MEDICATION OR TREATMENT.<br>· INDICATE INJECTION SITE WITH APPROPRIATE CODE. | 1. ABDOMEN LEFT   5. BUTTOCKS (GLUTEUS) LEFT   9. UPPER BACK LEFT<br>2. ABDOMEN RIGHT   6. BUTTOCKS (GLUTEUS) RIGHT   10. UPPER BACK RIGHT<br>3. ARM (DELTOID) LEFT   7. THIGH (QUADRICEPS) LEFT   11. UPPER CHEST LEFT<br>4. ARM (DELTOID) RIGHT   8. THIGH (QUADRICEPS) RIGHT   12. UPPER CHEST RIGHT | A. EFFECTIVE<br>B. SLIGHTLY EFFECTIVE<br>C. INEFFECTIVE<br>D. NO EFFECT OBSERVED | 1. REFUSED BY PATIENT<br>2. PATIENT DID NOT SHOW<br>3. PATIENT NOT IN CELL<br>4. SECURITY LOCKDOWN<br>5. MEDICATION HELD (STATE REASON)<br>6. MEDICATION OUT OF STOCK |

| Date | Time | Init. | Medication - Dose | Route | Reason | Result | Date | Time | Init. | Medication - Dose | Route | Reason | Result |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1 | 0845 | MW | Amox, Clarithromycin, Omeprazole - Given @ this time | | | | 10/17 | 0540 | AC | sent to ER | | | |
| 2/1 | 1700 | PL | Blood Pressure  14/89  80 Beats | | | | 1/17 | 1700 | PbL | sent to ER | | | |
| 2/1 | 1700 | PL | Lisinopril  Refused  med | | ~~Beats~~ | | | | | Olanzapine  Omeprazole  Inmate at ER | | | |
| 1/2 | 1700 | SS | BP | | 139/91  81 Beats | | 10/18 | 2100 | hil | olanzapin | | Inmate in ER | |
| 3/2 | 1700 | SS | Lisinopril | | Refused | | 10/19 | 0900 | AC | O mepridole | | Inmate in ER | |
| 1/7 | 800 | | Lisinopril/BP | | (Refused) | | 10/17 | | | Refused All 1700 meds | | | |
| 1/9 | | | Lisinopril/BP | | Refused | | 10/18 | | ME | Olanzapine | | refused | |
| 1/8 | 1700 | | Lisinopril | | Ref | | | | ME | Omeprazole | | refused | |
| 1/7 | 1700 | | BP | | Refused | | 10/20 | 1644 | AS | BP/ lisinopril + omeprazole | | (Refused) | |
| 15 | 520 | m | BP Lisinopril | / | Refused | | | 2200 | | Olanzapine | | Refused | |
| 15 | 1630 | PbL | BP Lisinopril | | Refused | | | 0230 | | Omeprazole | | Refused | |
| 1/8 | 1700 | JW | BP / Lisinopril | | Refused | | 10/21 | 0830 | | Omeprazole | | refused | |
| 1/9 | 1700 | PbL | BP / Lisinopril | | Refused | | 10/21 | 1700 | | All meds | | refused | |
| 1/10 | 1430 | AC | BP 177/101 | | | | 10/22 | 1400 | DD | BP  145/101 | | | |
| 2/10 | 1900 | PS | Delie Barr was at St. Catherine ER at 1700 med time | | | | 10/22 | 2200 | SH | Omeprazole | | Refused | |
| 2/10 | 1900 | JS | BP | | 151/96 | | 10/23 | 0615 | SH | Omeprazole | | Refused | |
| 1/10 | 1100 | JS | meds were taken at this time | | | | 10/23 | 1715 | JW | Lisinopril, BP | | Refuse | |
| 1/6 | 0 | JW | Lisinopril | | Refused | | 10/24 | 1700 | JW | Lisinopril/BP/omeprazole | | Refused | |
| 1/12 | 2200 | | Lisinopril/BP | | Refused | | 10/25 | 1641 | JW | Lisinopril / BP | | Refused | |
| 1/3 | | | Lisinopril/BP | | (Refused) | | 10/26 | 0541 | JW | omeprazole | | refused | |
| 1/14 | 2213 | GH | Drop med on floor | | Olanzapine | | 10/25 | 1650 | AL | Refused All food meds | | meds | |
| 1/12 | 513 | AG | Lisinopril / BP | | refused | | 10/27 | 0600 | JS | omeprazole | | Refused | |
| 1/10 | 541 | AG | omeprazole | | Refused | | 6/25 | 0600 | DE | omeprazole | | Refused | |
| 1/16 | 1711 | PL | Lisinopril | | Refused | | 6/26 | 0600 | JW | omeprazole | | refused | |
| 1/16 | 1711 | PL | Blood Pressure | | Refused | | 6/27 | 1700 | JW | All meds | | refused | |
| | | | | | | | 6/28 | 0607 | MG | Omeprazole | | refused | |

EXHIBIT F

Saint Catherine Hospital

PT: GUEBARA, PAUL                           ADM: 10/17/15 0617
DOB: 03/18/1963, 52, M                      LOC: KC2A KCICU8-1 (DIS IN)
UNIT #: WM00043219                          ACCOUNT #: WA0000158726
REPORT #: 1017-0120                         Byrnes,Matthew C MD

---

HISTORY AND PHYSICAL REPORT

Signed

DATE OF ADMISSION:  10/17/2015

CHIEF COMPLAINT:  Obtundation.

HISTORY OF PRESENT ILLNESS:  The patient is a 52-year-old male who was
brought to the emergency room by the police.  He is currently incarcerated.
He was brought by two police officers who had him in cuffs.  He has been
monitored by the police since he got here and they told me that they will
monitor him continuously while he is here.  He was very lethargic and found
to have pinpoint pupils.  He was brought to the emergency room.  He is
protecting his own airway.  He was given some Narcan and did not really
respond to that.  His tox screen was basically unremarkable.  I am told that
he got some tramadol a couple weeks ago, but I cannot find any notation of
that.  He did not really come with any records.  The patient is basically
unresponsive so I cannot get any further history from him.

PAST MEDICAL HISTORY:  Unknown aside from there is a hepatitis C positive
test from a couple weeks ago.

MEDICATIONS:  Unknown.

ALLERGIES:  PENICILLIN.

PAST SURGICAL HISTORY:  Unknown.

REVIEW OF SYSTEMS:  Unobtainable.

FAMILY HISTORY:  Unknown.

SOCIAL HISTORY:  Unknown.

PHYSICAL EXAMINATION:  GENERAL:  The patient is in no acute distress.
VITAL SIGNS:  Temperature is 36, pulse is 86, respiratory rate is 16, blood
pressure is 97/54, SpO2 is 96% on room air.
EYES:  Sclerae are anicteric.  Pupils are pinpoint.
ENT:  Pinnae are normal.
LUNGS:  Respirations are clear and unlabored.
CARDIAC:  Regular.
GASTROINTESTINAL:  Soft, nondistended.

                                            FACILITY: KC

---

Signed                                      [~ rep ct labl]
HISTORY AND PHYSICAL REPORT                 Page 1 of 3

Plaintiff
Exhibit. C

PT: GUEBARA, PAUL                        ACCOUNT #: WA0000158726
REPORT #: 1017-0120                      UNIT #: WM00043219

---

NEUROLOGIC:  The patient is basically obtunded.
SKIN:  No rash or jaundice.

LABORATORY DATA:  Liver, transaminases are mildly elevated.  Creatinine is
1.12, sodium is 134. White count is 12.6, hemoglobin is 14.7.

RADIOLOGY:  Head CT was negative.

ASSESSMENT AND PLAN:
1. Acute mental status change.  I do not have a great answer for this yet.
   I think it is most likely that this is an ingestion issue.  It
   certainly looks like a narcotic ingestion.  How his opioids were
   negative on his tox screen makes me wonder if he took a narcotic that
   does not pop up on the tox screen.  Although it is peculiar that he
   would not have responded to Narcan, I am going to follow his clinical
   status.  I am also going to cover him with broadly with antibiotics.
   His lactate was 3.9.  He has known liver disease so I could boost up
   his lactate, but I am going to cover him with antibiotics in the event
   that this is sepsis.  I suppose meningitis could present this way, or
   encephalitis could present this way also.  If he does not wake up by
   tomorrow I will get a lumbar puncture.
2. Metabolic acidosis.  I will plan on following this lactate.  I am going
   to give him a fluid bolus now and recheck his lactate in about four
   hours.
3. The other consideration may be a postictal state.  It is possible he
   had an unwitnessed seizure and that would explain his lethargy now as
   well as his pinpoint pupils.  This certainly was not a witnessed
   seizure and he has not had any seizure-like activity here, but that
   would be another consideration and also would help explain the lactate.
4. Hepatitis C with likely cirrhosis.  Will just monitor this for now.
5. Hyponatremia.  This is likely related to his cirrhosis.  Will just
   trend this.
Total critical care time for the day exceeds 30 minutes.


MODL/JOB#790041/674022295

ST. CATHERINE HOSPITAL

DICTATED BY: Byrnes,Matthew C MD          D: 10/17/15 1052
                                          T: 10/17/15 1318 ZZZ
CO-SIGNER:
ELECTRONICALLY SIGNED BY: Byrnes,Matthew C MD    S: 10/22/15 1700
ELECTRONICALLY CO-SIGNED BY: S:


                                          FACILITY: KC

---

Signed                                    [~ rep ct labl]
HISTORY AND PHYSICAL REPORT               Page 2 of 3

Plaintiff
Exhibit - C

PT: GUEBARA, PAUL
REPORT #: 1017-0120

ACCOUNT #: WA0000158726
UNIT #: WM00043219

ITS DELIVER DATE/TIME: 10/17/15 1329

DISTRIBUTION LIST:
BYRNMA - Matthew C Byrnes MD
PCPNO - NoneGiven Pcp
REFENO - None G Referring
**END**

FACILITY: KC

Signed
HISTORY AND PHYSICAL REPORT

[~ rep ct _abl]
Page 3 of 3

Plaintiff
Exhibit - C

Saint Catherine Hospital

PT: GUEBARA, PAUL                          ADM: 10/17/15 0617
DOB: 03/18/1963, 52, M                     LOC: KC2A KCICU8-1 (DIS IN)
UNIT #: WM00043219                         ACCOUNT #: WA000158726
REPORT #: 1020-0010                        Byrnes,Matthew C MD

_____

DISCHARGE SUMMARY

Signed


DATE OF ADMISSION:  10/17/2015  DATE OF DISCHARGE:  10/19/2015

ADMITTING PHYSICIAN:  Matthew C. Byrnes, MD

CONSULTANTS:  None.

DISCHARGE DIAGNOSES:
1. Altered mental status.
2. Lactic acidosis.
3. Hepatitis C.
4. Hypokalemia.

HOSPITAL COURSE:  The patient is a 52-year-old male who was admitted from
the jail.  He was found unresponsive.  He was seen in the emergency room.
He had a negative head CT.  He had mildly low blood pressure.  He was given
some fluid.  He was never febrile, but his white count was mildly elevated
at initially 12.6 then 14.  It was 9.4 the day of discharge.  I placed him
on broad-spectrum antibiotics.  I got blood cultures which were negative.
His tox screen was negative.

The following morning, he was awake but it took a little while for his
lactate to clear.  His initial lactate was 3.93.  Five hours later, it was
still 3, and the following morning it was 1.28.  It was unclear what the
cause of the hyperlactatemia was.  I got a lumbar puncture which was
basically unremarkable.  There was very mild elevation in the white count
and there was some blood in it, but it was a very difficult tap.  There were
no symptoms of a subarachnoid bleed.  The patient never complained of any
headache at all.  He was not complaining of meningitis symptoms.  The
indications for the lumbar puncture was lethargy.  The day of discharge, he
was actually fully awake and conversant and doing fine.  It is possible that
the patient was just postictal and he had an unwitnessed seizure.  That
would also explain the elevated lactate.  At the time of discharge, I do not
have the EEG results but the EEG has been conducted.  I will get those
results in a couple days.  He has not shown me any seizure activity at all
since he has been in the hospital.  Given that he seems to be basically back
to baseline, I am going to discharge him back to the jail.  Given that his
white count was elevated on admission and that I do not have a good
explanation for all of this, I am going to send him out on 7 days worth of
Levaquin.

