UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA                          )
                    Plaintiff,        )
v                                     )        Case No. 5:19-CV-03025-SAC
                                      )
KEVIN BASCUE                          )
JOHN ANDERSON                         )
KYLE LAWSON                           )
MICHELLE NEWSOME                      )
JEFF OREBAUGH and                     )
MARK WELCH,                           )
                    Defendants,       )
_____)

## JAIL DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
(Doc. 209).

### RESPONSE TO STATEMENTS OF FACT.

1.     Controverted. Plaintiff was diagnosed with Hepatitis C at least as early as 2003.

(RFA to Plaintiff and Plaintiff's response. ¶¶ 1and 2; Doc. 205, p. 2, stipulation b.3; Ex. KK[1]).  No

supplemental testing was recommended by any physician.  The report reads that "supplemental

testing recommended **as clinically indicated."** (Emphasis added) (Ex. L).  No such testing was

clinically indicated. (Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3).

2.     Uncontroverted as far as it goes.  But it is incomplete and misleading.   (Newsome

Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11; Welch Affd.

---

[1] The exhibits cited to in this memorandum have been used in previous pleadings and discovery requests.  To avoid confusion, the same numbering will be used here. The numbering in this memorandum will, therefore contain gaps.

¶¶ 4-9; Bascue Affd., ¶¶ 5-7)[2].

3.      It is uncontroverted that Plaintiff requested the treatment. It is controverted that

he asked all defendants. (Lawson Affd., ¶¶ 6-7; Orebaugh Affd., ¶¶ 6-7; Welch Affd., ¶¶ 6, 7, 9;

Bascue Affd., ¶¶ 5-7).

4.      Uncontroverted for purposes of this motion.

5.      This alleged fact(s) contains no citation to anything in the record and contains rank

speculation about the motives of Newsome and others.  The asserted reason for the additional testing

is controverted.  No further testing was clinically indicated. (Newsome Affd., ¶¶ 5-8; Newsome

Supp. Affd. ¶ 3).  A doctor who saw Plaintiff within in a month of that lab report referenced the

diagnosis of Hepatitis C and said: "Will just monitor this for now." (Ex. O; Doc 205, Stip. a. 2., c).

6.      Controverted.  No supplemental testing was recommended by any physician.  The

reports read that "supplemental testing recommended **as clinically indicated** and "**if clinically**

**indicated.**" (Emphasis added) (Exhibits L and N and Plaintiff's K).  No such testing was clinically

indicated. (Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3).  A doctor who saw Plaintiff within

in a month of that lab report referenced the diagnosis of Hepatitis C and said: "Will just monitor this

for now." (Ex. O; Doc 205, Stip. a. 2., c).  The treatment was not required or even recommended.

(Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11;

Welch Affd. ¶¶ 4-9; Bascue Affd., ¶¶ 5-7).

7.      Uncontroverted but misleading.  One of the reasons that the treatment Plaintiff

demanded should not be provided is a history of medical non-compliance.  (Newsome Affd., ¶¶ 5-8;

---

[2]The Perkins and Britt affidavits had been approved but signed copies were not yet received by
the time this Response was filed.  Signed copies will be filed upon their receipt.

Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11; Welch Affd. ¶¶ 4-9; Bascue Affd., ¶¶ 5-7).

8.      Controverted.   (Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11; Welch Affd. ¶¶ 4-9; Bascue Affd., ¶¶ 5-7).  This alleged fact is mere speculation, argument and not supported by the exhibits cited.

9.      Controverted. This is argument, alleging things for which Plaintiff has no foundation or personal knowledge and are not supported by the exhibits cited and are controverted by the exhibit on its face.  Ex. F states on its face that un-circled initials on the first page, mean the medication was given.  Circled initials means that it was not given.  Then, on the reverse side,  the reason or refusal for medications not given is stated.  This shows that the medication was given by "joey" so there is no entry concerning a refusal or other reason for not giving it on page 2.  Nothing has been deleted. Plaintiff's allegation is utterly false.

10.      Controverted. This is not a proper statement of a fact based on personal knowledge. It is argument.  The records speak for themselves.

11.      Controverted. This is not a proper statement of a fact based on personal knowledge. It is argument.  It is uncontorverted that Plaintiff did not receive the treatment he was demanding until he arrived at KDOC and that this was what was medically indicated and advised as the best course of action.

12.      Controverted.  This is argument, not a statement of fact based on personal knowledge.  The affidavits Plaintiffs cites, speak for themselves.  In addition, see (Ex. O; Doc 205, Stip. a. 2.,  c; Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11; Welch Affd. ¶¶ 4-9; Bascue Affd., ¶¶ 5-7).

13.     Controverted.  This is argument, not a statement of fact based on personal knowledge.  The affidavits Plaintiffs cited exhibits, speak for themselves.  In addition, see (Exs. L, N, O; Doc 205, Stip. a. 2.,  c; Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11; Welch Affd. ¶¶ 4-9; Bascue Affd., ¶¶ 5-7).

14.     Controverted.  This is argument, not a statement of fact based on personal knowledge.  The affidavits Plaintiffs cited and materials, speak for themselves.  Moreover, the allegation that Newsome's interrogatory response indicated knowledge that Plaintiff was incurring liver damage is simply false.  It merely states that she knows in general that liver damage **might** occur in patients generally.  But all of the evidence in this case is that the medical providers did not believe Plaintiff was in need of treatment at the time. (Newsome Supp. Interrogatory response; Newsome Affd., ¶¶ 5-8; Newsome Supp. Affd. ¶ 3; Perkins Affd., ¶¶ 4-11; Britt Affd., ¶¶ 4-11; Welch Affd. ¶¶ 4-9; Bascue Affd., ¶¶ 5-7).

15.     Controverted.  This is argument, not a fact or based on personal knowledge.  The interrogatory responses speak for themselves.  In addition, see (Exhibit NN, Medical Policy D 002814-2836; Bascue Affd., ¶¶ 3, 7-8; Welch Affd., ¶¶ 3-5, 9).

