**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

PAUL GUEBARA,

                            Plaintiff,

              v.

FINNEY COUNTY SHERIFF'S DEPT.,
KEVIN BASCUE,
KYLE LAWSON,
JEFF OREBAUGH,                             Case No. 19-CV-3025-JAR-KGG
MARK WELSH,
MICHELLE NEWSOME,
FINNEY COUNTY HEALTH DEPT.,
DR. HAROLD PERKINS,
GRETCHEN DOWDY,
HANNAH DOUTY,

                         Defendants.

**MEMORANDUM SUBMITTED BY DEFENDANTS**
**FINNEY COUNTY HEALTH DEPARTMENT, PERKINS, AND**
**BRITT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants Finney County Health Department (FCHD), Harold Perkins, MD (Dr. Perkins) and Hannah Douty Britt (APRN Britt) submit this memorandum of law in support of their motion for summary judgment. It borrows heavily from the Memorandum in Support of Motion for Summary Judgment filed by the Jail Defendants, to avoid unnecessary duplication of effort and reading by the Court.

Plaintiff sued these defendants after information regarding their involvement was provided via the *Martinez* report. Plaintiff also filed the action against a former FCHD employed provider, Gretchen Dowdy, who has not appeared in the action. Finney County Health Department provided medical care to the Plaintiff intermittently during his incarceration in the Finney County Jail from 2015-2019.  On multiple occasions, he was

1

transported by jail personnel to outside medical facilities to be seen and treated by a variety of healthcare providers, for a variety of reasons.

Plaintiff alleges that he was denied a newly available curative treatment for Hepatitis-C. He claims FCHD, Dr. Perkins and Hannah Britt were deliberately indifferent to a need for the treatment while he was in the Finney County Jail. Unfortunately for the plaintiff's claims, he has no proof that these defendants were aware that his case of Hepatitis-C was ever a serious medical need that required immediate treatment. The uncontroverted evidence is that none of these defendants believed his condition required treatment.

To the extent they were ever presented with the question, the record reveals no indication that these defendants ever made any determination that Mr. Guebara would be a good candidate for treatment. He had demonstrated noncompliance with recommendations, medication prescriptions, and other follow-up instructions. There was no reasonable certainty that he would complete treatment uninterrupted. One important consideration in patient selection for the treatment is that it must not be interrupted once started.

It was known that Plaintiff would be leaving Finney County upon sentencing and that the treatment he sought would be available to him without interruption at the KDOC when he arrived there.  In fact, upon arrival at the KDOC facility, Plaintiff was provided the treatment and cured.  There is no evidence that Plaintiff suffered any or substantial harm by waiting to receive the treatment until he arrived at KDOC.

The individual defendants are entitled to judgment because they did not violate

plaintiff's constitutional rights, did not deny him treatment for a serious medical condition, and are entitled to qualified immunity.

## STATEMENT OF FACTS

The following statement of facts is copied from the statement submitted by the Jail Defendants in support of their motion for summary judgment, with minor modifications. References to exhibits use their exhibit labels, to avoid confusion. Also, FCHD, Britt, and Perkins are not re-submitting those exhibits because doing so would be entirely duplicative. For the record upon which FCHD, Britt, and Perkins rely, therefore, the Court is referred to the exhibits submitted by the Jail Defendants.

1.      Plaintiff was convicted of first-degree murder in 1983. (Ex. A, submitted by Jail Defendants with Memorandum in Support of MSJ, KDOC, p.1.)

2.      While he was incarcerated for that murder, he tested positive for hepatitis-C in 2003. (RFA to Plaintiff and Plaintiff's response. ¶¶ 1 and 2; Doc. 205, p. 2, stipulation b.3; Ex. KK submitted by Jail Defendants with Memorandum in Support of MSJ).

3.      After serving 22 and half years, Plaintiff was paroled.  (Pretrial order, Stipulation c.: Ex. A., p. 2 submitted by Jail Defendants with Memorandum in Support of MSJ).

4.      In 2015, Plaintiff was again arrested for attempted murder and initially lodged in the Finney County jail.   (Ex. A, pp. 1-2, submitted by Jail Defendants with Memorandum in Support of MSJ).