                                        FACILITY: KC

_____

Signed                                    [~ rep ct labl]
DISCHARGE SUMMARY                         Page 1 of 2

*Plaintiff*
*Exhibit—C-1*

```
PT: GUEBARA, PAUL                      ACCOUNT #: WA0000158726
REPORT #: 1020-0010                    UNIT #: WM00043219
```

MODL/JOB#792865/674211195

ST. CATHERINE HOSPITAL

```
DICTATED BY: Byrnes,Matthew C MD           D: 10/19/15 1427
                                           T: 10/20/15 0529 ZZZ
CO-SIGNER:
ELECTRONICALLY SIGNED BY: Byrnes,Matthew C MD    S: 10/22/15 1701
ELECTRONICALLY CO-SIGNED BY:  S:
```

ITS DELIVER DATE/TIME: 10/20/15 0536

```
DISTRIBUTION LIST:
BYRNMA - Matthew C Byrnes MD
PCPNO - NoneGiven Pcp
REFENO - None G Referring
**END**
```

FACILITY: KC

Signed
DISCHARGE SUMMARY

[~ rep ct labl]
Page 2 of 2

*Plaintiffs*
*Exhibit - C - 1*

Saint Catherine Hospital

PT: GUEBARA, PAUL                          ADM: 10/17/15 0617
DOB: 03/18/1963, 52, M                     LOC: KC2A KCICU8-1 (DIS IN)
UNIT #: WM00043219                         ACCOUNT #: WA0000158726
REPORT #: 1018-0077                        Byrnes,Matthew C MD

---

PROGRESS NOTE

Signed


DATE:  10/18/2015

INTERVAL HISTORY:  I am evaluating patient on October 18, 2015.  The
patient's mental status is pretty difficult to evaluate.  The nurse did put
some cold water to wash something off of the patient yesterday and he
immediately woke up and told her not to put cold water on him.  Aside from
that, he would not wake up when she was stimulating him.  Patient's lactate
came back elevated yesterday.  I followed it up a few hours later and was
still elevated.  This morning, it was normal.  Past medical, family, and
social history are unchanged although I still do not know much about it.

PHYSICAL EXAMINATION:  GENERAL:  Patient is in no acute distress.
VITALS:  Temperature is 36.8, pulse is 82, respiratory rate is 13, blood
pressure is 115/64, SpO2 is 94% on room air.
EYES:  Sclerae anicteric pupils.  Equal.  They are still small.
EARS, NOSE, AND THROAT:  Pinnae are normal.
LUNGS:  Respirations are clear and unlabored.
CARDIAC:  Regular.
GI:  Soft, nondistended.
NEUROLOGIC:  Patient is still quite lethargic.  He would not wake up when I
was in the room but he was waking up and speaking to the nurse earlier.

LABORATORY DATA:  The creatinine is 1.14, same as it was yesterday.
Bilirubin is 1.3, was 0.8 yesterday.  Lactate was 3.93, 3.01, and 1.28 this
morning.  White count is 14, hemoglobin is 13.8.

ASSESSMENT/PLAN:
1. Altered mental status.  The fact the patient has woken some times would
   suggest some element of malingering.  However, there are some lab
   issues that I just cannot account for.  I cannot account for this
   elevated lactate.  It is possible that was somewhat driven by his
   rather by his cirrhosis from his hepatitis C.  It is possible the
   patient had a seizure and that bumped up the lactate.  It is possible
   he has a CNS infection.  I am going to get an MRI of his brain and an
   EEG and a lumbar puncture.  He is waking up, is still fairly lethargic,
   and his white count has also gone up come and I do not have a good
   explanation for that.
2. Chronic hepatitis with likely some element of cirrhosis.  His ammonia
   was normal yesterday; will just follow this.

FACILITY: KC

---

Signed                                    [~ rep ct labl]
PROGRESS NOTE                             Page 1 of 2

*Plaintiff*
*Exhib 4 -C-2*

PT: GUEBARA, PAUL
REPORT #: 1018-0077

ACCOUNT #: WA0000158726
UNIT #: WM00043219

MODL/JOB#791107/674086727

ST. CATHERINE HOSPITAL

DICTATED BY: Byrnes,Matthew C MD

CO-SIGNER:
ELECTRONICALLY SIGNED BY: Byrnes,Matthew C MD
ELECTRONICALLY CO-SIGNED BY:  S:

D: 10/18/15 1135
T: 10/18/15 1312 ZZZ

S: 10/22/15 1701

ITS DELIVER DATE/TIME: 10/18/15 1317

DISTRIBUTION LIST:
BYRNMA - Matthew C Byrnes MD
PCPNO - NoneGiven Pcp
**END**

FACILITY: KC

Signed
PROGRESS NOTE

[~ rep ct labl]
Page 2 of 2

Plaintiff
Exhibit-C-2

D 001322

Saint Catherine Hospital

PT: GUEBARA, PAUL                          ADM: 10/17/15 0617
DOB: 03/18/1963, 52, M                     LOC: KC2A KCICU8-1 (DIS IN)
UNIT #: WM00043219                         ACCOUNT #: WA0000158726
REPORT #: 1019-0127                        Byrnes,Matthew C MD

---

PROGRESS NOTE

Signed


DATE:  10/19/2015

The patient has awakened and seems to be alert and conversing appropriately
this morning.  No nausea or vomiting.  No other specific complaints.

Past medical, family and social history are unchanged.

REVIEW OF SYSTEMS:  A 10-point review of systems is negative outside of
history of present illness.

PHYSICAL EXAMINATION:  GENERAL:  The patient is in no acute distress.
VITAL SIGNS:  Temperature is 36.6, pulse is 76, respiratory rate is 12,
blood pressure 145/80, SpO2 is 94% on room air.
EYES:  Sclerae anicteric.  Pupils are equal.
ENT:  Normal.
LUNGS:  Respirations are clear and unlabored.
CARDIOVASCULAR:  Regular.
GASTROINTESTINAL:  Soft, nondistended.
NEUROLOGIC:  Patient is awake and alert.
SKIN:  No rashes or jaundice.

LABORATORY DATA:  The LP showed a very small number of white cells, which
mostly disappeared in the second tube.  It showed some red cells which also
dissipated in the second tube.  Apparently it was a very difficult lumbar
puncture.  Glucose and protein were normal.  White count is 9.4, hemoglobin
is 14, potassium is 3.4.

ASSESSMENT/PLAN:  Mental status changes.  This is basically back to normal.
I am not sure that these studies give me a great answer.  His MRI with
contrast was negative.  I am waiting on the MRA results.  I am also going to
get the EEG done today.  Pelvis looks okay.  I think he can go back to jail.
It still raises a question as to whether not he had an unwitnessed seizure
but a first-time seizure would not need specific anti-epileptics anyway in
the absence of any other inciting factors.  I don't think that the lumbar
puncture represents a bleed given his imaging results.  I think it was just
secondary to traumatic lumbar puncture, in light of the negative initial CT
as well as the MRA.


                                           FACILITY: KC

---

Signed                                     [~ rep ct labl]
PROGRESS NOTE                              Page 1 of 2

*Plaintiff*
*Exhibit -C-3*

D 001323

PT: GUEBARA, PAUL
REPORT #: 1019-0127

ACCOUNT #: WA0000158726
UNIT #: WM00043219

MODL/JOB#792543/674190671

ST. CATHERINE HOSPITAL

DICTATED BY: Byrnes,Matthew C MD

CO-SIGNER:
ELECTRONICALLY SIGNED BY: Byrnes,Matthew C MD
ELECTRONICALLY CO-SIGNED BY:  S:

D: 10/19/15 1245
T: 10/19/15 1324 ZZZ

S: 10/22/15 1701

ITS DELIVER DATE/TIME: 10/19/15 1332

DISTRIBUTION LIST:
BYRNMA - Matthew C Byrnes MD
PCPNO - NoneGiven Pcp
**END**

FACILITY: KC

Signed
PROGRESS NOTE

[~ rep ct labl]
Page 2 of 2

Plaintiffs
Exhib.4.-C-3

Feb 27 20,05:28p                                                                                    p.2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA                    )
                    Plaintiff,  )
v                               )            Case No. 5:19-CV-03025-SAC
                                )
KEVEN BASCUE;                   )
JOHN ANDERSON;                  )
KYLE LAWSON;                    )
MICHELLE NEWSOME;               )
JEFF OREBAUGH and               )
MARK WELSH,                     )
                    Defendants, )
_____     )

## AFFIDAVIT OF MICHELLE NEWSOME

STATE OF KANSAS         )
                        ) ss:
COUNTY OF FINNEY        )

Michelle Newsome , of lawful age, first duly affirming, under penalty of perjury, deposes and states as follows:

1.     I am  Registered Nurse.  My scope of practice does not permit me to diagnose or to prescribe treatment.

2.     I was previously employed by the Finney County Health Department.

3.     As a nurse for the Finney County Health Department, I provided health care to inmates in the Finney County jail as directed by healthcare providers licensed to diagnose and prescribe treatment.

4.     One of the inmates for whom I provided care was Paul Guebara.

5.     During his stay at the Finney County Jail, that began in 2015, Mr. Guebara tested positive for Hepatitis C.   This appeared to be a chronic condition with no significant symptoms not requiring immediate treatment.  People with chronic Hepatitis C can live for years without becoming symptomatic.  Mr. Guebara's healthcare providers were aware of his Hepatitis.  At no time was I ever advised by any of them that he was in need of immediate treatment for hepatitis.  At no time did any of them prescribe any treatment for the hepatitis.

Page 1 of 2

14

Plaintiff Exhibit 1

6.   When Mr. Guebara requested treatment for his Hepatitis C, it was determined that his condition was not serious at that time and did not require immediate treatment.

7.   It was known that Mr. Guebara's stay at the Finney County jail was temporary and that the relatively new treatment to cure the chronic condition would be available to him at the KDOC, when he was transferred there.

8.   At no time did any health care provider indicate or advise that immediate treatment for the Hepatitis C was necessary or could not await transfer to the KDOC.

9.   Part of job was to maintain the medical files of inmates.  This includes records generated in the jail as well as medical reports provided to the jail by outsider providers.

10.  The documents attached hereto as Exhibits I, P, Q, R, S, T, U, FF, GG, and HH are true and correct copies of forms received or made,  and maintained,  by me in the ordinary course of business.

11.  The documents attached hereto as Exhibits  J, K, V, X and Z  are true and correct copies of  reports received from healthcare providers  concerning Mr. Guebara that were provided to me and maintained  in the ordinary course of business.

Michelle Newsome, RN

Subscribed and sworn to before me this 27 day of February , 2020.

SHEALENE SAUER
Notary Public – State of Kansas
My Appt. Exp 11-18-20

Notary Public

My Commission Expires: 11-18-20

Page 2 of 2

15

Plaintiff Exhibit 4. 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA                          )
                    Plaintiff,        )
                                      )
v                                     )        Case No. 5:19-CV-03025-JAR-KGG·
                                      )
KEVIN BASCUE                          )
JOHN ANDERSON                         )
KYLE LAWSON                           )
MICHELLE NEWSOME                      )
JEFF OREBAUGH and                     )
MARK WELSH,                           )
                    Defendants,       )
_____ )

## MICHELLE NEWSOME'S SUPPLEMENTAL RESPONSE
## TO INTERROGATORIES

Pursuant to K.S.A. 60-233, Michelle Newsome, submits the following response to the

interrogatory 9:

9.(Q) WHO told you to tell guebara finney county would not provide Guebara with treatment

because the county would not pay for the treatment?