16.     Controverted.  This is pure argument with no attempt to cite anything of evidentiary value based on personal knowledge.  The argument is erroneous, as well, which will be addressed in the argument section below.

17.     Controverted.  The interrogatory responses speak for themselves.  In addition, Plaintiff's assertion that he did not receive treatment is contradicted by his own stipulation and admission as well as the records.  On March 21, 2019, Plaintiff was moved from the Finney County Jail to a Kansas Department of Corrections facility.   (Doc. 205, p. 2, Stipulations a.2).  When

Plaintiff arrived at KDOC, he was provided treatment for his hepatitis C. (Doc. 205, Stip. a.3). Plaintiff has been cured of hepatitis C. (Doc. 205, Stip. a.4).  Lab reports after Plaintiff was cured show his AST and ALT values to be well within normal limits.  (Ex. LL; Doc 205, Stip. a. 4., c).

18.     Controverted.  This is argument, not a statement of a fact of which Plaintiff has personal knowledge.  See response to paragraph 17.

19.     Controverted. This is argument, not a statement of a fact  based on personal knowledge.  It also contains speculation. See response to paragraph 17.

20.     Controverted.  This is a rambling argument, not a statement of fact based on personal knowledge, and reiterating arguments and allegations set forth in the preceding paragraphs. See responses to paragraphs 1-19.

21.     Controverted.  The exhibits speak for themselves.

22.     Controverted.  Plaintiff was free to discuss any issue he wanted to with any health care provider.  (Bascue Affd., ¶ 8; Welch Affd., ¶¶ 3-5, 9).

23.     Controverted.  This is argument not based on personal knowledge. The cited materials speak for themselves.  Newsome and the Jail Administrator did discuss Plaintiff's request with healthcare providers who indicated the treatment should wait until he arrived at the KDOC facility. ( Newsome Supp. Int. Answer; Welch Affd., ¶ 8).

24.     Controverted.  This is argument, not a statement of fact based on personal knowledge, and reiterating arguments and allegations set forth in the preceding paragraphs.  See responses to paragraphs 1-23.

25.     Controverted. This is argument  not a statement of fact based on personal knowledge.

26.     Controverted. This is argument  not a statement of fact based on personal knowledge.

Plaintiff is not qualified to interpret medical records or opine as to whether they show liver damage. *McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, at *6. He certainly is not qualified to opine whether any liver damage that did occur at any given time would not have occurred with or without any particular treatment. Morever, there is no evidence that the defendants were aware of the particular records Plaintiff cites. It is clear that no medical provider qualified to offer an opinion has indicated that Plaintiff suffered any liver damage while in the Finney County jail as a result of not being treated.

27.    Controverted. See response to paragraph 26 above. The jail did have proper policies. (Welch Affd., ¶¶ 3-5, 9; Bascue Affd., 7-8; Exhibit NN, Medical Policies).

## DEFENDANTS' STATEMENT OF ADDITIONAL FACTS.

1.    Plaintiff was convicted of first degree murder in 1983. (Ex. A, KDOC, p.1.)

2.    While he was incarcerated for that murder, he tested positive for hepatitis-C in 2003. (RFA to Plaintiff and Plaintiff's response. ¶¶ 1 and 2; Doc. 205, p. 2, stipulation b.3; Ex. KK[3]).

3.    After serving 22 and half years, Plaintiff was paroled. (Doc. 205, p. 2, stipulation c.; Ex. A., p. 2).

4.    In 2015, Plaintiff was again arrested for attempted murder and initially lodged in the Finney County jail. (Ex. A, pp. 1-2.)

5.    Plaintiff was in the Finney County jail from February 26, 2015 to March 21, 2019. (Doc. 205, p. 2, Stipulations a. 1-2).

6.    Plaintiff was convicted of the attempted murder. (Ex. A, pp. 1-2).

---

[3] The exhibits cited to in this memorandum have been used in previous pleadings and discovery requests. To avoid confusion, the same numbering will be used here. The numbering in this memorandum will, therefore contain gaps.

7.      On March 21, 2019, Plaintiff was moved from the Finney County Jail to a Kansas Department of Corrections facility.   (Doc. 205, p. 2, Stipulations a.2).

8.      When Plaintiff was booked into the Finney County jail in February of 2015, a medical screening form was completed.  Plaintiff indicated that he had once tested positive for Tuberculosis, but reported no ongoing medical issues.  (Ex. C, Medical Screen; Lawson Affd., ¶ 8).

9.      During his incarceration, Plaintiff was seen repeatedly by a variety of healthcare providers for a variety of complaints and conditions.  (Ex. E, ; Lawson Affd., ¶ 8)[4].

10.     Some of this care was provided by a contract jail nurse but much of it was provided by outside providers, necessitating transporting him outside the jail to public healthcare facilities for testing, examination and treatment. (Id.)

11.     These transports involved high risk to jailers, healthcare providers and the public because Plaintiff was a convicted murderer, facing the rest of his life in prison for a second attempted murder, had made threats of suicide and was reported to have gang affiliations. (Orebaugh Affd., ¶ 3; Lawson Affd., ¶ 3).

12.     Finney County incurred costs totaling $11,662.50 for medical care provided to Plaintiff. (Ex. D, Medical Bills; Lawson Affd., ¶ 8)

13.     In addition to the outside visits, Plaintiff was provided medical care by the Finney County Health Department, under contract.  (Newsome Affd, ¶ 3).

14.     During his visits to healthcare providers, Plaintiff was free to discuss any complaint with the healthcare providers for which he wished to be examined or treated. (Bascue Affd., ¶ 8;

_____

[4] As can be seen by comparing the medical records provided to this list, though extensive, the list is not complete.  Plaintiff was transported other times that were not recorded on this list.  See Ex. X, EE, II , JJ).

Welch Affd., ¶ 6; Perkins Affd. ¶ 8).

15.     During his time in the Finney County jail, Plaintiff repeatedly refused offered

medical treatment.  (Newsome Affd., ¶ 4; Orebaugh Affd., ¶ 4; Lawson Affd., ¶ 4; Wrelch Affd., ¶

9).