5.      Plaintiff was in the Finney County jail from February 26, 2015 to March 21,

2019. (Pretrial order, Stipulations a. 1-2, submitted by Jail Defendants with Memorandum in Support of MSJ).

6.      Plaintiff was convicted of attempted murder. (Ex. A, pp. 1-2 submitted by Jail Defendants with Memorandum in Support of MSJ).

7.      On March 21, 2019, Plaintiff was moved from the Finney County Jail to a Kansas Department of Corrections facility.   (Doc. 205, p. 2, Stipulations a. 2, submitted by Jail Defendants with Memorandum in Support of MSJ).

8.      When Plaintiff was booked into the Finney County jail in February of 2015, a medical screening form was completed.  Plaintiff indicated that he had once tested positive for Tuberculosis but reported no ongoing medical issues.  (Ex. C, Medical Screen; Lawson Affd., ¶ 8, submitted by Jail Defendants with Memorandum in Support of MSJ).

9.      During his incarceration, Plaintiff was seen repeatedly by a variety of healthcare providers for a variety of complaints and conditions.  (Ex. E, Lawson Affd., ¶ 8, submitted by Jail Defendants with Memorandum in Support of MSJ).

10.      In addition to the outside visits, Plaintiff was provided medical care by the Finney County Health Department, under contract.  (Newsome Affd, ¶ 3, submitted by Jail Defendants with Memorandum in Support of MSJ).

11.      During his visits to healthcare providers, Plaintiff was free to discuss any complaint with the healthcare providers for which he wished to be examined or treated. (Bascue Affd., ¶ 8; Welch Affd., ¶ 6; Perkins Affd. ¶ 8, submitted by Jail Defendants with Memorandum in Support of MSJ).

12.     During his time in the Finney County jail, Plaintiff repeatedly refused offered medical treatment.  (Newsome Affd., ¶ 4; Orebaugh Affd., ¶ 4; Lawson Affd., ¶ 4; Welch Affd., ¶ 9, submitted by Jail Defendants with Memorandum in Support of MSJ).

13.     Plaintiff repeatedly refused to take prescribed medications. (Ex. F, p. 2; Pretrial order, p. 2 Stip. C, submitted by Jail Defendants with Memorandum in Support of MSJ).

14.     On one occasion, Plaintiff finally agreed to take prescribed medication that he had been refusing for months, but only to "prove they don't work." (Ex. R; Newsome Affd., ¶ 10; Doc. 205, p. 2 stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

15.     Plaintiff refused medical prescriptions provided for his complaints of stomach pain.  (Ex X; Doc. 205, p. 2 stip. c; Newsome Affd., ¶ 11, submitted by Jail Defendants with Memorandum in Support of MSJ).

16.     On June 27, 2018, Plaintiff submitted a medical request to the jailers stating: "DON'T ORDER MEDS." (Ex. U; Newsome Affd. ¶ 10, Doc. 205, p. 2 stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

17.     On October 28, 2018, Plaintiff again submitted an inmate request form requesting that prescribed medication not be ordered.  (Ex. HH; Newsome Affd. ¶ 10; Pretrial Order, Stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

18.     Plaintiff was repeatedly seen for complaints of stomach pain. (Ex. E, F, I, J, L, M, Q, S, V, CC, DD, GG: Newsome Affd. ¶¶ 10-11, submitted by Jail Defendants with

Memorandum in Support of MSJ).

19.    In June 2015, Plaintiff reported stomach pain but related it to the blood

Pressure medication he was taking.  He was advised by the nurse to take the medication

with food. (Ex. I; Newsome Affd., ¶ 10, submitted by Jail Defendants with Memorandum

in Support of MSJ).

20.    Plaintiff was transported to see healthcare providers on July 7, 2015, at

which time he could talk to the healthcare providers about any issue or complaint he

wished, including any stomach pain he was having. (Ex. E; Lawson Affd. ¶ 8, submitted

by Jail Defendants with Memorandum in Support of MSJ).