Objection. This request is vague, ambiguous, misleading and assumes false facts.

Guebara was provided with a medical treatment for a variety of complaints. None of

Plaintiff's healthcare providers recommend the specific treatment for Hepatitis C that Plaintiff

wanted. One expressly stated: "Will just monitor this for now." Ms. Newsome discussed it with

APRN Gretchen Dowdy, who advised that the condition was not symptomatic and he was not in

need of immediate treatment. It was also known that the treatment should not be interrupted if

started and would be available to Plaintiff upon transfer to the KDOC. Ms. Newsome also talked

*Exhibit-1-2*
*Plaintiffs*

to Kyle Lawson and Mark Welch. Because there was no immediate concern and the treatment would

be available upon transfer without interruption it was not started at the Finney County Jail.

WATKINS CALCARA, CHTD.

/s/ ALLEN G. GLENDENNING
Allen G. Glendenning, #12187
1321 Main - Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
(620) 792-8231  Fax (620) 792-2775
aglenden@wcrf.com
Attorneys for Defendants Kevin Bascue, Mark
Welch, Jeff Orabaugh, Kyle Lawson and
Michelle Newsome

Dated this 10th day of December, 2021.

Exhibit -1-d
Plaintiffs.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA
        plaintiff

vs.                                     Csae No. 19-3025-SAC

Finney County Sheriffs Office
Keven Bascue
Kyle Lawson
Jeff Orebaugh
Mark welsh
Michelle Newsome  et al.
        defendants

MICHELLE NEWSOMES'S
RESPONSES TO
INTERROGATORIES
PURSUANT TO 60-233

Interrogatories from plaintiff Paul Guebara plaintiff for defendant Michelle

Newsome, and response should be in writing and under oath as required by

60-233 and be served on Paul Guebara at the address listed.

No.1.(Q) You were in 2015 employed by the finney county health department

assigned to the jail and were acting as liaison between the jail and health

department and other medical providers in the community. is this correct?

RESPONSE;  Yes.


No.2.(Q) As The only nurse at the jail you are responsible for setting up all

medical appointments? andthat would include appointments to the finney county

health department, is this correct?

RESPONSE;  No.


No.3(Q)  AS A NURSE .  do you know the effects untreated Hepititis-C causes

the human liver?

RESPONSE;   I am aware of effects that might be caused by long term untreated Hep-C.


No.4(Q) From 2015 to 2019 did you ever make an appointment for guebara to

*Plaintiff Exhibit 4*
*1-B.*

to be seen specifically for hep-c as guebara was requesting ?

RESPONSE;    Multiple appointments were made with multiple providers, some of which included
              discussion of Hep-C.

No.5(Q). how did you come to the conlusion that guebaras hep-c  was not signif-......
icant enough to require treatment?

RESPONSE;   I followed the advice and recommendations of the providers, none of whom recomme
              any treatment while Guebara was at the Finney County Jail. Treatment was not clinic
              indicated.

No.6(Q) who determined that Guebaras condition was not serious enough to
require treatment? can you provide the names of these doctors?

RESPONSE;    .   See Plaintiff's medical records.

No. 7(Q) HOW was this determination arived to ? what medical process was done
specifically on the issue of hep-c to come to the conclusion that guebara
would be denied treatment?

RESPONSE;    See responses to numbers 5 and 6 above.

No.8(Q) DO YOU know how long it takes to complete the hep-c treatment ?Guebara
was in county jail 4 years was this not enough time to be treated?

RESPONSE;   Objection. This request is vague and ambiguous.
                                              /s/Allen G. Glendenning

No.9(Q) WHO told you to tell guebara finney county would not provide Guebara
with treatment because the county would not pay for the treatment?
RESPONSE;

....... .. michelle newsome

Plaintiffs Exhibit 1-B.

No10(Q) Do you Michelle Newsome consider cirrhosis of the liver  a serious
condition? and is that condition a perminate damage to the liver?

RESPONSE;   Cirrhosis can be a serious condition but is not necessarily a serious condition requiring
immediate treatment in the absence of clinical indications.

NO 11(Q)  using the same experties that you determined  that Guebara wasnt
ill enough for treatment, do you believe that not being treated  for over
4 years that it contributed to the perminate liver damage that causes plaintiff
pain still today?

RESONSE;   No.

RESPECTFULLY
PAUL GUEBARA#40223
E,C,F, PO BOX 107
ELLSWORTH KANSAS 67439

*Plaintiff Exhibit
1-13*

VERIFICATION

STATE OF KANSAS }

COUNTY OF _____ }   ss

Michelle Newsome being first sworn on your oath states she is a defendant in
this action. and has read the following interrogatories and answers therein
and states the answers are true and correct.

_Michelle Newsome_
Michelle Newsome

subscribed and sworn to before me this **9** day of **September** 2021

My appointment expires: **10-11-23**

_Shealene Foreman_
Notary Public

```
SHEALENE FOREMAN
NOTARY PUBLIC
STATE OF KANSAS
```

Plaintiff Exhibit
1 -B.

# FINNEY COUNTY JAIL
## INMATE COMMUNICATION FORM

TO: _Mark Welsh. administration.      Legal purpose_

THIS IS A: [X] GRIEVANCE  [ ] APPEAL  [ ] REQUEST  [ ] OTHER

Im writing this Grievence to inform you. you are violating my Constitutional Rights in having Deputys take my legal Papers. as Im working on my legal Case. you are hindering my Judicial Process to the courts!

also taking my medical persribed Glasses. Your policy doesn't allow reading Glasses to be brought to the Jail. So Clearly my Glasses are medical. my perscription was given to me in lansing central Prison. my # is 40223. its not hard to Check!      You all are treating my medical needs with delibrate indifference. denying me medical treatment for hep C and Stomuch element. and your violating my constitutional rights. there is no reson for this treatment. and denying me my bible.

INMATE NAME: _Paul Guebara_          B#: _18914_    DATE: _1-10-18_

JAIL DEPUTY RECEIVING FORM: _J Welsh_          DATE: _1-10-18_

JAIL DEPUTY/RECIPIENT'S RESPONSE: _Will forward_

_____See back of ICF._

JAIL DEPUTY/RECIPIENT: _____   DATE: 01/17/18

REVIEWED BY RECIPIENT: _____   DATE: _____

ORIGINAL – FILE

FISJ-J4-12 02

Plaintiff's
Exhibit-O

D 001883

Mr. Guebara,

You do have access to your legal materials/bible. While you might not like the way we are handling your access to your legal materials/bible you do have access. Now you might be wondering why it has to be this way? Let me give you an example; Very recently you were found to be in possession of another inmate's legal materials which you should not have had in your possession. You put yourself in this position and therefore, we have to take the necessary and appropriate actions to protect the safety and security of the jail operations.

Regarding your glasses. Here again your actions caused the delay. We needed information to verify this and you were not forthcoming with the information we needed and add to this the rather long time it takes for KDOC to respond even longer when it's medically related given the HIPPA law. Once the verification was made you were given your glasses.

Finally, the issue of your medical needs. Anything that has immediate life threatening implications we address right away. You have not had any. When you do make requests for treatment and we respond we run into the problem of your lack of cooperation and non-compliance which hinders any treatment that we attempt. For example; High blood pressure. How many times have we attempted to get that under control only to have you refuse the medication? Then the nurse tries to get you on a different medication and you refuse that. What about the efforts to get a stool sample and your refusal and non-compliance? When you refuse treatment and are non-compliant then you, not staff, are hindering any treatment that may be afforded to you.

Plaintiffs
Exhibit - O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA
     plaintiff

vs.

                                        Case No;19-3025-SAC

Finney county Seriffs office

Keven Bascue
Kyle Lawson
Jeff Orebaugh
Mark Welsh
Michelle Newsom et al.        MARK WELCH'S
     Defendants               RESPONSE TO
                              INTERROGATORIES
                              PURSUANT TO 60-233

Interrogatories from paul guebara plaintiff for defendant Mark

Mark Welsh, and response should be in writing and under oath as required

by 60-233 and be served on Paul Guebara at the address listed.

No.1(Q). Are you Mark Welsh aware of the effects on the human liver of UNTREATED

Hepititis-C ?

RESPONSE; No.

No.2.(Q).Mark Welsh did plaintiff Paul guebara ever send you an I.C.F. asking

you as administrater of the jail over medical. to please intervean on his behalf

on the issue of HEP_C treatment?

RESPONSE; Objection. This request is vague and ambiguous.

                         /s/Allen G. Glendenning
          I received one ICF asserting a variety of complaints including an allegation of denial of
          medical treatment.

No.3(Q) Mark WELSH were you invalved  in the determination that plaintiffs

hep-c was not gonna be treated due to cost of treatment?

RESPONSE; No.

*Plaintiffs.*
*O-1*

No.4(Q) Do you mark welsh as administrater and policy maker have in place a policy on treating or providing medical treatment for chronic illness inmates who are brought to jail?

RESPONSE; See the Finney County Jail Medical Policies.


No.5(Q) Are you able to say how many I.C.F. and medical request plaintiff sent in requesting treatment for Hep-C?

RESPONSE;   See response to RFP # 3.


No. 6(Q) From 2015 afterdiagnosed to 2019 when guebara was sent to doc was guebara ever treated for Hep-C ?

RESPONSE;   Yes.


No7.(Q) Were Guebaras request for treatment Ignored by you and medical Staff?

RESPONSE;  No.


No.8(Q) Did Guebara complain of pain and repeatedly send forms of request for treatment?

RESPONSE;  Yes. Plaintiff made many and varied complaints and often refused the treatment provided and at times refused to be seen by providers.

No9(Q) What is your role as far as medical goes? and  dose that include the power to denie the approval of treatment due to expense?

RESPONSE;   I have no role. I am no longer employed by the Finney County Sheriff. I was previously the Jail administrator. I was required to, and did, follow the law and jail policy concerning provision of medical care.

RESPECTFULLY
Paul Guebara#40223
E.C.F.PO BOX 107
ELLSWORTH KANASA 67439

*Plaintiffs
O1*

guebara v. mark welsh

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA                 )
        Plaintiff            )
                             )
Vs.                          )
                             )                Case No. ₤5:19-CV-03025
KEVIN BASCUE                 )
KYLE LAWSON                  )
MICHELLE NEWSOM              )
JEFF OREBAUGH                )
MARK WELSH   ET.AL.)
        Defendants           )

SECOND REQUEST FOR INTERROGATORIES

PURSUANT TO Fed.R.Civ.P.26(e) plaintiff  submits these interrogatoriesto the
following defendants, Kevin Bascue, Mark Welsh, Kyle Lawson, and Michelle Newsome
1st.  I will state that  Mark Welsh and Kyle Lawson, did not respond to interrogato-
ries under OATH as required, never the less.for the purpose of these interrogatories
are a result to the 1st,response.

Mark Welsh;

(1)Your response to interrogatories Number 6. you stated Yes, while you didnt respond
   under oath, as required. provide exactly what treatment who performed the treatment
   and what Date treatment was provided. that supports your claim.

   do you have such information??  Objection. This request contains false assertions.

                                             /s/ ALLEN GLENDENNING

(2)Did did guebara ever REFUSE treament for HEPATITIS _C ?

   If you respond Yes ,Provide Plaintiff that document..
   Mr. Guebara refused medical treatment and advice. I do not know what affect that refusal had on the diagnosis or treatment of Hep-C

(3) Are you aware that your claim that I was Provided treatment is contrary to
    other defendants , who did file respnse under oath,??
    Objection, this request is vague, ambiguous, argumentative and includes false premises.    /s/ ALLEN GLENDENNING

                         Respectfully
                         Paul Guebara
                         PAUL GUEBARA
                         E.C.F. PO BOX 107
                         Ellsworth Kansas 67439

                                      Plaintiffs
                                      O-2

mark welsh date 10-1-21

VERIFICATION

STATE OF KANSAS )
                ) ss:
COUNTY OF _____ )

Mark welsh being first sworn upon your oath states he is a defendant in this

action. and has read the following interrogatories and answers therein and

states the answers are true and correct.