16.     Plaintiff repeatedly refused to take prescribed medications. ( Ex. F, p. 2; Doc. 205,

p. 2 Stip. c).

17.     On one occasion, Plaintiff finally agreed to take prescribed medication that he had

been refusing for months, but only to "prove they don't work." (Ex. R; Newsome Affd., ¶ 10; Doc.

205, p. 2 Stip. c.)

18.     Plaintiff refused medical prescriptions provided for his complaints of stomach

pain. (Ex X;  Doc. 205, p. 2 stip. c; Newsome Affd., ¶ 11).

19.     On June 27, 2018, Plaintiff submitted a medical request to the jailers stating:

"DON'T ORDER MEDS." (Ex. U; Newsome Affd. ¶ 10,  Doc. 205, p. 2 stip. c).

20.     On October 28, 2018, Plaintiff again submitted an inmate request form requesting that

prescribed medication not be ordered.  (Ex. HH; Newsome Affd. ¶ 10; Doc. 205, Stip. c).

21.     Plaintiff demanded a single cell. When this was denied, he began making suicidal

statements and started a hunger strike, stating that if he was not moved, he would claim to be suicidal

to force jail staff to move him.  (Ex. G and H; Lawson Affd., ¶ 8; Doc 205, Stip.  c).

22.     Plaintiff was repeatedly seen for complaints of stomach pain. (Ex. E, F, I, J, L, M,

Q, S, V, CC, DD, GG: Newsome Affd. ¶¶ 10-11).

23.     In June, 2015, Plaintiff reported stomach pain but related it to the blood pressure

medication he was taking.  He was advised by the nurse to take the medication with food. (Ex. I;

Newsome Affd., ¶ 10).

24.     Plaintiff was transported to see healthcare providers on July 7, 2015, at which time he could talk to the healthcare providers about any issue or complaint he wished, including any stomach pain he was having. (Ex. E; Lawson Affd. ¶ 8).

25.     In September, 2015 Plaintiff again reported stomach pain and, again stated that it had started when he started taking his cardiac medications.  He was transported to Compass Health on September 4, 2015.  Plaintiff reported that "Dr. Jack" there told him to eat a snack at night to help with the stomach pain. (Ex. GG; Newsome Affd., ¶ 10).

26.     Plaintiff was seen specifically for his stomach pain on September 17, 2015.  At that time he was prescribed Omeprazole and scheduled for a follow up.  (Ex. V; Newsome Affd., ¶ 11).

27.     Plaintiff was transported to the hospital to be seen for his complaints of stomach pain on September 28, 2015.  (Ex. J; Newsome Affd. ¶ 11.)

28.     A CT scan of Plaintiff's stomach, and blood work, were ordered, and continued Omeprazole was prescribed for his stomach pain. (Id.)

29.     The blood work showed positive for the H. Pylori antibody.   (Ex. L,  p. 3.)

30.     On September 30, 2015, the lab results were called to Nurse Newsome and antibiotics – Omoxicillin and Charithromycin – were prescribed and provided. (Ex. F, M).

31.     On October 14, 2015, Plaintiff was again transported to the hospital for the ordered CT scan.  The CT Scan was reported as showing positive for a hiatal hernia and possible gastritis but negative for mass.  (Ex. CC; Doc 205, Stip.  c).

32.     Plaintiff again reported stomach pain in August of 2017 and stated that this stomach

pain had started 3 weeks ago. (Ex. S; Newsome Affd. ¶ 10).

33.     A stool sample was ordered.  (Ex. DD; Doc 205, Stip.  c).

34.     Plaintiff initially refused to provide the ordered stool sample. (Id.).

35.     Unfortunately, when Plaintiff did finally provide a stool sample, it was lost by the laboratory.  (Ex. Q; Newsome Affd., ¶ 10).

36.     Plaintiff was advised of this and asked for another sample in January, 2018. (Id.).

37.     Plaintiff again initially refused and did not provide the needed sample until April 12, 2018.  (Ex. T; Newsome Affd., ¶ 10).

38.     On April 30, 2018, Plaintiff was seen at Genesis for his stomach complaints.  The treatment prescribed was the same drug Plaintiff had previously refused to take – Omeprazole.  In addition, a CT Scan was ordered.  (Ex. Z; Newsome Affd., ¶ 11).

39.     On May 31, 2018, Plaintiff was taken to Genesis to discuss the results of his CT scan and his abdominal pain.  Plaintiff again chose not to take the prescribed Omeprazole. (Ex. X, Newsome Affd., ¶ 11).

40.     When Plaintiff demanded another doctor, he was taken to Dr. Kessler on June 25, 2018.  (Ex. II; Doc 205, Stip.  c).

41.     The new doctor ordered a colonoscopy.  (Ex. BB and Ex. EE; Doc 205, Stip.  c).

42.     On September 24, 2018, the colonoscopy was performed and showed gastritis and was otherwise normal. (Id.).

43.     On October 26, 2018, Plaintiff was again seen by Dr. Kessler who raised two other possibilities for Plaintiff's reports of stomach pain – the possibility of gallbladder issues and the possibility of "secondary gain".  (Ex. JJ; Doc 205, Stip.  c).

-10-

44.     Plaintiff was no longer having stomach pain at this time as it had abated after the colonoscopy in September.  (Doc. 1, p. 11).

45.     The lab report of blood work done while Plaintiff was in the Finney County jail showed that Plaintiff was "reactive" to the hepatitis C antibody, but further noted that this only indicated exposure and "Supplemental testing recommended *as clinically indicated*."  (Emphasis added). (Doc 205, Stip. a.7, c;  Ex. L, p. 1 ).

46.     Within a month after the lab report, Plaintiff was seen by Matthew Byrnes at St. Catherine Hospital who noted that Plaintiff had hepatitis C.  (Ex. O; Doc 205, Stip. a. 2.,  c).