21.    In September 2015 Plaintiff again reported stomach pain and, again stated

that it had started when he started taking his cardiac medications.  He was transported

to Compass Health on September 4, 2015.  Plaintiff reported that "Dr. Jack" there told

him to eat a snack at night to help with the stomach pain. (Ex. GG; Newsome Affd., ¶ 10,

submitted by Jail Defendants with Memorandum in Support of MSJ).

22.    Plaintiff was seen specifically for his stomach pain on September 17, 2015.

At that time, he was prescribed Omeprazole and scheduled for a follow up.  (Ex. V;

Newsome Affd., ¶ 11, submitted by Jail Defendants with Memorandum in Support of

MSJ).

23.    Plaintiff was transported to the hospital to be seen for his complaints of

stomach pain on September 28, 2015.  (Ex. J; Newsome Affd. ¶ 11, submitted by Jail

Defendants with Memorandum in Support of MSJ).

24.    A CT scan of Plaintiff's stomach, and blood work, were ordered, and

continued Omeprazole was prescribed for his stomach pain. (Id.)

25.     The blood work showed positive for the H. Pylori antibody. (Ex. L, p. 3, submitted by Jail Defendants with Memorandum in Support of MSJ).

26.     On September 30, 2015, the lab results were called to Nurse Newsome and antibiotics – Amoxicillin and Clarithromycin – were prescribed and provided. (Ex. F, M, submitted by Jail Defendants with Memorandum in Support of MSJ).

27.     On October 14, 2015, Plaintiff was again transported to the hospital for the ordered CT scan.  The CT scan was reported as showing positive for a hiatal hernia and possible gastritis but negative for mass.  (Ex. CC; Pretrial order, Stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

28.     Plaintiff again reported stomach pain in August of 2017 and stated that this stomach pain started 3 weeks ago. (Ex. S; Newsome Affd. ¶ 10, submitted by Jail Defendants with Memorandum in Support of MSJ).

29.     A stool sample was ordered. (Ex. DD; Pretrial Order, Stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

30.     Plaintiff initially refused to provide the ordered stool sample. (Id.).

31.      Unfortunately, when Plaintiff did finally provide a stool sample, it was lost by the laboratory.  (Ex. Q; Newsome Affd., ¶ 10, submitted by Jail Defendants with Memorandum in Support of MSJ).

32.     Plaintiff was advised of this and asked for another sample in January 2018. (Id.).

33.     Plaintiff again initially refused and did not provide the needed sample until

April 12, 2018.  (Ex. T; Newsome Affd., ¶ 10, submitted by Jail Defendants with

Memorandum in Support of MSJ).

34.    On April 30, 2018, Plaintiff was seen at Genesis for his stomach

complaints. The treatment prescribed was the same drug Plaintiff had previously

refused to take – Omeprazole. In addition, a CT scan was ordered.  (Ex. Z; Newsome

Affd., ¶ 11, submitted by Jail Defendants with Memorandum in Support of MSJ).

35.    On May 31, 2018, Plaintiff was taken to Genesis to discuss the results of

his CT scan and his abdominal pain.  Plaintiff again chose not to take the prescribed

Omeprazole. (Ex. X, Newsome Affd., ¶ 11, submitted by Jail Defendants with

Memorandum in Support of MSJ).

36.    When Plaintiff demanded another doctor, he was taken to Dr. Kessler on

June 25, 2018.  (Ex. II, Pretrial order, Stip. c, submitted by Jail Defendants with

Memorandum in Support of MSJ).

37.    The new doctor ordered a colonoscopy. (Ex. BB and Ex. EE; Pretrial

order, Stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

38.     On September 24, 2018, the colonoscopy was performed and showed

gastritis, and was otherwise normal. (Id.).

39.    On October 26, 2018, Plaintiff was again seen by Dr. Kessler who raised

two other possibilities for Plaintiff's reports of stomach pain: the possibility of gallbladder

issues and the possibility of "secondary gain". (Ex.  JJ; Pretrial order, Stip.  c, submitted

by Jail Defendants with Memorandum in Support of MSJ).

40.    Plaintiff was no longer having stomach pain at this time as it had abated

after the colonoscopy in September.  (Doc. 1, p. 11, submitted by Jail Defendants with Memorandum in Support of MSJ).