Mark Welsh

subscribed and sworn to before me this 20 day of Oct 2021

My appointment expires:

11-23-2024

Notary Public

LISA WAGNER
Notary Public-State of Kansas
My Appt. Expires 11-23-2024

Plcuttffs
C-2.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA                        )
                    Plaintiff,      )
v                                   )        Case No. 5:19-CV-03025-SAC
                                    )
KEVEN BASCUE;                       )
JOHN ANDERSON;                      )
KYLE LAWSON;                        )
MICHELLE NEWSOME;                   )
JEFF OREBAUGH and                   )
MARK WELSH,                         )
                    Defendants,     )
————————————————————                )

## AFFIDAVIT OF KYLE LAWSON

STATE OF KANSAS        )
                       ) ss:
COUNTY OF FINNEY       )

Kyle Lawson, of lawful age, first duly affirming, under penalty of perjury, deposes and states as follows:

1.    I am a Lieutenant in the Finney County Jail.

2.    I was employed in the Finney County Jail when Paul Guebara was an inmate in 2015-2019.

3.    Because of Mr. Guebara's criminal history, current charges, threats of suicide and possible gang affiliations, he was considered to be high risk during transports to outside medical facilities. Despite the risk, Mr Guebara was transported to medical facilities for examination and treatment of his several medical conditions.

4.    During the time Mr. Guebara was in the Finney County Jail, he regularly refused medical treatment that had been prescribed by his healthcare providers.  .

5.    During his stay at the Finney County Jail, Mr. Guebara repeatedly threatened suicide. Often this appeared to be an attempt to manipulate jail staff into moving him.

6.    At no time did I ever refuse to provide any treatment prescribed by Mr. Guebara's

healthcare providers.  Specifically I did not refuse to provide treatment for hepatitis.

7.    At no time was I ever aware of any health care provider indicating that immediate treatment for the hepatitis  was necessary.

8.    Part of my job is to maintain the jail records of inmates.  The documents attached hereto as Exhibits B, C, D, E, G, and H are true and correct copies of records made and maintained in the ordinary course of business

Kyle Lawson

Subscribed and sworn to before me this 26th day of February, 2020.

NOTARY PUBLIC – State of Kansas
TRACI L. ROMERO
My Appt. Expires: 10-22-22

Notary Public

My Commission Expires: 10-22-22

Page 2 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA
    plaintiff

Case No.19-3025-SAC

vs.

Finney county sheriffs office
Keven Bascue
Kyle Lawson
Jeff Orebaugh
Mark Welsh
Michelle Newsome
    defendants

KYLE LAWSON'S
RESPONSE TO
INTERROGATOIES
PURSUANT TO 60-233

Interrogatories from plaintiff Paul Guebara for defendant Kyle

Lawson, And response should be in writing and under oath as required

by 60-233 and be served on Paul Guebara at the address listed.

No.1.(Q) Do you kyle lawson know the effect hep-c has on the liver?

RESPONSE:  I no that Hep-C is a liver disease.  I do not know what effects it has on any particular
person's liver at any particular time.


No.2(Q) do jail medical staff have autonomy over the care and treat-

ment of inmates medical needs?

RESPONSE:  This request is vague and ambiguous.  As defendant understands it, the answer is yes.
However, all staff are required to follow the law concerning providing medical care.


No.3(Q) Do jail medical staff have the right denie inmates medical

treatment due to the cost of treatment?

RESPONSE:  This request is vague and ambiguous.  As defendant understands the question, the
answer is no. Jail medical staff are required to follow the law and policy concerning the
provision of medical care.


No.4(Q) How many inmate communication forms did you kyle Lawson

respond to from Guebara concerning the request for medical treatment

not addressed to you ? and did your intercepting of those request

pervent guebaras medical request to go unanswered?

RESPONSE: This request is vague and ambiguous but as defendant understands it, the answer is no.

No.5(Q) Did Guebara inform you kyle lawson the effects of untreated Hep-C was Having on his liver. and asked you to help him get treated?

RESPONSE: No, not that I recall.

No.6(Q) Did you lawson respond to guebaras pleas for help with "no more ICFs will be excepted on this issue?

RESPONSE: No.

No.7(Q) From the time guebara was diagnosed with hep-c by the finney county health department in 2015 to 2019 did Guebara get any treatment for hep-c?

RESPONSE: Yes.

No.8(Q) Did you lawson tell newsome guebara would not be treated for hep-c due to it being to expensive and could be treated in prison?

RESPONSE: No.

No.9(Q) Is there a policy providing treatment for chronic illness to those who come to finney county jail?

RESPONSE: Yes.

Paul Guebara#40223
E.C.F. PO box 107
ELLSWORTH KANSAS 67439

guebara v. kyle lawson

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA )
    Plaintiff )
 )
Vs. )
 )
KEVIN BASCUE )                    Case No. #5:19-CV-03025
KYLE LAWSON )
MICHELLE NEWSOM )
JEFF OREBAUGH )
MARK WELSH   ET.AL. )
_____ Defendants )

SECOND

REQUEST FOR INTERROGATORIES

Pursuant to Fed.R.Civ.P.26(e) Plaintiff submittes these iterrogatories to the following defendants, KEVIN BASCUE, KYLE LAWSON, MARK WELSH AND MICHELLE NEWSOME. I will Note that Kyle Lawson & Mark Welsh dod NOT respond to first set of interrogatories "under oath" As reqiurèd

KYLE LAWSON:

(1) Do you Kyle Lawson have a I.C.F. form from Paul guebara declaring a hunger strike due to the way he was being treated. ?  I remind you your answers should be made under oath.!

Objection. This request is vague, ambiguous, overbroad and not proportional to the needs of the case. The I.C.F's submitted by Paul Guebara speak for themselves.                    /s/ALLEN G. GLENDENNING

(2)  Because I believe your responses a SCIENTER in nature. I must ask again you stated "YES" to question (7) Do you Have Evidence that your with-holding from plaintiff that supports this claim?  Please foreward documents of such treatment.

Objection. This request is vague and ambiguous. See medical records produced.

                    /s/ALLEN G. GLENDENNING

(3) You responded "YES" to question (9) will you please provide that policy to the plaintiff? CAUSE that is Not Reflected in the jail Hand book. Are you Withholding this policy from plaintiff.?

Objection, this request is vague, ambiguous, argumentative and includes  false premises.

(4) Does "IMMEDIATE TREATMENT" nedd to be required to be treated for a chronic illness? and is that according to policy ? This requires 2 answers.

Objection, this request is compound, vague, ambiguous, argumentative and includes.

                    /s/ALLEN G. GLENDENNING

(5) Did Guebara ever refuse medical Treatment for HEP_C.? if the answer is yes please provide that documentation. to support your claim.

( Mr. Guebara refused medical treatment and advice. I do not know what affect that refusal had on the diagnosis or treatment of Hep-C.

1

Kyle Lawson  date 10-1-2021

(6) Mr.Lawson you do understand the response you now give  to question (7) is contrary to your statement in your affidavit ?

  No. It is not inconsistent.

(7) Can you provide the name of the doctor who provided treatment for HEP_C ?

  See medical records previously produced.

Please respond under oath. and I would say you need to research the I.C.Fs on file . before giving another false statement.

        RESPECTFULLY

        PAUL GUEBARA
        E.C.F. PO BOX 107
        Ellsworth Kansas
          67439

Kyle Lawson date 10-1-2021

VERIFICATION

STATE OF KANSAS  )
                 )  ss:
COUNTY OF _____ )

Kyle Lawson  being first sworn on your oath states he is a defendant in this action, and has read the following interrogatories and answers therein and states the answers are true and correct.

_____
Kyle Lawson

subscribed and sworn to before me this 19th day of Oct 2021

My appoinment expires:

_____
Notary Public

NOTARY PUBLIC-State of Kansas
**Robert C Guzman**
My Appt. Exp 09/21/22

3

Kyle Lawson Date 10-1-2021

*Supporting*
*#15*

# FINNEY COUNTY JAIL
## INMATE COMMUNICATION FORM



TO: _Lt Lawson and or admin welsh.      Legal purpose._

THIS IS A: [ ] GRIEVANCE  [ ] APPEAL  [X] REQUEST  [ ] OTHER

I went to Dr few yet another consultation. I should not be charged for this visit. he stated infont of corp sterling that we "already had this consultation 3 months ago." I understand I have a False alligation of escape Risk which is affecting my medical treatment without (due process) Bottom line. Im gonna know insdvance when the porcedure is. Cause I have to take laxitive day before! I have been on PAIN for 2½ years.' abd/e yu all Continue to find ways to denie my treatment! the Dr. said & your looking for a different answer than the one he has already given yu all. that yu all might want to take me somewhere else for a different plan! I say put me in Booking 4 days before and turn off the Phone, end of ISSUE! and let me get the perscribed treatment.   Thank you!

INMATE NAME: _Paul Gutierre_     B#: _117916_   DATE: _9-18-18_

JAIL DEPUTY RECEIVING FORM: _OX_ _____ DATE: _____

JAIL DEPUTY/RECIPIENT'S RESPONSE: _will Forward_
_Reviewed_

JAIL DEPUTY/RECIPIENT: _____  DATE: _____

REVIEWED BY RECIPIENT: _Lt _____   DATE: _9/19/18_

ORIGINAL – FILE

_Exhibit. B-1_

FISJ-J4-12/02

*answered by Lt Lawson.*
*Refer to Exhibit 2-A*
*"retaliation."*

*Exhibit*

## FINNEY COUNTY JAIL 8-A
## INMATE COMMUNICATION FORM

*I have been threatend to disciplinary action if I continue to write grievances, retaliation or the use of Grievance's is Prohibited by law!*

TO: _To John Andrews undersheriff.   Legal nurse._

THIS IS A: [X] GRIEVANCE  [ ] APPEAL  [ ] REQUEST  [ ] OTHER

it has been brought to my attention that Lt Lawson has given orders not to accept any more Grievance's from me concerning certain Issue's as I attempt to follow the Chain of Command. iF it's true Lt. Lawson is High Jacking the Grievance Process thereby making it impossible for me to exhust my administrative remedies and obtain "Discovery" to Issue's in my lawsuit. I have a right to know why I'm being treated this way and why he violated my constitutional rights under K.S.A. 19-805 west sheriff is responsible for conduct of undersheriff's and deputies Right now the Sheriff is allowing Lt Lawson to High Jack the Grievance process! and act as a Final decision maker over policy! I am trying to follow Chain of Command. as dictated by policy! Please respond and Correct and inforce Policy Thankyou

INMATE NAME: _Paul Cowdery_  B#: _117916_  DATE: _2-28-19_

JAIL DEPUTY RECEIVING FORM: _____  DATE: _____

JAIL DEPUTY/RECIPIENT'S RESPONSE: _Lt Barnard_
There have been no such orders. We Do not continuously take ICF's regarding the same issues, we do not deny grievances unless they have been properly addressed. If you have been "threatened disciplinary action" if you turn in ICF's why then haven't you received any disciplinary actions for the 4 grievances you have turned in this week. You sent one in to me which I answered.

JAIL DEPUTY/RECIPIENT: _____  DATE: _____

REVIEWED BY RECIPIENT: _____  DATE: _____
Capt Orebaugh has the one you turned in to him. You turned this one in to which I am
ORIGINAL – FILE  answering, and there is one in to Admin Welch.