47.     Referencing the hepatitis-C, Dr. Byrnes stated: "Will just monitor this for now." (Id.)

48.     In 2015, Newsome provided Plaintiff information on Hepatitis-C.   (Ex. FF;  Newsome Affd., ¶ 10).

49.     In November, 2017 Plaintiff submitted an inmate request form inquiring about the new curative treatment for Hepatitis-C. (Plaintiff's Exhibit J)

50.     People can live with Hepatitis-C for years without significant symptoms or serious damage.  (Newsome Affd., ¶ 5; Perkins Affd. ¶¶ 4-5; Britt Affd., ¶ 5-6).

51.     Blood work drawn on October 2, 2017 showed Plaintiff's liver enzymes to be within normal limits. (Ex. N; Doc 205, Stip. a. 1.,  c).

52.     Thirty percent of people with Hepatitis C will clear it without medical treatment. (Perkins Affd., ¶ 6).

53.     Not every one with Hepatitis C will benefit from the treatment Plaintiff was asking for. (Perkins Affd., ¶ 7; Britt Affd., ¶ 7).

54.     Not every one with Hepatitis C should be provided the treatment Plaintiff was asking for.  (Perkins Affd., ¶ 7; Britt Affd., ¶ 8).

55.     Patient selection is important to the success of the treatment was requesting. (Perkins Affd., ¶ 8).

56.     Once the Hepatitis-C treatment is started, it is detrimental to interrupt it. (Perkins Affd., ¶ 9; Newsome Affd., ¶ 9).

57.     Plaintiff was a poor candidate for the treatment he requested due to his demonstrated non-compliance with medical advice. (Perkins Affd., ¶ 8; Welch Affd. ¶ 8).

58.     While Plaintiff was in the Finney County jail, he was not exhibiting symptoms indicating an immediate need for treatment for Hepatitis-C. (Perkins Affd., ¶ 10; Britt Affd., 10; Newsome Affd., ¶ 5).

59.     On May 31, 2018, Plaintiff was seen at Genesis to discuss several of his medical issues, including his hepatitis.  No medical treatment was prescribed or suggested for the hepatitis. (Ex.MM; Doc 205, Stip.  c).

60.     A CT scan was conducted in September, 2018 for Plaintiff's abdominal pain.  The physician's report of that procedure noted that Plaintiff's AST and ALT were mildly elevated but made no recommendation for treatment for the hepatitis. (Ex. W; Doc 205, Stip.  c.).

61.     No healthcare provider advised jail staff that the chronic condition with which Plaintiff had lived for over a decade without serious damage had become serious or required immediate treatment.  (Newsome Affd., ¶¶ 5,8; Orebaugh Affd., ¶¶ 6-7; Lawson Affd., ¶¶ 6-7; Bascue Affd., ¶ 5; Welch Affd., ¶ 7).

62.     No healthcare provider recommended any testing that was not done or that further

testing was clinically indicated.  (Newsome Supp. Affd. ¶ 3).

63.     It was known that Plaintiff would be moved to KDOC upon completion of his criminal case and that the treatment he was requesting would be available to him there without interruption.  (Newsome Affd, ¶ 7; Welch Affd., ¶ 8).

64.     When Plaintiff arrived at KDOC, he was provided treatment for his Hepatitis C. (Doc. 205, Stip. a.3).

65.     Plaintiff has been cured of Hepatitis C. (Doc. 205, Stip. a.4).

66.     Lab reports after Plaintiff was cured show his AST and ALT values to be well within normal limits.  (Ex. LL; Doc 205, Stip. a. 4.,  c).

67.     Sheriff Bascue was not involved in Plaintiff's healthcare.  ( Bascue Affd., ¶ 3).

68.     It was the policy of the Finney County Sheriff to provide medical treatment that was obviously necessary and to follow the recommendations and advice of inmates' physicians concerning needed treatment.  (Bascue Affd., ¶ 7; Welch Affd., 4-5).

69.     Finney County Jail policies gave authority to the medical personnel to determine what medical consults and treatment were needed.  (Welch Affd., ¶ 3-5. Ex. NN).

70.     Sheriff Bascue was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Bascue Affd., ¶ 4).

71.     Sheriff Bascue did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician.  (Bascue Affd., ¶ 6).

72.     Lt. Lawson was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Lawson Affd, ¶ 7).

73.     Lt.  Lawson did not deny Plaintiff any treatment that was obviously necessary or

mandated by a physician.  (Lawson Affd., ¶ 6).

74.     Capt. Orebaugh was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C.  (Orebaugh Affd., ¶ 7).

75.     Capt, Orebaugh did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician.  (Orebaugh Affd., ¶ 6).

76.     Mark Welch was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Welch Affd, ¶ 6-8).

77.     Mark Welch did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician. (Id.).

78.     Jail Administrator Mark Welch spoke with medical personnel at the health department and was advised that it would be best to let the treatment Plaintiff was demanding be provided at the KDOC facility to which he would be sent. (Welch Affd., ¶ 8).

79.     Michelle Newsome was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C.  (Newsome Affd., 6-8).

80.     In response to Plaintiff's request for treatment, Michelle Newsome consulted ARPN Gretchen Dowdy, who advised that Plaintiff was not symptomatic and not in need of immediate treatment.  (Michelle Newsome's supplemental answer to Interog. 9; Newsome Supp. Affd, ¶ 2).

81.     If plaintiff's healthcare providers had recommend the treatment Plaintiff requested, it would have been provided.  (Welch Affd., ¶ 9).

## ARGUMENT AND AUTHORITY

"Summary judgement is appropriate only if the moving  party demonstrates that no genuine

-14-

Case 5:19-cv-03025-JAR   Document 212   Filed 07/18/23   Page 15 of 30

issue of material fact exists and that it is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002); F. R.C.P. 56.

Plaintiff's memorandum does not meet this standard.  It  is essentially an argument of his case, requesting that the record be construed in the light most favorable to him, not Defendant's.  He often concedes the presence in the record of facts relevant to the issue he addresses, but contrary to his position.  He simply argues that the court should ignore the unfavorable evidence and accept his spin on the facts.

When all of facts relevant to the dispositive issues are considered, they not only defeat Plaintiff's claim to summary judgment, but establish that all of the Defendants are entitled to summary judgement as a matter of law.