41.     The lab report of blood work done while Plaintiff was in the Finney County jail showed that Plaintiff was "reactive" to the hepatitis C antibody, but further noted that this only indicated exposure and "Supplemental testing recommended *as clinically indicated*."  (Emphasis added). (Pretrial order, Stip. a.7, c; Ex. L, p. 1, submitted by Jail Defendants with Memorandum in Support of MSJ).

42.     Within a month after the lab report, Plaintiff was seen by Matthew Byrnes, MD, at St. Catherine Hospital, who noted that Plaintiff had hepatitis C.  (Ex. O; Pretrial Order, Stip. a.2, c, submitted by Jail Defendants with Memorandum in Support of MSJ).

43.     Referencing the hepatitis-C, Dr. Byrnes stated: "Will just monitor this for now." (Id.)

44.     In 2015, Newsome provided Plaintiff information on hepatitis-C.   (Ex. FF; Newsome Affd., ¶ 10, submitted by Jail Defendants with Memorandum in Support of MSJ).

45.     In November 2017 Plaintiff submitted an inmate request form inquiring about the new curative treatment for hepatitis C. (Ex. MM, submitted by Jail Defendants with Memorandum in Support of MSJ)

46.     People can live with hepatitis C for years without significant symptoms or serious damage.  (Newsome Affd., ¶ 5; Perkins Affd. ¶¶ 4-5; Britt Affd., ¶ 5-6. submitted by Jail Defendants with Memorandum in Support of MSJ).

47.      Blood work drawn on October 2, 2017 showed Plainitff's liver enzymes to

be within normal limits. (Ex. N; Pretrial Order, Stip. a.1, c, submitted by Jail Defendants with Memorandum in Support of MSJ).

48.    Thirty percent of people with hepatitis C will clear it without medical treatment. (Perkins Affd., ¶ 6, submitted by Jail Defendants with Memorandum in Support of MSJ).

49.    Not everyone with hepatitis C will benefit from the treatment Plaintiff was asking for. (Perkins Affd., ¶ 7; Britt Affd., ¶ 7, submitted by Jail Defendants with Memorandum in Support of MSJ).

50.    Not everyone with hepatitis C should be provided the treatment Plaintiff was asking for.  (Perkins Affd., ¶ 7; Britt Affd., ¶ 8, submitted by Jail Defendants with Memorandum in Support of MSJ).

51.     Patient selection is important to the success of the treatment was requesting. (Perkins Affd., ¶ 8).

52.    Once the hepatitis C treatment is started, it is detrimental to interrupt it. (Perkins Affd., ¶ 9; Newsome Affd., ¶ 9, submitted by Jail Defendants with Memorandum in Support of MSJ).

53.    Plaintiff was a poor candidate for the treatment he requested due to his demonstrated non-compliance with medical advice. (Perkins Affd., ¶ 8; Welch Affd. ¶ 8, submitted by Jail Defendants with Memorandum in Support of MSJ).

54.    While Plaintiff was in the Finney County jail, he was not exhibiting symptoms indicating an immediate need for treatment for hepatitis C. (Perkins Affd., ¶ 10; Britt Affd., 10; Newsome Affd., ¶ 5, submitted by Jail Defendants with Memorandum

in Support of MSJ).

55.     On May 31, 2018, Plaintiff was seen at Genesis to discuss several of his medical issues, including his hepatitis. No medical treatment was prescribed or suggested for hepatitis. (Ex. Y; Pretrial Order, Stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

56.     A CT scan was conducted in September 2018 for Plaintiff's abdominal pain. The physician's report of that procedure noted that Plaintiff's AST and ALT were mildly elevated but made no recommendation for treatment for hepatitis. (Ex. W; Pretrial Order, Stip. c, submitted by Jail Defendants with Memorandum in Support of MSJ).

57.     It was known that Plaintiff would be moved to KDOC upon completion of his criminal case and that the treatment he was requesting would be available to him there without interruption. (Newsome Affd, ¶ 7; Welch Affd., ¶ 8, submitted by Jail Defendants with Memorandum in Support of MSJ).