_Lt _____  3/1/19_

*Exhibit-D*

FISJ-J4-12/02

_Retaliation_

*Exhib. 4. 2-A*

# FINNEY COUNTY JAIL
# INMATE COMMUNICATION FORM

TO: ammistrator welsh.         Legal purpose

THIS IS A: [X] GRIEVANCE  [ ] APPEAL  [ ] REQUEST  [ ] OTHER

I wrote a Grievance on lawson. moved up the chain of command to capt orabaugh. which I have not got a response. I was told that one was destroyed and trashed so now Im moving up to you. I have been trying to final out why Im continued to be treated this way? also why after 10 days dis-seg. I was placed on this Striped Suit. and locked down 24/7 from 8-17-17. till offter 11-1-17 Sometime. then. I was not allowed to get visits, phone, or mail. this was done without any "due process." or isolation write ups.' why. I was lead to believe it was at the request of freddie strawders and the courts. Lt lawson told me it was due to my "behavior and actions." so I asked for copies of the write up to support his claim! of course there isn't any.!! also asked for reason why after having my Glasses since 2-26-15 why they were taken as a form of punishment without due process. my eyesight is a "disability" you all violated title 2 of the disability act and equale protection. cause you all dont take allinmates Glasse's and force them to prove. _seeback →_

INMATE NAME: _Paul Lovebarg_   B#: _11716_   DATE: _2-28-19_

JAIL DEPUTY RECEIVING FORM: ~~(scribbled)~~   DATE: _2-28-19_

JAIL DEPUTY/RECIPIENT'S RESPONSE: This was answered in a previous ICF by Lt Lawson, no more ICF's will be Accepted on this matter. If you continue you could face disciplinary action.

JAIL DEPUTY/RECIPIENT: _____   DATE: _____

REVIEWED BY RECIPIENT: _____   DATE: _____

ORIGINAL – FILE

*Exhibit – E*

FISJ-J4-12/02

Supporting
#22

# FINNEY COUNTY JAIL
## INMATE COMMUNICATION FORM

TO: _Gray Hands. "internal affairs."_
                                    _Legal purpose._

THIS IS A: [ ] GRIEVANCE   [ ] APPEAL   [ ] REQUEST   [X] OTHER

Sir. Deputies have informed me that Lt lawson has given a directive that no ICF or letters are to be accepted to be sent to the Sheriff or undersheriff. I have attempted to mail you letters. and ICFs to file a formal complaint on Lt lawson Mark welsh and Jeff orbaugh. I have infact sent legal Documentation to yas. via u.s. mail and have received ZERO response to anything I've sent to you the Sheriff or under sheriff.

Lt lawson is commiting a Felony Federal offense if he is destroying, with holding, or opening mail not addressed to him clearly marked official or legal mail. my own lawyer has claimed he has mailed me stuff and I have never recieved them I have mailed things to the courts and they have never recieved them this is illegal!

INMATE NAME: _Paul Covehara_     B#: _1179/6_    DATE: _1-6-19_

JAIL DEPUTY RECEIVING FORM: _Roth_                DATE: _1-6-19_

JAIL DEPUTY/RECIPIENT'S RESPONSE: _will forward to Lt Hands_

PAUL, ALL CORRESPONDENCE HAS BEEN RECEIVED AND REVIEWED. I HAVE DISCOVERED NO EVIDENCE TO SUPPORT YOUR CLAIMS. PLEASE ACCEPT THIS RESPONSE FOR ALL YOUR CORRESPONDENCE.

JAIL DEPUTY/RECIPIENT: _____   DATE: _____

REVIEWED BY RECIPIENT: _SHERIFF BASCUE_    DATE: _01-07-19_

ORIGINAL – FILE

c.c. personal File.

FISJ-J4-12/02                                          Exhibit.- F

# FINNEY COUNTY JAIL
## INMATE COMMUNICATION FORM

TO: _Jeff Crebrough_ _____ _legal purpose_ _____

THIS IS A: [ ] GRIEVANCE  [ ] APPEAL  [ ] REQUEST  [ ] OTHER

Yes you all have in fact denied me medical treatment. Til this day I have not been treated
for any Stomach ailment. per Dept. check these records, if an inmate destroyed my property it was
Cause your staff gave it to him since I had no contact with my property. also contain was stolen and you
know it.

the fact remains I have not been given no due process for you treatment of me.
You State: you are escorted Just as any other person with your criminal and behavior issue would be."
that is not a true Statement and you know it. unless your being predudicial and bullying
me for my Past and name reputation. I'm only a legan in you alls eyes
no other inmate is restricted to his legal papers beside me in this whole Jail.
so thats another untrue Statement. as for my (eye Glass) I would suggest
You contact lansing state prison Central unit. my percription comes
from there. nowthat should be easy to check!!! (Thank You for your time.)

INMATE NAME: _Paul Cuebara_ ____ B#: _168961_ ___ DATE: _1-3-18_

JAIL DEPUTY RECEIVING FORM: _Boudbott_ _____ DATE: _1/01/18_

JAIL DEPUTY RECIPIENT'S RESPONSE: _Will Follow/sup_
_WE WILL ATTEMPT TO CONTACT LANSING AND CHECK ON_
_THE GLASSES BEING PRESCRIPTION. ALL OTHER ITEMS MENTIONED_
_WERE ADDRESSED IN PREVIOUS COMMUNICATION FORM._

JAIL DEPUTY RECIPIENT: _____ DATE: _____

REVIEWED BY RECIPIENT: _____ DATE: _01/10/2018_

ORIGINAL – FILE

D 001881

Plaintiffs
Exhib.4
N

**Patient Name :Guebara,Paul|DOB :03/18/1963|Phone Number:**

**Progress Notes**

Patient: Guebara, Paul
Account Number: S0721
DOB: 03/18/1963  **Age:** 55 Y  **Sex:** Male
Phone: 620-272-3757
Address: 304 N 9TH ST, GARDEN CITY, KS-67846-5371

Provider: Jena Fry, PA
Date: 05/31/2018

## Subjective:

**Chief Complaints:**
1. Has not been taking medication for bp for the last week.. 2. Pt has been having stomach pain. has had it for about 2 years and it keeps getting worse. pt said he stoped eating for 7 days to see if it helps. 3. Says its hard to even walk around.

**HPI:**
**\*\*\*\*\*\*\*\*\*\*:**
55 year old male presents accompanied by 2 guards from the Finney County Jail. Still having the LUQ pain. The pain is constant, tearing and sometimes severe. It occasionally worsens with eating. Says the abd pain actually worsened with the Omeprazole so he dc'd it. He has been in jail for the past 3 years and no recent diet changes. Denies any acid reflux, n/v/d, melena, hematochezia or constipation. Still also having intermittent left sided chest pain with some left arm pain. He recently did see cardiology. Results are not availbbe today.
    Stopped taking the Amlodipine because he only wants treatment for the abdominal pain.

**ROS:**
    See HPI.

**Medical History:** Hepatitis found last year on labs done at Finney County Health Dept..

**Surgical History:** tracheatomy done years ago, pt doesn't remember when .

**Family History:** Father: deceased, diagnosed with Other malignant neoplasm of unspecified site. Mother: alive. Siblings: diagnosed with Diabetes mellitus without mention of complication, type II or unspecified type, not stated as uncontrolled, Unspecified essential hypertension, Other malignant neoplasm of unspecified site. 6 brother(s) , 3 sister(s) - healthy. 2 son(s) , 3 daughter(s) - healthy. .
bone marrow cancer
colon cancer.

**Social History:**
    Tobacco Use:
        Tobacco Use/Smoking
            Are you a  *former smoker*
            How long has it been since you last smoked?  *1-5 years*
        Tobacco use other than smoking
            Are you an other tobacco user?  *No*
    Sexual Orientation:
        Sexual Orientation
            Sexual Orientation  *Straight (not lesbian or gay)*
    Gender Identity:
        Gender Identity
            Gender Identity  *Male*
    Drugs/Alcohol:
        Drugs
            Have you used drugs other than those for medical reasons in the past 12 months?  *Yes*
        Alcohol Screen (Audit-C)
            Did you have a drink containing alcohol in the past year?  *No*
            Points  *0*
            Interpretation  *Negative*
        Caffeine
            Intake:  *1-2 cups per day*
        Do you smoke marijuana?: Denies.
        Do you drink alcohol?: No.
    Miscellaneous:
        Caffeine: 3-4 cups per day.
        Exercise: none.
        Housing: currently incarcerated.
        Legal problems: currently incarcerated.

**Medications:** Not-Taking/PRN Omeprazole 40 MG Capsule Delayed Release 1 capsule Orally Once a day, Not-Taking/PRN Amlodipine Besylate 5 MG Tablet 1 tablet Orally Once a day, Medication List reviewed and reconciled with the patient

**Allergies:** Penicillamine: hives.

## Objective:

**Vitals:** Temp 98.0, HR 79, BP 189/123, Wt 205, BMI 33.08, Ht 66, RR 20, Oxygen sat % 96, Ht-cm 167.64 cm, Wt-kg 92.99 kg.

**Examination:**
    General Examination:
        GENERAL APPEARANCE: normal, alert, in no acute distress, obese.
        SKIN: good turgor, warm and dry, no rashes.
        HEART:  regular rate and rhythm, S1, S2 normal, no murmurs, rubs, gallops.
        LUNGS: clear to auscultation bilaterally, good air movement, no wheezes, rales, rhonchi.
        ABDOMEN: bowel sounds present, soft, nontender, LUQ tenderness, no guarding or rigidity, no rebound tenderness.
        EXTREMITIES: no edema.
        NEUROLOGIC: alert and oriented, cranial nerves 2-12 grossly intact, sensation grossly intact, normal strength, gait limited due to ankle cuffs..
        PSYCH: Normal mood and affect. Recent memory normal and remote memory normal..

## Assessment:
    Assessment:

*Plantiff -*
*Exhibit - 0*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PAUL GUEBARA,

                    Plaintiff,

      v.

FINNEY COUNTY SHERIFF'S DEPT.,
KEVIN BASCUE,
KYLE LAWSON,
JEFF OREBAUGH,                  Case No. 19-CV-3025-JAR-KGG
MARK WELSH,
MICHELL NEWSOME, et. al.,
FINNEY COUNTY HEALTH DEPT.,
DR. HAROLD PERKINS,
GRETCHEN DOWDY,
HANNAH DOUTY, et. al.,

                    Defendants.

## DEFENDANT HANNAH DOUTY (BRITT)
## ANSWERS TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Pursuant to Fed. R. Civ. P. 36, Defendant Hannah Britt answers Plaintiff's Request

for Admissions as follows:

1.     document D 000524 is a genuine document . is this a True Statement.?

**RESPONSE: Admit**

D000521 is a genuine document. Is this a True. Statement.?

**RESPONSE: Admit, although it was not a document received by FCHD while
Defendant Britt was employed at FCHD.**

2.     you never consult a specialist in this case ? or refer plaintiff to a specialist. Is this
a true statement?

**RESPONSE: Denied.**

**Plaintiff was in the care of a specialist at the hospital (Dr. Byrnes) in October 2015,
after the Hepatitis-C lab result was received. The specialist was aware of the
diagnosis; in the hospital chart, he recommended no treatment.**

1

3.     Due to your response to #5 your name appears in the section marked for physician. In document D000524. Is this a true statement.?

**RESPONSE: Admit.**

**However, the document is stamped with "reviewed by ARNP" and signed with Defendant Britt's initials. Unfortunately, "Physician" is the laboratory's label for the ordering provider, regardless of the actual title of the person ordering.**

4.     also in the same document it states "supplemental testing recommended" you could have ordered these test be done WITHOUT THE DR. PERKINS INPUTE. Is this a True statement.?