Plaintiff's argument, boiled down to its essence is:

    1.      He had Hepatitis C. ( Not disputed).

    2.      He demanded a particular treatment at a particular time. (Not disputed).

    3.      Therefore the defendants were deliberately indifferent. [5]

But this overlooks a lot.  He is not entitled to any treatment he wants, when he wants it, regardless of whether it is medically needed or even contraindicated.  He must show deliberate indifference to a known serious medical need.  In this case there is no evidence that the treatment was indicated at all, let alone rose to a serious need, while he was in the Finney County jail.  All of his healthcare providers who addressed the issue did not recommend that the treatment be provided. In fact, all of them opined that the treatment at the jail was contraindicated and that it should wait to be started until he arrived at KDOC.

---

[5]Plaintiff has no negligence claim.  He must, therefore, establish deliberate indifference.

-15-

Beyond that, even if the healthcare providers are all wrong about that, there is no evidence that the jailers knew more than the medical personnel and, therefore, nothing to indicate deliberate indifference to a serious risk by the jailers.

**I.      No constitutional right of Plaintiff has been violated.**

In order for a defendant to be liable on a constitutional claim for dely or denial of medical care, they must be deliberately indifferent to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Walton v. Gomez,* 745 F. 3d 405, 429 (10th Cir 2014).   This standard involves an objective and a subjective component.

The objective component requires "objective evidence that the deprivation at issue was in fact sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Mata v. Saiz,* 427 F. 3d 745 (10th Cir. 2005); *Gardiner v. MacBryde,* 2020 U.S.Dist. LEXIS 603 *26 (D. Kan. 2020).   In order to constitute a "serious medical need" for purposes of an eighth amendment claim, the condition must have been "diagnosed by a physician *as mandating treatment* or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  (emphasis added) *Gee v. Pacheco,* 627 F. 3d. 1178, 1192 (10th Cir. 2010); *Sealock v. Colorado,* 218 F. 3d 1205,1209 (10th Cir, 2000).

The subjective component requires that the officials knew of an excessive risk and knowingly disregarded it.  *Mata,* 427 F. 3d at 751.

Neither component can be established in this case certainly not as a matter of law requiring summary judgment in favor of the Plaintiff.

**A.      The objective component cannot be established.**

The treatment Plaintiff demanded was not a serious medical need.  Hepatitis-C *can* be a

serious condition and, therefore, the *allegation* of failure to treat Hepatitis-C is sufficient to get past

a motion to dismiss. *See Bush v. Doe*, 858 Fed. Appx. 520, 523 (3rd Cir. 2021); *Mitchell v. Nobles*,

873 F.3d 869, 876 (11th Cir. 2017). The district court in this case also held that the allegation was

sufficient to survive screening. (Doc. 62, p. 7). However, we are now at the summary judgment

stage and it is incumbent upon Plaintiff to present evidence that his particular condition constituted

a "serious medical need" at the time he was incarcerated in Finney County.     Merely having a

diagnosis of Hepatitis-C, without more, does not meet this burden.

> But persuasive authority from within this District and the
> United States  Court of Appeals for the Tenth Circuit ("Tenth
> Circuit") suggests a diagnosis of chronic Hepatitis-C, without
> more, does not constitute an objectively serious medical need
> for purposes of an Eighth Amendment deliberate indifference
> claim. See, e.g., *Whitington v. Moschetti*, 423 F. App'x 767, 773
> (10th Cir. 2011) (concluding Hepatitis-C was not an objectively
> serious medical need because there was no evidence the
> plaintiff suffered substantial harm from any delay in treatment);
> *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016)
> (concluding the plaintiff's Hepatitis-C was not an objectively serious
> medical need before 2006, because there was no evidence he
> suffered serious complications), aff'd in part, vacated in part on other
> grounds, 882 F.3d 1270 (10th Cir. 2018).

*McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020).

Plaintiff is required to show that a physician mandated a need for the treatment or that it

should have been obvious to a layman.  There is no evidence in the record to support either

proposition -- in fact, the uncontroverted facts negate both.  They certainly are not established as a

matter of law.

Plaintiff's physicians were aware of Plaintiff's Hepatitis-C diagnosis but mandated no

treatment for it, indicating instead that this condition would just be monitored.  (DSAF 46-47, 59-

61). Medical personnel advised the jailers and Nurse Newsome that Plaintiff was not exhibiting symptoms indicating a need for immediate treatment. (DSAF 58,61, 70- 80). An ARNP specifically consulted on the question by the jail nurse advised that, because he was not symptomatic, the treatment Plaintiff was requesting could wait until he arrived at the KDOC facility where it could be administered under existing protocols without interruption. (DSAF 78, 79).

The mere fact that one is diagnosed with Hepatitis-C, does not mean that there is an *immediate* need for treatment. (DSAF 50-54). Thirty percent of persons with Hepatitis C will clear the disease without medical treatment. (DSAF 52). A person with Hepatitis C can live for a long time without symptoms or damage. (DSAF 50). Not everyone who has Hepatitis C will benefit from treatment. (DSAF 54). Patient selection for treatment is important to the success of the treatment demanded. One of the factors is whether the patient has a history of non-compliance with medical care. (DSAF 55, 57). Plaintiff in this case has a significant history of non-compliance. (DSAF 15-20).

Another factor is that, once the treatment Plaintiff was asking for in this case has begun, it is detrimental to interrupt it. It is better to wait to begin it at a time when it will not be interrupted. (DSAF 56). The move from Finney County to KDOC could have resulted in an interruption that could be avoided by waiting to start the treatment until Plaintiff arrived at the KDOC facility.

Plaintiff has named no medical experts to establish a need for immediate treatment. All of the evidence in the record that addresses that issue indicates that there was no need for immediate treatment. (DSAF 46-47, 59-61,  58, 61, 70, 72, 74, 76, 77, 78, 80). None of it indicates there was.

In the light of those facts, it also cannot be fairly said that a need for immediate treatment that was not seen or mandated by any of multiple healthcare providers should have been obvious to

-18-

laymen jailers.

Thus, Plaintiff's chronic and non symptomatic Hepatitis-C was not a "serious medical condition" while he was in the Finney County Jail.