58.     When Plaintiff arrived at KDOC, he was provided treatment for Hepatitis-C. (Pretrial Order, Stip. a. 3, submitted by Jail Defendants with Memorandum in Support of MSJ).

59.     Plaintiff has been cured of hepatitis C. (Pretrial Order, Stip. a.4, submitted by Jail Defendants with Memorandum in Support of MSJ).

60.     Lab reports after Plaintiff was cured show his AST and ALT values to be well within normal limits.  (Ex. LL; Pretrial Order, Stip. a.4, c, submitted by Jail Defendants with Memorandum in Support of MSJ).

61.     It was the policy of the Finney County Sheriff to provide medical treatment

that was obviously necessary and to follow the recommendations and advice of inmates'
physicians concerning needed treatment.  (Bascue Affd., ¶ 7; Welch Affd., 4-5,
submitted by Jail Defendants with Memorandum in Support of MSJ).

62.     Michelle Newsome was never aware or advised that Plaintiff required
immediate treatment for Hepatitis C.  (Newsome Affd., 6-8, submitted by Jail Defendants
with Memorandum in Support of MSJ).

63.     In response to Plaintiff's request for treatment, Michelle Newsome
consulted APRN Gretchen Dowdy, who advised that Plaintiff was not symptomatic and
not in need of immediate treatment. (Michelle Newsome's supplemental answer to
Interog. 9; Newsome Supp. Affd, ¶ 2, submitted by Jail Defendants with Memorandum in
Support of MSJ).

### ARGUMENT AND AUTHORITY

**I.     No constitutional right of Plaintiff has been violated.**

A defendant is liable on a constitutional claim for delay or denial of medical care if
the defendant was deliberately indifferent to a serious medical need.  *Estelle v. Gamble,*
429 U.S. 97, 104 (1976); *Walton v. Gomez*, 745 F. 3d 405, 429 (10th Cir 2014). This
standard involves an objective and a subjective component.

The objective component requires "objective evidence that the deprivation at
issue was in fact sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994);
*Mata v. Saiz,* 427 F. 3d 745 (10th Cir. 2005); *Gardiner v. MacBryde,* 2020 U.S.Dist. LEXIS
603 *26 (D. Kan. 2020). To constitute a "serious medical need" for purposes of an
eighth amendment claim, the condition must have been "diagnosed by a physician *as*

*mandating treatment* or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gee v. Pacheco,* 627 F. 3d. 1178, 1192 (10th Cir. 2010); *Sealock v. Colorado,* 218 F. 3d 1205,1209 (10th Cir, 2000) (emphasis added). Plaintiff cannot establish that his condition was an objectively serious medical need. He can point to no expert opinion or statement in the medical records supporting the existence of an objectively serious need.

The subjective component requires that the officials knew of an excessive risk and knowingly disregarded it.  *Mata,* 427 F. 3d at 751. Plaintiff has no proof that FCHD, Dr. Perkins, or APRN Britt believed or knew that the Hepatitis-C was a serious risk, nor that they knowingly disregarded it.

## A.     The objective component cannot be established.

The treatment Plaintiff demanded was not a serious medical need.

These defendants adopt and incorporate by reference as though set forth fully herein the arguments presented by the jail defendants and their legal analysis of the objective component contained in their Memorandum. These defendants see no need to restate the authority cited therein. These defendants add to their own argument the following.

Defendants Britt and Perkins have set forth the objective facts—uncontroverted because plaintiff has no expert to counter their statements—that: a Hepatitis-C diagnosis does not mean that there is an *immediate* need for treatment. (SOF 46-50); thirty percent of persons with Hepatitis C will clear the disease without medical treatment (SOF 48); a person with Hepatitis C can live for a long time without symptoms or

damage (SOF 46); not everyone who has Hepatitis C will benefit from treatment (SOF 50); patient selection for treatment is important to the success of the treatment demanded, and an important factor is whether the patient has a history of non-compliance with medical care (SOF 51, 53). Plaintiff in this case has a significant history of non-compliance. (SOF 12-17).

Defendants Britt and Perkins also note that once treatment begins, it is detrimental to interrupt it. It is better to wait to begin it at a time when it will not be interrupted. (SOF 52). That cuts against the notion that immediate treatment was at all desirable from an objective standpoint.