**RESPONSE: Defendant is unable to admit or deny. Some labs can only be ordered and addressed through specialty care or specialty laboratories. Regardless, FCHD would refer to a specialist for consideration of treatment for FCHD, had the patient requested. Moreover, any consideration of such referrals was moot because the plaintiff did not return for follow up care for further evaluation or testing until 2017.**

5.     also due to response in #5.of interrogatories. You did not do any retesting or "confirmatory RNA PCR. Is this a true statement.?

**RESPONSE: Admit**

**This would be the next step for confirmation, but as best can be determined it may not have been completed since the plaintiff refused treatment and did not follow-up for almost two years.**

6.     this RNA PCR TEST WOULD HAVE GIVEN YOU ALL THE INFORMATION IN YOUR RESPONSE TO #5. Is this a true statement.?

**RESPONSE: Denied.**

**RNA PCR alone shows current hep c virus in the blood. Some patients can clear hepatitis C without treatment. A negative PCR would show if that were the case, but a positive might have led to an order for quantitative level of Hep C virus (viral load). But see also response to Request number 7, below.**

7.     The decision not to perform supplemental testing was not based on medical factors.? Is this a True statement?

**RESPONSE: Denied.**

Further testing might be completed, but it is not known. The plaintiff had some additional testing, including reassuring alt/ast liver enzymes. CT of the abdomen was completed. The CT included imaging of the liver.

Further testing including confirmation of hepatitis C as an active infection and monitoring of liver enzymes could possibly have been completed at follow-up, but plaintiff was refusing care and never sought additional care while Defendant Britt was caring for him.

The plaintiff needed care regarding hypertension and *h.pylori*. Treatments were prescribed for both concerns, i.e., Lisinopril/HCTZ for hypertension and Amoxicillin, Clarithromycin, and Omeprazole for the stomach bacteria. Follow up was recommended, but the plaintiff refused all care until 2017. There was no reason to believe any further hepatitis testing would be agreed-upon, as plaintiff never requested further care while this defendant was employed at FCHD.

8.      You were informed by Michell Newsome that Plaintiff was seeking medical treatment for hepatitis-c. is this a true statement.?

RESPONSE: Denied.

Patient was refusing treatment, as documented in the records.
Then in 2017, a patient note says that plaintiff denies having ever been told that he had hepatitis C or *H.Pylori* and having never received treatment. If true, that would mean he never requested treatment while Defendant Britt was employed at FCHD.

Regardless, there was no documented request for treatment of Hepatitis C in 2015.

9.      You could have ordered treatment for plaintiffs hepatitis-c without Dr perkins approval. Is this a true statement.?

RESPONSE: Denied.

Medication treatment decisions for hepatitis C would not be through family practice in 2015, with or without input from Dr. Perkins. At that time, gastrointestinal specialists or Hepatologists would determine treatment and further testing orders and recommendations.

10.      you did not do any testing to determine if plaintiff had liver damage.? Is this a True statement?.

RESPONSE: Denied.

3

- **CT of abdomen with and without contrast showed normal appearing liver (CT can show masses, damage, and liver enlargement that would occur with other liver issues or liver damage.**
- **AST and ALT levels were mildly elevated but with a reassuring ratio of less than 1**
- **Normal Bilirubin and Alkaline Phosphatase (high results suggest higher risk)**
- **Negative for HIV, Hepatitis A, and Hepatitis B (positive results suggest higher risk)**

s/ Brian C. Wright
Brian C. Wright, #12874
WRIGHT LAW OFFICE, Chartered
117 E. 13th Street
Hays, Kansas 67601
T: 785-621-4025
F: 785-621-4029
E-mail: brian@bcwrightlaw.com
*Attorney for Finney County Health
Department and Dr. Harold Perkins*

KDOC Adult Facilities

GUEBARA, PAUL
12000 Rd
Oswego&KS&67356, KS, 66612
Person #: 1425, Other ID #: 40223
Sex: M
DOB: 03/18/1963

Order Date: 07/09/2019

Ordering: Wade, William

Performing #: Bioreference

Tests Ordered : DIAGNOSTIC PROFILE II (2052-9), APRI (8742-8), PROTHROMBIN TIME (PT/INR) (0197-0), HEPATITIS C GENOTYPE (2161-8), Fibrotest/Actitest (H510-1), HIV AG/AB 4th GEN (8688-8), FERRITIN S), IRON AND TIBC (0250-1)

### Hepatitis C Genotype (Collection Date: 07/09/2019 10:35, Status: Final)

| Component | Result Units | Flag | Range | Comment |
|---|---|---|---|---|
| HEP. C GENOTYPE | Type 1a | | See Below | NOTE: Hepatitis C Virus Genotype/Subtype assay is an FDA approved assay able to identify the following subtypes: 1a, 1b, 1, 2, 3, 4, 5, 6. |
| | | | | ASSAY INFORMATION: Test# 2161 (Hepatitis C Genotype) performed u Siemens Versant(R) HCV Genotype 2.0 Assay (Li |

### Fibrotest/Actitest (Collection Date: 07/09/2019 10:35, Status: Final)

| Component | Result | Units | Flag | Range | Comment |
|---|---|---|---|---|---|
| ALPHA-2-MACROGLOBULIN | 294 | mg/dL | | 130-300 | |
| ALT | 43 | U/L | H | <41 | |
| Apolipoprotein A1 | 132 | mg/dL | | 104-202 | |
| Bilirubin, Total | 0.6 | mg/dL | | <1.2 | |
| FIBROSIS INTERP | moderate fibrosis | | | | |
| FIBROSIS SCORE | 0.53 | | | | |
| FIBROSIS STAGE | F2 | | | | |
| GGTP | 23 | U/L | | 10-71 | |
| HAPTOGLOBIN | 84 | mg/dL | | 30-200 | |
| INFLAMMATION INTERP | minimal activity | | | | |

```
              FIBROSIS AND NECROINFLAMMATION SCORES AND INTERPRETATIONS

         FibroTest Score   Metavir Score
         0.00-0.21         F0           no fibrosis
         0.22-0.27         F0-F1
         0.28-0.31         F1           minimal fibrosis
         0.32-0.48         F1-F2
         0.49-0.58         F2           moderate fibrosis
         0.59-0.72         F3           advanced fibrosis
         0.73-0.74         F3-F4
         0.75-1.00         F4           severe fibrosis

         ActiTest Score    Metavir Score
         0.00-0.17         A0           no activity
         0.18-0.29         A0-A1
         0.30-0.36         A1           minimal activity
         0.37-0.52         A1-A2
         0.53-0.60         A2           significant activity
         0.61-0.62         A2-A3
         0.63-1.00         A3           severe activity

         Performed By:
                 BioPredictive
                 218 Bd Saint-Germain
                 75007 Paris - France
                 P: +33 1 84 79 03 07

         Precautions:
         The reliability of results is dependent on compliance with the preanalytical and analytical conditions recom
         by BioPredictive.
         The tests have to be deferred for: acute hemolysis, acute hepatitis, acute inflammation, extrahepatic choler
         The advice of a specialist should be sought for interpretation in chronic hemolysis and Gilbert's syndrome.
         The test interpretation is not validated in liver transplant patients.
         Isolated extreme values of one of the components should lead to caution in interpreting the results.
         In case of discordance between a biopsy result and a test, it is recommended to seek the advice of a
         gastroenterologist.
         The causes of these discordances could be due to a flaw in the biopsy: i.e. a liver biopsy has a 25% variabi
         rate for one fibrosis stage.

         Interpretability:
         FibroTest(R) is interpretable for chronic Hepatitis B and C, alcoholic and nonalcoholic steatosis (NASH).
         ActiTest(R) is interpretable for chronic Hepatitis B and C.

         References:
            1. Salkic NN, et al.. FibroTest Fibrosure for Significant Liver Fibrosis and Cirrhosis in
               Chronic Hepatitis B: A Meta-Analysis.  Am J Gastroenterol 2014;109:796-809.
            2. Sebastiani G, et al. The impact of liver disease aetiology and the stages of hepatic fibrosis on the
```

Patient: GUEBARA, PAUL , DOB: 3/18/1963

*Plaintiff's*
*Exhibit - I*

D 002798

Kansas Department of Corrections



KDOC Adult Facilities

El Dorado - Oswego

## Nursing Progress Note

| KDOC #: | 40223 | Name: | GUEBARA, PAUL |
|---|---|---|---|
| DOB: | 03/18/1963 | Sex: | M |
| SSN: | 512689550 | Location: | El Dorado - Oswego |
| Encounter Date: | 07/26/2020 05:34 PM | Provider: | Gordon Harrod MD |

**Objective:**
Spoke with this offender and notified him that an OPR was placed for MRI on 07/15/20, but not been approved as of this date. Offender is also due to have an Ultrasound every 6 months for life due to HCV. Offender verbalized understanding.

| | |
|---|---|
| Document generated by: | Tosha Williams, RN |
| Document generated on: | 07/26/2020 05:36 PM |

Electronically signed by Gordon Harrod MD on 08/18/2020 12:08 PM

*Exhibit - G*

| Type | See | NOTE: Hepatitis C Virus Genotype/Subtype assay is an FDA |
| 1a | Below | approved assay able to identify the following subtypes: |
| | | 1a, 1b, 1, 2, 3, 4, 5, 6. |

ASSAY INFORMATION: Test# 2161 (Hepatitis C Genotype) performed using Siemens Versant(R) HCV Genotype 2.0 Assay (LiPA).

**HCV Viral Load reflex to NS3/NS5 (Non-NY) (Collection Date: 07/22/2019 02:38, Status: Final)**

| Component | Result | Units | Flag | Range | Comment |
|---|---|---|---|---|---|
| HEP. C RNA, (IU) | 9080000 | IU/mL | H | <15 | HEP C ULTRAQUANT, RNA INTERPRETATION |

| | HEP-C (IU/mL) | Interpretation |
|---|---|---|
| | <15 ND | Not Detected |
| | <15 D | Detected |
| | 15 - >30,000,000 | Detected |

NOTE: The COBAS 8800 HCV Test is not intended for use as the sole diagnostic test to confirm the presence of HCV infection.

NOTE: Results for Roche COBAS 8800 HEP C Quantitative assay reports with a range of <15-30 million IU/mL.

Patient: GUEBARA, PAUL , DOB: 3/18/1963

*Plaintiffs Exhibit. - 2*

D 002795

about:blank

1/14/2020

RECEIVED 10/14/2013 11:08 6202723606
10/14/15 10:07 If received in error, please notify 866-604-1234 and destroy original.    Page 1

St. Catherine Hospital
Garden City, KS 67846

PT: GUEBARA, PAUL
DOB: 03/18/1963, 52, M
UNIT #: WM00043219
REPORT #: 1014-0157

ADM: 10/14/15 0912
LOC: KCCT (REG CLI)
ACCOUNT #: WA0000 5-252
ORDER #: 1014-0005

ATTENDING: Douty,Hannah Emily NP
PCP: Pop,NoneGiven
ORDERING: Douty,Hannah Emily NP
REFERRING: Douty,Hannah Emily NP

---

**EXAM: CT Abdomen wwo**          **EXAM DATE/TIME: 10/14/15 0850**

Signed

Clinical indication: Epigastric abdominal pain.

Exam: CT abdomen was done with IV contrast enhancement only. 100 cc of
Isovue-370 was utilized for IV enhancement.

Findings: Lung bases demonstrate no active disease.

In the subdiaphragmatic area the liver, gallbladder, pancreas, and
spleen appear unremarkable. Both adrenal glands and both kidneys
appear unremarkable. A small hiatal hernia noted. Slight prominent
gastric mucosa noted on these non oral enhanced, which may or may not
suggest mild degree of gastritis. No free air or free fluid noted.
Nonoral contrast bowel loops appear unremarkable.

Impression:
1. Small hiatal hernia noted.
2. Possibility of mild degree of gastritis suggested.
3. The liver, gallbladder, pancreas, spleen, and both kidneys are
unremarkable.