### B.   The subjective component cannot be established.

Even if it is assumed that Plaintiff's Hepatitis-C was a serious condition and that it should have been treated while he was in Finney County, there is no evidence that the jailers knew that and disregarded it.  "A prison official acts with deliberate indifference only if he knows that the inmate is facing "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.". . . Accordingly, not every claim of inadequate prison medical treatment violates the Eighth Amendment.  *Estelle* recognized that a prison official is not liable under the Eighth Amendment if his mental culpability falls short of deliberate indifference. 429 U.S. at 105-06."  *Shipps v. Groves,* 2023 U.S. App. LEXIS 10781 *3-4 (10th Cir. 2023).

In this case, all any of the jail defendants knew was that Plaintiff had a diagnosis of Hepatitis-C and some of them knew that he wanted a particular treatment.  None of them knew of any medical support for Plaintiff's demand – because there was none.  Sheriff Bascue was not involved in Plaintiff's healthcare and was never aware of any need for treatment.  (DSAF 67, 70-71).  Jail Administrator Welch was never aware of a need for treatment.  (DSAF 76-77).  Welch consulted the medical personnel at the health department and was advised that the better choice was to let the treatment be provided at the KDOC facility where it could be provided without interruption.  (DSAF 78).  Capt. Orebaugh was never made aware of a need for treatment.  (DSAF 74).  Lt. Lawson was not aware of any need for treatment.  (DSAF 72).  Nurse Newsome was not aware that Plaintiff was in need of the treatment at the Finney County jail.  (DSAF 79).  She discussed Plaintiff's request for

the treatment with the APRN who advised that it was not an immediate need.  None of the jail personnel or Nurse Newsome denied any treatment recommended by any healthcare provider. (DSAF 71, 73, 75, 77).  If Plaintiff's healthcare providers had recommended the treatment, it would have been provided.  (DSAF 81).

The jailers are not medical personnel and they did what the law requires of them – they followed the recommendations of Plaintiff's healthcare providers.  Plaintiff was given access to physicians who were aware of his Hepatitis-C diagnosis.  None of them recommended that he be treated for it in any way.  In particular, none of them recommended that the treatment Plaintiff requested be provided immediately.  None of them suggested that the curative treatment could not wait until he arrived at KDOC where it would be available without interruption.  In fact, when specifically asked about Plaintiff's requested treatment, they advised that it would be better to wait until he arrived at KDOC to begin the treatment.

Plaintiff appears to be under the impression that his mere demand for a particular treatment makes it mandatory, even if no health care provider agrees that he needed it then and every provider specifically consulted about his request advised against it.  But a prisoner's disagreement with the medical judgement of his providers does not arise to a claim of constitutional dimensions. *Coulhurst v. Campbell,* 2009 U.S. Dist. LEXIS 148826 (D. N.M. 2009); *Olson v. Stotts,* 9 F. 3d 1475 (10th Cir. 1993).   A failure to provide medical care, even if negligent and even if constituting medical malpractice, does not give rise to a constitutional violation.  *Perkins v. Kansas Dep't of Corrections,* 165 F. 3d 803, 811 (10th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).  The mere fact that Plaintiff requested a treatment that was available but was not provided does not show deliberate indifference when there is no medical indication of a need for the treatment at the time it was

-20-

demanded and, in fact, there was medical indication that it would not be a good idea to begin the treatment prior to transfer to the KDOC facility.

Plaintiff points to two lab reports that contain the language that further testing was recommended or needed as or if "clinically indicated." But no provider who reviewed those reports suggested that the further testing was clinically indicated or ordered it. All of them who specifically addressed Plaintiff's Hepatitis-C indicated they would just monitor it or specifically recommended against starting the treatment at the Finney County jail.

The treatment Plaintiff was demanding is expensive and, Plaintiff claims that he was told that cost was a factor in the decision. That is a controverted fact. But even assuming it to be true, everyone, incarcerated or not, has to consider the cost of medical treatment in making a decision as to whether and when it will be received. Being incarcerated does not free Plaintiff from such considerations:

> Defendants allegedly delayed treating Bush's Hepatitis C for a nonmedical reason: cost. To be sure, "the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997).

*Bush v. Doe*, 858 Fed. Appx. 520, 523 (3ʳᵈ cir 2021).

Thus, even if it is taken as true that cost was a consideration in the decision to deny Plaintiff's request to be immediately provided with the curative treatment, that fact alone does not establish deliberate indifference. This was a relatively new treatment, with which jailers, particularly those in rural parts of the country, were not familiar. There was no apparent or medically documented need to administer the treatment immediately. Plaintiff was not a good candidate due to his non

compliant and resistive behavior.  It would have been detrimental to have started the treatment only to have it interrupted.  Plaintiff's disputes with the Finney County Jailers had resulted in a history of non-compliance with medical recommendation, hunger strikes, suicide threats that did not bode well for starting the treatment in Finney County.  It was known that Plaintiff would be transferred to KDOC and that the transfer could interrupt his treatment.  It was known that the treatment was available at KDOC from providers who already had a policy and procedure in place for administering it without interruption, if medically indicated.  There was no indication that Plaintiff was suffering or would suffer harm as a result of waiting until he went to KDOC where the treatment could be administered at the cost of the state – rather than a single rural county -- without interruption under an established protocol.  Under these circumstances, considering the cost as one factor is not indicative of deliberate indifference, particularly when no physician is suggesting immediate treatment or that a delay would be medically problematic.

Moreover, Plaintiff's testimony is that he was told that cost was a factor.  He does not provide any evidence that will meet his burden of establishing which, if any, of the individual defendant's actually made a decision to deny the treatment because of the cost.  It is the plaintiff's burden to prove individual involvement of a particular defendant.  *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018)  A hearsay statement indicating that cost was a factor in someone's mind does not establish deliberate indifference at all.  It certainly does not establish deliberate indifference by any identifiable individual defendant.