None of the evidence in the record indicates that there was a need for immediate treatment. (SOF 42-43, 54-56, 61, 62).

### B.    Subjective.

Assuming Plaintiff's Hepatitis-C was a serious condition, i.e., giving the plaintiff the benefit of the doubt for purposes of this portion of the argument, he can nevertheless provide no evidence supporting a claim that FCHD, APRN Britt, APRN Dowdy, or Dr. Perkins knew his Hepatitis-C was a serious medical condition and disregarded that fact.

It is uncontroverted that Nurse Newsome (who communicated and coordinated with FCHD providers), was not aware that Plaintiff needed treatment. (SOF 77). She discussed Plaintiff's request for the treatment with APRN Dowdy, who advised that it was not an immediate need. No outside providers sent any communication to Britt, FCHD, Perkins, or Dowdy any recommendation for treatment of the condition. To be more

precise, no outside providers recommended that the treatment Plaintiff requested be provided immediately.

Therefore, plaintiff has no proof that any of these defendants knew or had reason to know subjectively that he required treatment immediately for a serious condition. It is worth noting the plaintiff has not asserted a medical malpractice or negligence claim, which might be premised on the notion that health care providers *should have* realized he had a serious medical need. In a medical malpractice case, a plaintiff must prove: the defendant owed the patient a duty of care and was required to meet a certain standard to protect the patient from injury. *Esquivel v. Watters*, 286 Kan. 292 (2008). The standard of medical care is a matter to be established by the testimony of competent medical experts. *Chandler v. Neosho Memorial Hospital*, 233 Kan. 1, 574 P.2d 136 (1977).

Here, it is irrelevant whether these defendants should have been aware of plaintiff's purported serious medical need and/or the immediacy of treatment he required. Plaintiff can only proceed to trial with proof from the record that would tend to demonstrate that these defendants did in fact believe he had a serious medical need that required immediate treatment, regardless of what they ought to have known or believed.

As noted in the jail defendants' memorandum in support of Motion for summary judgment, a prisoner's disagreement with the medical judgement of his providers does not arise to a claim of constitutional dimensions. *Coulhurst v. Campbell,* 2009 U.S. Dist. LEXIS 148826 (D. N.M. 2009); *Olson v. Stotts,* 9 F. 3d 1475 (10th Cir. 1993).   A failure to

provide medical care, even if negligent and even if constituting medical malpractice, does not give rise to a constitutional violation.  *Perkins v. Kansas Dep't of Corrections,* 165 F. 3d 803, 811 (10th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).

Plaintiff points to two lab reports that contain the language that further testing was recommended or needed as or if "clinically indicated." But no provider who reviewed those reports suggested that the further testing was clinically indicated or ordered it. Hannah Britt never believed he needed immediate treatment during her time with FCHD. APRN Britt was involved in the care of plaintiff in 2015. It was during her involvement that Dr. Byrnes made a specific comment that they would just monitor Plaintiff's Hepatitis-C status.

Substantial time passed between late 2015 and 2017, without any indication in the record that there was any request for treatment or refusal to provide the treatment. By the time APRN Dowdy was involved for FCHD, there is no evidence that she specifically recommended starting the treatment at the Finney County jail. The uncontroverted evidence from Nurse Newsome is that APRN Dowdy recommended against it. Finally, plaintiff can point to nothing in the record indicating that Dr. Perkins was aware or knew of a serious medical condition that required immediate treatment. His affidavit establishes the contrary.

These defendants adopt and incorporate by reference the arguments regarding cost of treatment made by the jail defendants in their memorandum in support of motion for summary judgment. For defendants FCHD, Perkins, and Britt, it needs only to be added that there is no evidence that they considered the cost of treatment. There is no

evidence that these defendants decided to deny the treatment because of the cost. It is the plaintiff's burden to prove the individual involvement of a particular defendant. *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018).

There is simply no evidence that FCHD, Perkins, or Britt were aware of an excessive risk to plaintiff and disregarded it. There was no deliberate indifference and no constitutional violation.