WS: CESCH-IMG067

DICTATED BY: Liong,Soen B MD

D: 10/14/15 0933
T: 10/14/15 0933 ZZZ

CO-SIGNER:
ELECTRONICALLY SIGNED BY: Liong,Soen B MD
ELECTRONICALLY CO-SIGNED BY:
ITS DELIVERY DATE/TIME: 10/14/15 1043

S: 10/14/15 1043
S:

STATUS: REG CLI                                    S TE: KC

---

Signed
IMAGING REPORT

Physician Copy
Page 1 of 1

Plaintiffs
Exhibit — M

KDOC Adult Facilities

GUEBARA, PAUL
12000 Rd
Oswego&KS&67356, KS, 66612
Person #: 1425 , Other ID #: 40223
Sex: M
DOB: 03/18/1963

Order Date: 03/28/2019

---

Ordering: Wade, William

Performing #: Bioreference

Tests Ordered : APRI (B742-8), DIAGNOSTIC PROFILE II (2052-9), HEPATITIS PANEL (2280-6), PROTHROMBIN TIME (PT/INR) (0137-0), Hep C Ab. w/Rfx RT PCR (B125-6)

---

### HEP. C RNA,(LOG-10) (Collection Date: 03/28/2019 11:41, Status: Final)

| Component | Result | Units | Flag | Range | Comment |
|-----------|--------|-------|------|-------|---------|
| HEP. C RNA, (LOG-10) | 7.01 | log-10 | H | <1.18 | |

### HEP. C,RNA,IU (Collection Date: 03/28/2019 11:41, Status: Final)

| Component | Result | Units | Flag | Range | Comment |
|-----------|--------|-------|------|-------|---------|
| HEP. C RNA, (IU) | 10200000 IU/mL | | H | <15 | HEP C ULTRAQUANT, RNA INTERPRETATION |

```
                                 HEP-C  (IU/mL)              Interpretation
                                 <15 ND                      Not Detected
                                 <15 D                       Detected
                                 15 - >30,000,000            Detected

            NOTE: The COBAS 8800 HCV Test is not intended for use as the sole
                  diagnostic test to confirm the presence of HCV infection.

            NOTE: Results for Roche COBAS 8800 HEP C Quantitative assay reports
                  with a range of <15-30 million IU/mL.
```

### Hepatitis A Antibody, IgM (Collection Date: 03/28/2019 11:41, Status: Final)

| Component | Result | Units | Flag | Range | Comment |
|-----------|--------|-------|------|-------|---------|
| HEP. A Ab., IgM | Non-Reactive | | | Non-Reactive | NOTE: Hep A Ab,IgM is positive or reactive during the acute phase. Hep A Ab/Total is positive or reactive during the recovery phase or is indicative of a past infection. |

### Hepatitis ABC Profile (Collection Date: 03/28/2019 11:41, Status: Final)

| Component | Result | Units | Flag | Range | Comment |
|-----------|--------|-------|------|-------|---------|
| HEP C Ab. (S/CO RATIO) | >11.00 | | A | <0.80 | |
| HEP. A Ab., TOTAL | Reactive | | A | Non-Reactive | |
| HEP. B CORE Ab. IGG | Non-Reactive | | | Non-Reactive | |

```
                              Hepatitis B Result Interpretation
                                 (for reference use only)
              Marker             LI/EA*   Acute   Past   Chronic   HBV Vacc.
              ***********************************************************
              HBsAg               +        +       -       -          -
              HBeAg               +        +       -      +/-         -
              HEP.B.CORE AB,IgM   -        +       -       -          -
              HEP.B.CORE AB.      -        +       +      +/-         -
              HBeAb               -        -      +/-     +/-         -
              HBsAb               -        -      +/-      -          +
              *Late Incubation/Early Acute
              NOTE: In remote past infection, HBsAb level may be Negative or
              Non-Reactive in some patients.
```

| Component | Result | Units | Flag | Range |
|-----------|--------|-------|------|-------|
| HEP. B SURF. Ab. | Reactive | | A | Non-Reactive |

```
                              Hepatitis B Result Interpretation
                                 (for reference use only)
              Marker             LI/EA*   Acute   Past   Chronic   HBV Vacc.
              ***********************************************************
              HBsAg               +        +       -       -          -
```

---

Patient: GUEBARA, PAUL , DOB: 3/18/1963

D 002801

*Plaintiffs*
*Exhibit - H.*

St Catherine Hospital
401 E Spruce
GARDEN CITY KS 67846

Guebara, Paul
MRN: CEUL3017210, DOB: 3/18/1963, Sex: M
Adm: 9/24/2018, D/C: 9/24/2018

**09/24/2018 - Admission (Discharged) in St Catherine Hospital: Main OR FACESHEET (continued)**

### Labs (continued)

| | | | | |
|---|---|---|---|---|
| BUN Urea Nitrogen | 8 | 6 - 24 mg/dL | — | SCHLab |
| Creatinine | 1.16 | 0.65 - 1.36 mg/dL | — | SCHLab |
| BUN:Creatinine Ratio | 7 | 6 - 25 | | SCHLab |
| Glucose | 100 | 70 - 99 mg/dL | H | SCHLab |
| Calcium | 8.9 | 8.3 - 10.1 mg/dL | — | SCHLab |
| Anion Gap | 11 | 6 - 18 | | SCHLab |
| Albumin | 4.2 | 3.4 - 5.3 g/dL | — | SCHLab |
| Globulin | 4.7 | 2.2 - 4.2 g/dL | H | SCHLab |
| Albumin:Globulin Ratio | 0.9 | 0.8 - 2.0 | | SCHLab |
| Protein Total | 8.9 | 6.4 - 8.2 g/dL | H | SCHLab |
| Bilirubin Total | 1.0 | 0.2 - 1.2 mg/dL | — | SCHLab |
| Alkaline Phosphatase | 65 | 20 - 125 U/L | — | SCHLab |
| ALT Alanine Aminotransferase | 105 | 12 - 78 U/L | H | SCHLab |
| AST Aspartate Amino Transferase | 66 | 7 - 37 U/L | H | SCHLab |
| GFR Glomerular Filtration Rate | 70.5 | >60.0 mL/min | | SCHLab |

Comment:
Units = mL/min/1.73 m2.GFR results <60 for 3 months or longer: Chronic kidney disease.GFR results <15: Kidney failure.If African American is indicated, calculation includes multiplier of 1.159.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 1230000051 - SCHLab | SCH LABORATORY | Unknown | 401E SPRUCE GARDEN CITY KS 67846 | 04/07/17 1108 - Present |

Resulted: 09/24/18 0733, Result status: Preliminary result

### Comprehensive Metabolic Panel {Abnormal}

Ordering provider: Kurt F Kessler, MD 09/24/18 0711
Filed by: Lab, Background User 09/24/18 0733
Resulting lab: SCH LABORATORY

Order status: Completed
Collected by: Laurie M Bailey, RN 09/24/18 0712

### Components

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| Sodium | 141 | 136 - 145 mmol/L | — | SCHLab |
| Potassium | 4.1 | 3.5 - 5.1 mmol/L | — | SCHLab |
| Chloride | 107 | 96 - 111 mmol/L | — | SCHLab |
| CO2 Carbon Dioxide | 27 | 20 - 30 mmol/L | — | SCHLab |
| BUN Urea Nitrogen | 8 | 6 - 24 mg/dL | — | SCHLab |
| Creatinine | 1.16 | 0.65 - 1.36 mg/dL | — | SCHLab |
| BUN:Creatinine Ratio | 7 | 6 - 25 | | SCHLab |
| Glucose | 100 | 70 - 99 mg/dL | H | SCHLab |
| Calcium | 8.9 | 8.3 - 10.1 mg/dL | — | SCHLab |
| Anion Gap | 11 | 6 - 18 | | SCHLab |
| Albumin | 4.2 | 3.4 - 5.3 g/dL | — | SCHLab |
| Globulin | | 2.2 - 4.2 g/dL | — | SCHLab |
| Albumin:Globulin Ratio | | 0.8 - 2.0 | — | SCHLab |
| Protein Total | | 6.4 - 8.2 g/dL | — | SCHLab |
| Bilirubin Total | | 0.2 - 1.2 mg/dL | — | SCHLab |
| Alkaline Phosphatase | | 20 - 125 U/L | — | SCHLab |
| ALT Alanine Aminotransferase | 105 | 12 - 78 U/L | H | SCHLab |
| AST Aspartate Amino Transferase | 66 | 7 - 37 U/L | H | SCHLab |
| GFR Glomerular Filtration Rate | 70.5 | >60.0 mL/min | | SCHLab |

Exhibit D-1

10/22/2019  13:44   5202723851                    FIN CO APPRAISER                      PAGE  04

| 2200_58308 | (620) 272-3600 | **LABORATORY REPORT** |
| Finney County Health Department | | |
| 919 Zerr Rd | | PAML |
| Garden City KS 67846 | | St Catherine Hospital ... ASSOCIATES |
| | | 401 E Spruce , Garden City KS 67846 |

| Patient Name | | Sex | Age | | | |
| GUEBARA, PAUL | | M | 54 | | | |
| Patient ID/Hospital ID | Patient Birth Date | | Patient SSN | Patient Phone Number | Physician | |
| 68890 | 3/18/1963 | | | | Dowdy, Gretchen | |
| Page | Requisition No. | Accession No. | Client Accession Number | Collection Date & Time | Report Date & Time | REPORT STATUS |
| 1 | 1852881 | M9208496 | | 10/2/2017  4:41 PM | 10/2/2017  7:11 PM | FINAL |

| TEST | IN RANGE | OUT OF RANGE | REFERENCE RANGE | UNITS | SITE CODE |
|------|----------|--------------|-----------------|-------|-----------|
| PSA | | | | | |
| PSA (Prostate Specific Ag) | | H  5.42 | <4.00 | ng/mL | SK |
| Reference range: 0.01 to 3.99 | | | | | |
| Performed using Siemens Vista LOCI methodology. | | | | | |
| ORDERED TESTS: | | | | | |
| PSA     PSA | | | | | |
| NOTE: | | | | | |
| 'SK' refers to site:    St Catherine Hospital | | | | | |
|                        401 E Spruce | | | | | |
|                        Garden City KS 67846 | | | | | |
| | | >> END REPORT << | | | |

RECEIVED
OCT 0 3 2017
BY...

**EXHIBIT N**

01/07/2020   07:15     5202723605

## Finney County Health Department
General Note

Page 1 of 1
10/09/2017 10:51:53 AM

| | |
|---|---|
| Patient No | 68890 |
| Name | GUEBARA, PAUL |
| DOB - Sex | 03/18/1963   Male |
| Cosite | 00001   Finney County Health Departmen |
| Sub Program | CC   COMMUNITY CLINIC |
| Provider | 0064   Dowdy, Gretchen |

| | | |
|---|---|---|
| Note Status | Locked | |
| Note Date | 10/09/2017 | |
| Created | GRETCHEND | 10/09/2017 10:14:38 AM |
| Updated | GRETCHEND | 10/09/2017 10:51:45 AM |
| Note ID | 7802 | |
| Note Type Code | NOTE | |

| Question | Response |
|---|---|

General notes

Phoned County Jail Nurse. Pt has been refusing all recommended medications: for HTN & gastritis (Prilkosec & Lisinopril / HCTZ). Pt has refused to provide stool specimen for H pylori testing.

Labs show +Hep C---Provider informed that pt is aware of this diagnosis. Also elevated PSA. Provider recommends referral to Urology for definitive diagnosis.

Dx: HTN--- I10
   Hep C---- B18.2
   elevated PSA--- R97.20
   Noncompliant---- Z91.19

End of Note ─────────────────────────

End of Report ──────────────── *gd*

This document contains **Confidential Patient Information**.
It is not to be released to unauthorized persons or staff, under penalty of law.