The evidence is replete with medical reasons why Plaintiff was not given the treatment.  (DSAF).  And Plaintiff has no expert testimony that would support a conclusion that the treatment should have been provided form a medical point of view.  Plaintiff's mere disagreement with

judgment of his medical providers is not actionable under the 8th amendment. *Coulhurst v. Campbell,* 2009 U.S. Dist. LEXIS 148826 (D. N.M. 2009); *Olson v. Stotts,* 9 F. 3d 1475 (10th Cir. 1993).  Even a negligent failure to provide medical care that constitutes medical malpractice, does not give rise to a constitutional violation.  *Perkins v. Kansas Dep't of Corrections,* 165 F. 3d 803, 811 (10th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).  The mere fact that Plaintiff requested a treatment that was available but was not provided does not show deliberate indifference when there is no medical indication of a need for the treatment at the time it was demanded and, in fact, there was medical indication that it would not be a good idea to begin the treatment prior to transfer to the KDOC facility.

This situation presents the classic example of a mere disagreement between an inmate and his healthcare providers about the timing of a treatment or, at most, medical negligence.  There is simply no evidence to indicate that any jail defendant knew that plaintiff had a condition for which any physician mandated treatment or that a need for such treatment was obvious.  There is simply no evidence that any defendant was aware of an excessive risk to plaintiff and disregarded it.  There was no deliberate indifference and no constitutional violation.

**II. No harm shown.**

" 'If the claim alleges inadequate or delayed medical care, the prisoner must show that the delay in treatment resulted in "substantial harm.' *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)".  *Shipps v. Groves*, *supra* at 4.

Plaintiff has identified no expert witness to establish that he has suffered any harm, let alone substantial harm.  But the harm he claims is not harm that lies within the realm of a lay jury and, therefore, requires expert testimony.  "The standard of care for treating hepatitis doesn't fall within

the realm of common knowledge" and requires expert testimony.  *Sperry v. Corizon Health, Inc.,* 2022 U.S. App. LEXIS 4874 ( 10th Cir. 2022).  *See also: McCleland v. Raemisch,* 2021 U.S. App. LEXIS 29490 (10th Cir. 2021)(expert testimony necessary to establish causation in a claim for delayed treatment for hepatitis C); *Zartner v. Miller,* 760 Fed. Appx. 558 (10th Cir. 2019)(given the two separate uses of force that could have caused the fracture, causation entails a medical question beyond a layperson's ordinary experience); *Fane v. Zimmer, Inc*., 927 F.2d 124, 131 (2d Cir. 1991) (concluding that expert medical testimony was necessary on the "medical question" of "[w]hat causes a bone to fracture" because the injury had been complex, involved a complicated surgery, and causation went "beyond the sphere of the ordinary juryman");  *Harvey v. United States*, 685 F.3d 939, 952-53 (10th Cir. 2012) (upholding summary judgment for the defendant because expert testimony was necessary to show causation between improper medical treatment and further injury to a hand that had been fractured); *Smith v. Curran*, 28 Colo. App. 358, 472 P.2d 769, 771 (Colo. App. 1970) (requiring expert testimony because "the cause of an infection" is a matter lying "within the field of medical experts").

Whether the Plaintiff was in need of immediate treatment for hepatitis is not within the purview of a lay jury.  Even more complex and subtle is the question of whether Plaintiff suffered any harm, let alone substantial harm, during the period of time between his request for the treatment and its successful administration at the KDOC facility.  The only evidence in the record on the issue is that people can live for years without significant harm.  Plaintiff had, in fact, lived with this condition for at least 18 years before he came to the jail.  He is now cured.  He has not even established that he has significant liver damage at all, let alone, what if any occurred between 2015 and 2019.

Plaintiff's previous statements in pleadings and court conferences, suggest that he will contend that he had abdominal pain that he attributes to his Hepatitis-C. But the record is replete with complaints of abdominal pain that no physician attributed to Hepatitis-C. Rather, his abdominal pain was attributed to a variety of possible causes. (DSAF 22-23, 25-32, 38-44). Plaintiff himself attributed his abdominal pain to other causes. (DSAF 25, 32). One of his physicians suggested that the cause of his complaints could be "secondary gain." (DSAF 43).

Further complicating the issue is the question of whether earlier treatment would have prevented any injury of which the Plaintiff complains. In fact, even though he is now cured, he contends that his liver continues to deteriorate as time passes. (Doc. 209-2, p. 2) Assuming this is true, is this because of the 18 years he lived with the condition without any treatment at all? Or would it be happening even if the treatment had been provided earlier? No lay jury can answer those questions and Plaintiff has designated no expert who can. Indeed it is not even known if even an expert could determine what, if any damage occurred in the 4 or less years Plaintiff was in the Finney County jail versus what had already occurred as a result of the 18 previous years or would have continued to occur, even if the treatment had been provided when Plaintiff first requested it.

Plaintiff also attempts to offer his own explanation of medical records or literature, but he has no medical expertise and such attempts by him do not constitute admissible evidence.

> Mr. McCleland's exhibits in support of his Responses to the
> Motions for Summary Judgment include his medical records,
> large amounts of scientific literature, his rebuttals to the expert
> opinions of Defendant Tiona and Dr. Randolph O. Maul, and
> documents from separate lawsuits. . . .. Plaintiff, however, fails
> to offer any witness competent to interpret his medical records
> or the scientific literature, and this court concludes Mr. McCleland
> fails to demonstrate the requisite expertise to interpret these
> documents himself or to offer rebuttal opinions to those of Defendant

> Tiona and Dr. Maul. See Fed. R. Evid. 701-703, 803(18); cf.
> *Gibson v. Vanjani*, No. 17-CV-01705-EMC, 2018 U.S. Dist. LEXIS
> 144658, 2018 WL 4053458, at *9 & n.5 (N.D. Cal. Aug. 24, 2018)
> (sustaining the defendants' hearsay objections to the pro se plaintiff's
> use of internet medical articles regarding Hepatitis-C since the plaintiff
> was not competent to testify as an expert as to these articles). Further,
> while the court can take judicial notice of documents publicly filed in
> other lawsuits, the court may not consider them for the truth of the
> matter asserted. See *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th
> Cir. 2006).

*McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *6.

Plaintiff cannot establish that he suffered any harm by not being provided the treatment he requested before be arrived at KDOC. He certainly cannot establish that he suffered substantial harm in that time frame.

## III.    Qualified immunity

On page 6 of his memorandum of law, Plaintiff titles a section "Qualified immunity." However, he then confesses to being confused and proves it by arguing about 11th amendment immunity and whether the sheriff is an arm of the state. Defendants have not raised that issue. But the Defendants have raised the issue of qualified immunity and it defeats Plaintiff's motion for summary judgement.

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless the Plaintiff proves otherwise. *See Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). "Qualified immunity protects public officials performing discretionary functions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Anderson v. Willis*, 917 F. Supp. 2d 1190, 1195 (D. Kan. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The

key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken. *Laidley v. McClain*, 914 F.2d 1386, 1394 (10th Cir. 1990).

Once a qualified immunity defense is asserted, the burden shifts to the Plaintiff to meet a two part test. *Saucier v. Katz,* 533 U.S. 194, 201(2001); *Green v. Post,* 574 F.3d 1294, 1300 (10th Cir 2009). First, Plaintiff must establish that an individual defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Second, if Plaintiff establishes that a constitutional right was violated, then he must also show that the violated right was clearly established. *Cortez* v *McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). Although a plaintiff must establish both elements, the Court may consider the elements in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Whether a right is clearly established is examined under the "specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. A right is clearly established if "every reasonable official would have understood what he is doing violates" the constitutional right at issue. *Alford v. Buchholz,* 2021 WL 168761 at *5-6 (D. Kan. 2021)(quoting *Reichle v. Howard,* 566 U.S. 658, 664 (2012); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). For this to be the case "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the Plaintiff maintains." *Cortez*, 478 F.3d at 1114-15 (citing *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

In defining the allegedly clearly established right at issue, the Court must not define the right at too high a level of generality. *Mullenix*, 136 S. Ct. at 308. That is because general propositions of law are "of little help in determining whether the violative nature of particular conduct is clearly

established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  Instead, the Court is tasked with defining the clearly established right at issue by looking at the specific context of the case.  *Pompeo v. Bd. of Regents*, 852 F.3d 973, 981 (10th Cir. 2017) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).  In other words, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  Otherwise, plaintiffs would be able to render the defense of qualified immunity essentially toothless by always alleging the violation of extremely abstract rights. *Id.*

The first prong is addressed above – Plaintiff cannot establish the elements of his claim of a violation of his constitutional rights by deliberate indifference to a serious medical need.

Plaintiff also has not met the second prong by pointing to any case law before 2019 that made it clear to every jailer that it would violate the 8th amendment to fail to give an inmate with chronic hepatitis the treatment he was demanding, when he wanted it, despite the fact that he had been seen by multiple physicians who were aware of his condition but prescribed no treatment for it, and when the jailers knew that the inmate would be able to get the treatment he wanted at the KDOC without interruption.  The jail nurse and the jail administrator both specifically addressed Plaintiff's request with medical personnel and were told that Plaintiff was not a good candidate for the treatment and that, if he were to receive it, it would be better to wait until he arrived at KDOC.

Further complicating Plaintiff's position is the undisputed fact that he frequently was non-compliant and resistive of attempts by his health care providers to determine the cause of his complaints.  Plaintiff alleges that he was experiencing abdominal pain that he now attributes to his Hepatitis-C.  But no doctor has made that connection and Plaintiff was uncooperative with their attempts to determine the cause of his abdominal pain.

-28-

Tenth Circuit precedent taught officers in Defendants' position before 2019 that Hepatitis-C that is not symptomatic and that has not been shown to have resulted in substantial harm is not a serious medical need. *McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020) (citing *Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (concluding Hepatitis-C was not an objectively serious medical need because there was no evidence the plaintiff suffered substantial harm from any delay in treatment); *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016), aff'd in part, vacated in part on other grounds, 882 F.3d 1270 (10th Cir. 2018) (concluding the plaintiff's Hepatitis-C was not an objectively serious medical need before 2006, because there was no evidence he suffered serious complications).

> Under these circumstances, the court finds that plaintiff fails to establish an Eighth Amendment claim. Defendants clearly acknowledge that plaintiff had a serious condition that was continuously monitored through clinic visits and lab tests. Plaintiff fails to establish that defendants were deliberately indifferent under both an objective and subjective analysis. First, there is no evidence of a deprivation that was sufficiently serious to meet the objective component. The care providers recognized plaintiff's condition and provided ongoing monitoring. Second, there is no evidence of defendants knowingly disregarding risk to plaintiff's health.

*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1170-1171 (D. Kan 2016).

These defendants' entitlement to qualified immunity requires that Plaintiff's motion be denied.

## CONCLUSION

Plaintiff clearly has not met the burden required for summary judgment in his favor as to any defendant, least of all the jail defendants.

WATKINS CALCARA, CHTD.

/s/ ALLEN G. GLENDENNING
    Allen G. Glendenning, #12187
    1321 Main Street - Suite 300
    P.O. Drawer 1110
    Great Bend, Kansas  67530
    (620) 792-8231   Fax (620) 792-2775
    aglenden@wcrf.com
    Attorneys for Defendants Kevin Bascue,
    Mark Welch, Jeff Orabaugh, Kyle Lawson
    and Michelle Newsome

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July  2023, a copy of the above and foregoing Response to Plaintiff's Motion for Summary Judgment  was filed electronically with the clerk of the court which will send a notice of electronic filing to all registered counsel of record, and that a copy was mailed, postage prepaid and properly addressed, to:

Paul Guebara, #40223
Ellsworth Correctional Facility
P.O. Box 107
Ellsworth, KS 67439
Pro-Se Plaintiff

Brian C. Wright
Wright Law Office, Chtd.
113 W. 13th Street
Hays, KS 67601
Attorney for Finney County Health Dept.,
Harold Perkins and Hannah Britt (Douty)

    /s/ ALLEN G. GLENDENNING
    Allen G. Glendenning, #12187

-30-