## II. No harm shown.

These defendants adopt and incorporate as though set forth fully herein the entire argument and authority asserted by the jail defendants in section II of their memorandum in support of motion for summary judgment. These defendants see no need to repeat any of the jail defendants' argument, which applies equally to plaintiff's claims against these defendants.

Plaintiff cannot establish that he suffered any harm by not being provided the treatment he requested, much less that he suffered substantial harm.

## III.   Qualified immunity

These defendants adopt and incorporate as though set forth fully herein the entire argument and authority asserted by the jail defendants in section III of their memorandum in support of motion for summary judgment. The individual defendants, APRN Britt and Dr. Perkins, acting in their capacity affiliated with FCHD, to the extent they would be deemed public officials, are entitled to qualified immunity, if plaintiff asserts that they were acting in their individual capacities. Admittedly, it isn't clear what plaintiff asserts regarding whether they were acting in individual or official capacities.

But there is no doubt they were performing discretionary functions, involving the application of judgment to a set of medical facts, in the absence of any precise or specific policy or procedure applicable to their conduct. Notably, plaintiff has not asserted that they should have been guided by any specific policy or clearly established precedent regarding inmate requests for treatment of chronic hepatitis.

Tenth Circuit precedent clearly held that asymptomatic Hepatitis-C that has not been shown to have resulted in substantial harm is not a serious medical need. *McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020) (citing *Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (concluding Hepatitis-C was not an objectively serious medical need because there was no evidence the plaintiff suffered substantial harm from any delay in treatment); *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016), *aff'd in part, vacated in part on other grounds*, 882 F.3d 1270 (10th Cir. 2018) (concluding the plaintiff's Hepatitis-C was not an objectively serious medical need before 2006, because there was no evidence he suffered serious complications).

> Under these circumstances, the court finds that plaintiff fails to establish an Eighth Amendment claim. Defendants clearly acknowledge that plaintiff had a serious condition that was continuously monitored through clinic visits and lab tests.  Plaintiff fails to establish that defendants were deliberately        indifferent under both an objective and subjective analysis. First, there is no evidence of a deprivation that was sufficiently serious to meet the objective component. The care providers recognized plaintiff's condition and provided ongoing monitoring. Second, there is no evidence of defendants knowingly disregarding risk to plaintiff's health.

*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1170-1171 (D. Kan 2016).

Dr. Perkins and APRN Britt are entitled to qualified immunity.

**IV.    There is no evidence to support a *Monell* claim.**

To the extent plaintiff has asserted any entity claim or claim that any of these defendants acted in their official capacities, these defendants adopt and incorporate by reference as though fully set forth herein the argument and authority contained in section IV of the jail defendants' memorandum in support of their motion for summary judgment.

For the reasons set forth above in sections I and II, there has been no constitutional deprivation by Dr. Perkins or APRN Britt, or by FCHD. Therefore, any *Monell* claim would fail because the plaintiff has not proved a deprivation.

Specific to FCHD, and any claim that it is responsible because of the existence of a policy, pursuant to the authority recited in the jail defendants' memorandum, it need only be noted that plaintiff agrees and admits that there was no policy guiding the conduct of FCHD employees, affiliates, or contractors who were involved in providing care and treatment to the plaintiff. Therefore, no basis could exist for liability for failing to follow a policy.

**CONCLUSION**

For all the reasons recited herein, these defendants are entitled to summary judgment.

*/s/ Brian C. Wright*
Brian C. Wright, #12874
WRIGHT LAW OFFICE, Chartered
113 W. 13th Street
Hays, Kansas 67601
T: 785-621-4025
F: 785-621-4029

E-mail: brian@bcwrightlaw.com
*Attorney for Defendants Finney County*
*Health Department, Harold Perkins, MD*
*and Hannah Britt*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I electronically filed the foregoing with the Clerk of

the Court by using CM/ECF system which sent notification of such filing to all counsel of record,

and a copy was sent by US Mail, postage prepaid, to pro se Plaintiff:

Paul Guebara, #40223
Ellsworth Correctional Facility
PO Box 107
Ellsworth, KS 67439

/s/ Brian C. Wright
Brian C. Wright, #12874