*Plaintiff
Exhibit A-1*



COUNTY HEALTH DEPARTMENT

**FINNEY COUNTY**
KANSAS

**Inmate Medical Services Agreement**
**Finney County Sheriff & Finney County Health Department**

T. (620) 272-3600
F. (620) 272-3606

This Memorandum of Understanding is entered into this _____ day of January 2020, between the Finney County Health Department, hereafter referred to as the "*Health Department*" and the Finney County Sheriff Department referred to as "*Jail.*"

This Memorandum of Understanding pertains to the provision of inmate medical services provided by the Health Department for the benefit of the inmates of the Jail. The parties mutually agree upon these terms that are as follows:

**Scope of Services provided by Health Department:**

*Nursing Services: The Health Department shall provide one full-time (at least 40 hours a week) Registered Nurse for the medical services at the jail.*

Scheduling
- Nursing Coverage will be from approximately 7:00 am – 5pm, Monday – Thursdays and from 8am – 12pm on Fridays.
- There may be some adjustments to this schedule, however it will be communicated appropriately and in advance. The Jail will receive medical services and medical coverage 5 days a week. If the health department is unable to provide this coverage, this will be communicated to jail staff in advance (such as weeks with scheduled holidays).
- The Registered Nurse will follow all scheduled holidays off according to Finney County's Policy.
- In the event that the assigned Registered Nurse schedules any vacation time, the Health Department will provide medical coverage for inmates with an appropriate staff nurse. In the event of sick time, unless the time is for a full day, the health department will not provide additional coverage unless absolutely necessary.

Medical Services
- Conduct routine health assessments on inmates as necessary, or requested by inmate.
- Provide medical services in the event of urgent care needs.
- Provide appropriate TB, STD screenings and lab draws (as ordered).
- Refer or coordinate care with Health Department's APRN or Medical Director as necessary.
- Conduct mental health screenings on inmates as the need arises and refer appropriately.
- Be available by phone in the event of a medical emergency at the Jail.

Health Department

919 Zerr Rd.
www.finneycounty.org

Garden City, Kansas 67846

*Plaintiffs Exhibit.- P*

Collaboration | Customer Service | Integrity | Resourcefulness | Stewardship

**Advanced Practice Registered Nurse**
- Provide medical care to the inmate in the event that the RN is not qualified to provide necessary medical care.
- Be available by phone for medical consultation to assist with patient care.
- Provide medical care to Inmates in person at either the Jail or Health Department as necessary.

**Medical Director**

The Health Department shall provide a licensed medical doctor to serve as the Jail's Medical Director and shall provide oversight of the general and urgent care to the inmates. The Medical Director shall:

- Supervise the medical care provided to the inmates by the Registered Nurse and APRN(s).
- Provide medical care to inmate in the event that RN or APRN are not qualified to provide necessary care at the Jail.
- Assist in the development and review of standing orders, policies and procedures.
- Review documentation of medical staff's charting pertaining to medical services provided for Jail.
- Be available by phone or in person to assist RN & APRN(s) regarding the medical needs of inmates

**Insurance**

The Health Department will obtain and maintain the following limits of insurance continuously during the life of this Agreement:

1. Professional Liability Insurance in the amount of $1,000,000 per event with an aggregate limit of $3,000,000.

**Records and Confidentiality**

The Health Department and Jail must maintain the confidentiality of all client medical information and comply with all legal restrictions in regard to the disclosure in accordance with the Health Insurance Portability and Accountability Act of 1996.

**Funding Agreement & Responsibilities**

Jail:
- Jail will fund Registered Nurse position from the Sheriff Fund.
- Jail will assume all training and travel expenses associated with licensure, continuing education, medical training for inmate medical services and any other training as necessary to maintain the position in accordance with State and Federal Regulations.

- If Jail needs to alter any responsibilities, expectations or general workplace tasks that impact this position, they must contact Health Department leadership to adjust as necessary.
- Pay for any medical supplies, labs, or other materials included in the billing table attached as agreed upon.

Health Department:
- Health Department will bill the Jail in accordance with the following billing table.
- Health Department assumes all medical directorship, funding of APRN positions, general liability of medical services and other expenses not included in the billing table.
- Health Department assumes all administrative controls of the RN position at the Jail which includes and is not limited to:
  - Timekeeping
  - Leave Requests (Vacation & Holidays)
  - Payroll oversight
  - Compensation
  - Medical Services Provision
  - Training
  - Licensure

Billing

| Name | Cost |
|---|---|
| Medical Director | $100/month |
| APRN Onsite | $45/hour |
| **Office Visits** | |
| 99212-99214 | $50.00-$80.00 |
| **Labs** | |
| STD labs to State | $0.00 |
| Labs | *At Cost |
| **Medical Supplies** | |
| Meds from State | $0.00 |
| Meds | *At Cost |
| TB solution | *At Cost |
| Nursing Supplies | *At Cost |
| Handling Fee | $20.00/Month |

Exhibit-P

**\*At cost signifies any expense occurred by the Health Department on behalf of medical services rendered for Jail. Health Department will only bill for direct expense without additional overhead calculated.**

Term

The term of this Agreement shall be for a period of 2 years from January 10th, 2020 to January 10th 2022. The term of this Agreement shall be renewed at the end of the initial term and at the end of each renewal term thereafter for an additional one-year term unless either party submits written notice of its intention to not renew. Notice must be given at least 90 days prior to the end of the term.

Revisions

In the event that either the Jail or Health Department wishes to alter any components of this agreement, a meeting will be requested and leadership of both departments may meet to reach an agreeable solution.

# 1. MEDICAL SERVICES

## POLICY:

It is the policy of the Jail Division of the Sheriff's Office to provide medical services for the inmates housed in the Finney County Jail.

## PROCEDURE:

### Medical Authority

All medical and other medical related services are coordinated through the Finney County Health department. The Finney County Health department's nurse assigned to the jail will act as a liaison between the jail, the health department and other medical service providers in the community to ensure an appropriate standard of care.

### Medical Appointments

All medical appointments will set up by the medical department. The necessary paperwork will be completed and attached to a medical envelope and placed in the medical transport box in booking.

It is part of the duties of the dayshift booking deputy to check the medical transport box daily for any medical appointments. The booking deputy should also check with warrants to see if there is a transport deputy assigned. If there isn't a transport deputy assigned the supervisor needs to be notified.

Inmates will not be told of any pending medical appointments for safety and security reasons. If it is found out that an inmate is aware of a medical appointment the supervisor needs to be notified as soon as possible so the appointment can be rescheduled at a different date and time.

When an inmate returns from a medical appointment the paperwork needs to be taken to the nurse. If the nurse is not available the supervisor needs to review the paperwork to see if there have been any treatment changes or new prescriptions that need to be addressed. After review, an email will be sent to staff and the paperwork will be placed in the medical department box.

exHibit
Plaintifs - P-1

## 9. MEDICAL EMERGENCIES

### POLICY:

It is the policy of the Jail Division of the Sheriff's Office to appropriately handle medical emergencies in a safe and humane way for any inmate housed in the Finney County Jail.

### PROCEDURE:

### Definition

There are two types of medical emergencies; life threatening and non-life threatening. What type of medical emergency it is determines what process is employed to obtain medical treatment for the inmate.

A life threatening emergency if not treated promptly may lead to death.

A non-life threatening emergency usually does not lead to death but needs to be treated as soon as possible.

If unsure whether the medical emergency is life threatening or non-life threatening err on the side of caution and treat as a life threatening emergency.

### Medical Emergency Determination

The deputy discovering the medical emergency will call for assistance then gather information from the inmate about what's going on, if possible, and monitor the inmate's condition and ABC's as taught in the first aid/CPR training.

When assistance arrives, the deputy discovering the medical emergency will brief the supervisor.

The supervisor will then determine the type of medical emergency it is and take the following action.

### Life threatening medical emergency

If a supervisor determines this is a life threatening medical emergency the supervisor or designee will contact dispatch to have EMS dispatched to the jail. This will be done for all life threatening medical emergencies.

The supervisor will then;

1.  Have a deputy meet and escort EMS to the inmate's location.
2.  Contact the patrol supervisor and advise the supervisor of the situation.
3.  Have a deputy gather the necessary paperwork for the transport.
4.  Possibly designate a deputy to ride along with EMS to the hospital until patrol or warrants takes over.
5.  Have deputies' shakedown and cleanup the area for any contraband items left behind by EMS or anyone else.

### Non-life threatening medical emergency

If a supervisor determines this is a non-life threatening medical emergency the supervisor or designee will contact dispatch to have the patrol supervisor contact the jail supervisor.

The supervisor will then;

1.  Advise the patrol supervisor of situation.
2.  Have the inmate moved to booking if possible.

*Plaintiffs – P-2*

D 002834

**Finney County Sheriff's Office**
**Inmate Request for <u>NON-EMERGENCY</u> Health Care**

### *PLEASE PRINT*

Name: _____   Date: _____

DOB: _____ ID # _____ Booking # _____ Location: _____

I request to see Jail medical staff for the following reason(s) (briefly describe the nature of the problem):_____

_____

*ANSWER THE FOLLOWING*

When did this problem start: _____ Have you ever been treated for this in the past: Y N

Any other symptoms (like nausea, vomiting, fever, etc):_____

_____

Any past medical history: _____

What have you tried to alleviate this (medicine or therapies): _____

_____

Current medications: _____

If you have stitches or staples when were they put in: _____

Inmates will be assessed a co-pay charge to their commissary account regardless of their ability to pay.  An inability to pay this charge will not affect access to medical care.

For Medical Staff use only: _____

_____
_____
_____
_____
_____
_____
_____

Inmate: _____ Date: _____

Deputy: _____

FCSJ-M7-13

## Non-Emergency Form (NEF)

When an inmate hands a NEF to you be sure all the information is addressed on the form, the inmate's name, date, date of birth, I #, booking #, and location. If the NEF has been answered by the nurse make sure the inmate has read it, understands the information and has signed and dated it along with your signature on the bottom of the form. If directives or items are given put the information in the front of the MAR book on the "*Approved med or item allowed*" form.  Inmate Communication Forms are not to be used for medical requests.  If you receive an ICF for a medical request have the inmate rewrite the request on a NEF.

*Exhibit 4 - P2*

Kurt Kessler MD

General, Vascular, and Thoracic Surgery
Siena Healing Arts Building, 311 East Spruce
Garden City, Kansas 67846
Phone (620)-275-3741 Cell 640-7600

Patient Name: Guebara  Paul
Date of Birth: 03/18/1963
Patient ID/Social Security No.: 5854
Referring Physician: Jenna Fry, PA
Date:  Sunday, October 28, 2018
          Date of service:
                    10-24-18

### Office Progress Note

Current Problem/Surgical Procedure:   Abdominal pain, status post upper endoscopy and colonoscopy
Date:  9/24/2018

Patient's Subjective Comments:   The patient has been treated for Helicobacter on the basis of a biopsy during upper endoscopy and colonoscopy which showed "lymphoplasmacytic inflammation".  He reports that he has the same symptoms.

Objective Findings:   Abdomen is nontender and nondistended

Pertinent Laboratory, X-ray, or Pathology Results:   Gastric antrum mucosa with lymphoplasmacytic chronic inflammation no evidence of Helicobacter.  Terminal ileum showed normal mucosa.  Proximal transverse colon showed benign lymphoid aggregate

Medication Changes:   I suggested Prilosec once daily

Change in Care, Activity, or Diet:   Along with the officers that accompanied the patient I discussed possible gallbladder ultrasound.  This will I guess depend on whether the jail wants to proceed with this.  They are not anxious to be taking the patient to multiple physician appointments apparently because of severity of his charges

Impression:   Continued abdominal symptomatology consider secondary gain

Plan:   Continue current care.

Follow up:   As per the jail

Signed, Kurt Kessler, MD

Guebara  Paul
Sunday, October 28, 2018  14:45:13.6496250
cc:  Jenna  Fry, PA
5354