UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL GUEBARA                                     )
                              Plaintiff,          )
v                                                )          Case No. 5:19-CV-03025-SAC
                                                 )
KEVIN BASCUE                                     )
JOHN ANDERSON                                    )
KYLE LAWSON                                      )
MICHELLE NEWSOME                                 )
JEFF OREBAUGH and                                )
MARK WELCH,                                      )
                              Defendants,         )
_____)

## JAIL DEFENDANT'S MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGEMENT

### INTRODUCTION

The taxpayers of Finney County provided a plethora of medical care to the Plaintiff while he was incarcerated in the Finney County Jail from 2015-2019.  Care was provided by a contracted jail nurse in the jail.  In addition, despite the high risk associated with transporting a prisoner previously convicted of murder and presently in jail for attempting to murder again, he was transported to outside medical facilities to be seen and treated by a variety of healthcare providers, for a variety of reasons.

But plaintiff complains that he was not provided a particular treatment for a particular condition, when he wanted it – a newly available curative treatment for Hepatitis-C.  Plaintiff had lived with the condition for at least 17 years and had sought no treatment for it, even when he was released from prison before the subject incarceration in Finney County.

Plaintiff contends the jailers were deliberately indifferent to a need for the treatment.

-1-

However, Plaintiff's medical providers were aware of his condition and ran tests related to it, but none of them indicated that he needed the treatment he demanded, while he was in the Finney County jail.  One of them expressly stated "we will just monitor this for now."  Plaintiff was not exhibiting symptoms indicative of a need for the treatment immediately.  Moreover, considerations in patient selection for the treatment include whether a patient has a history of non-compliance because it is imperative that the treatment not be interrupted once started.  Plaintiff had a history of non-compliance with medical recommendations, refusing medications that were prescribed for him, going on a hunger strike and  refusing to provide samples needed for testing.

The jail administrator and the jail nurse consulted medical providers specifically about Plaintiff's requested treatment and both were told that he was not in need of the treatment and, further, that it would be a bad idea to start the treatment in Finney County.  It was known that Plaintiff would be leaving Finney County upon sentencing and that the treatment he sought would be available to him without interruption at the KDOC when he arrived there.  In fact, upon arrival at the KDOC facility, Plaintiff was provided the treatment and cured.

There is no evidence that Plaintiff suffered any or substantial harm by waiting to receive the treatment until he arrived at KDOC.

The individual defendants are entitle to qualified immunity.

To the extent Plaintiff has asserted and preserved a *Monell* claim, it fails for lack of a constitutional violation and because the sheriff's policy was proper and is not indicative of deliberate indifference.  It required all necessary medical treatment to be provided and to follow the advice and recommendations of the healthcare providers in determining what treatment was necessary.

## STATEMENT OF FACTS[1]

1.      Plaintiff was convicted of first degree murder in 1983. (Ex. A, KDOC, p.1.)

2.      While he was incarcerated for that murder, he tested positive for hepatitis-C in 2003. (RFA to Plaintiff and Plaintiff's response. ¶¶ 1and 2;  Doc. 205, p. 2, stipulation b.3; Ex. KK[2]).

3.      After serving 22 and half years, Plaintiff was paroled.  (Doc. 205, p. 2, stipulation c.; Ex. A., p. 2).

4.      In 2015, Plaintiff was again arrested for attempted murder and initially lodged in the Finney County jail.   (Ex. A, pp. 1-2.)

5.      Plaintiff was in the Finney County jail from February 26, 2015 to March 21, 2019. (Doc. 205, p. 2, Stipulations a. 1-2).

6.      Plaintiff was convicted of the attempted murder. (Ex. A, pp. 1-2).

7.      On March 21, 2019, Plaintiff was moved from the Finney County Jail to a Kansas Department of Corrections facility.   (Doc. 205, p. 2, Stipulations a.2).

8.      When Plaintiff was booked into the Finney County jail in February of 2015, a medical screening form was completed.  Plaintiff indicated that he had once tested positive for Tuberculosis, but reported no ongoing medical issues.  (Ex. C, Medical Screen; Lawson Affd., ¶ 8).

9.      During his incarceration, Plaintiff was seen repeatedly by a variety of healthcare

---

[1] For purposes of summary judgment, factual disputes must be resolved in Plaintiff's favor. Defendants, however, reserve the right to contest any of these facts, should the case proceed beyond this motion.

[2] The exhibits cited to in this memorandum have been used in previous pleadings and discovery requests.  To avoid confusion, the same numbering will be used here. The numbering in this memorandum will, therefore contain gaps.

providers for a variety of complaints and conditions.  (Ex. E, Lawson Affd., ¶ 8)[3].

10.     Some of this care was provided by a contract jail nurse but much of it was provided by outside providers, necessitating transporting him outside the jail to public healthcare facilities for testing, examination and treatment. (Id.)

11.     These transports involved high risk to jailers, healthcare providers and the public because Plaintiff was a convicted murderer, facing the rest of his life in prison for a second attempted murder, had made threats of suicide and was reported to have gang affiliations. (Orebaugh Affd., ¶ 3; Lawson Affd., ¶ 3).

12.     Finney County incurred costs totaling $11,662.50 for medical care provided to Plaintiff. (Ex. D, Medical Bills; Lawson Affd., ¶ 8)

13.     In addition to the outside visits, Plaintiff was provided medical care by the Finney County Health Department, under contract.  (Newsome Affd, ¶ 3).

14.     During his visits to healthcare providers, Plaintiff was free to discuss any complaint with the healthcare providers for which he wished to be examined or treated. (Bascue Affd., ¶ 8; Welch Affd., ¶ 6; Perkins Affd. ¶ 8).

15.     During his time in the Finney County jail, Plaintiff repeatedly refused offered medical treatment.  (Newsome Affd., ¶ 4; Orebaugh Affd., ¶ 4; Lawson Affd., ¶ 4; Welch Affd., ¶ 9).

16.     Plaintiff repeatedly refused to take prescribed medications. ( Ex. F, p. 2; Doc. 205, p. 2 Stip. c).

---

[3] As can be seen by comparing the medical records provided to this list, though extensive, the list is not complete.  Plaintiff was transported other times that were not recorded on this list.  See Ex. X, EE, II, JJ).

17.     On one occasion, Plaintiff finally agreed to take prescribed medication that he had been refusing for months, but only to "prove they don't work." (Ex. R; Newsome Affd., ¶ 10; Doc. 205, p. 2 Stip. c.)

18.     Plaintiff refused medical prescriptions provided for his complaints of stomach pain.  (Ex X; Doc. 205, p. 2 stip. c; Newsome Affd., ¶ 11).

19.     On June 27, 2018, Plaintiff submitted a medical request to the jailers stating: "DON'T ORDER MEDS." (Ex. U; Newsome Affd. ¶ 10,  Doc. 205, p. 2 stip. c).

20.     On October 28, 2018, Plaintiff again submitted an inmate request form requesting that prescribed medication not be ordered.  (Ex. HH; Newsome Affd. ¶ 10; Doc. 205, Stip. c).

21.     Plaintiff demanded a single cell.  When this was denied, he began making suicidal statements and started a hunger strike, stating that if he was not moved, he would claim to be suicidal to force jail staff to move him.  (Ex. G and H; Lawson Affd., ¶ 8; Doc 205, Stip.  c).

22.     Plaintiff was repeatedly seen for complaints of stomach pain. (Ex. E, F, I, J, L, M, Q, S, V, CC, DD, GG: Newsome Affd. ¶¶ 10-11).

23.     In June, 2015, Plaintiff reported stomach pain but related it to the blood pressure medication he was taking.  He was advised by the nurse to take the medication with food. (Ex. I; Newsome Affd., ¶ 10).

24.     Plaintiff was transported to see healthcare providers on July 7, 2015, at which time he could talk to the healthcare providers about any issue or complaint he wished, including any stomach pain he was having. (Ex. E; Lawson Affd. ¶ 8).

25.     In September, 2015 Plaintiff again reported stomach pain and, again stated that it had started when he started taking his cardiac medications.  He was transported to Compass Health

on September 4, 2015.  Plaintiff reported that "Dr. Jack" there told him to eat a snack at night to help with the stomach pain. (Ex. GG; Newsome Affd., ¶ 10).

26.     Plaintiff was seen specifically for his stomach pain on September 17, 2015.  At that time he was prescribed Omeprazole and scheduled for a follow up.  (Ex. V; Newsome Affd., ¶ 11).

27.     Plaintiff was transported to the hospital to be seen for his complaints of stomach pain on September 28, 2015.  (Ex. J; Newsome Affd. ¶ 11.)

28.     A CT scan of Plaintiff's stomach, and blood work, were ordered, and continued Omeprazole was prescribed for his stomach pain. (Id.)

29.     The blood work showed positive for the H. Pylori antibody.    (Ex. L,  p. 3.)

30.     On September 30, 2015, the lab results were called to Nurse Newsome and antibiotics – Omoxicillin and Charithromycin – were prescribed and provided. (Ex. F, M).

31.     On October 14, 2015, Plaintiff was again transported to the hospital for the ordered CT scan.  The CT Scan was reported as showing positive for a hiatal hernia and possible gastritis but negative for mass.  (Ex. CC; Doc 205, Stip.  c).

32.     Plaintiff again reported stomach pain in August of 2017 and stated that this stomach pain had started 3 weeks ago. (Ex. S; Newsome Affd. ¶ 10).

33.     A stool sample was ordered.  (Ex. DD; Doc 205, Stip.  c).

34.     Plaintiff initially refused to provide the ordered stool sample. (Id.).

35.     Unfortunately, when Plaintiff did finally provide a stool sample, it was lost by the laboratory.  (Ex. Q; Newsome Affd., ¶ 10).

36.     Plaintiff was advised of this and asked for another sample in January, 2018. (Id.).

37.     Plaintiff again initially refused and did not provide the needed sample until April 12, 2018.  (Ex. T; Newsome Affd., ¶ 10).

38.     On April 30, 2018, Plaintiff was seen at Genesis for his stomach complaints.  The treatment prescribed was the same drug Plaintiff had previously refused to take – Omeprazole.  In addition, a CT Scan was ordered.  (Ex. Z; Newsome Affd., ¶ 11).

39.     On May 31, 2018, Plaintiff was taken to Genesis to discuss the results of his CT scan and his abdominal pain.  Plaintiff again chose not to take the prescribed Omeprazole. (Ex. X, Newsome Affd., ¶ 11).

40.     When Plaintiff demanded another doctor, he was taken to Dr. Kessler on June 25, 2018.  (Ex. II Doc 205, Stip.  c).

41.     The new doctor ordered a colonoscopy.  (Ex. BB and Ex. EE; Doc 205, Stip.  c).

42.     On September 24, 2018, the colonoscopy was performed and showed gastritis and was otherwise normal. (Id.).

43.     On October 26, 2018, Plaintiff was again seen by Dr. Kessler who raised two other possibilities for Plaintiff's reports of stomach pain – the possibility of gallbladder issues and the possibility of "secondary gain".  (Ex. JJ; Doc 205, Stip.  c).

44.     Plaintiff was no longer having stomach pain at this time as it had abated after the colonoscopy in September.  (Doc. 1, p. 11).

45.     The lab report of blood work done while Plaintiff was in the Finney County jail showed that Plaintiff was "reactive" to the hepatitis C antibody, but further noted that this only indicated exposure and "Supplemental testing recommended *as clinically indicated*."  (Emphasis added). (Doc 205, Stip. a.7, c;  Ex. L, p. 1 ).

46.     Within a month after the lab report, Plaintiff was seen by Matthew Byrnes at St. Catherine Hospital who noted that Plaintiff had hepatitis C.  (Ex. O; Doc 205, Stip. a. 2.,  c).

47.     Referencing the hepatitis-C, Dr. Byrnes stated: "Will just monitor this for now." (Id.)

48.     In 2015, Newsome provided Plaintiff information on Hepatitis-C.   (Ex. FF; Newsome Affd., ¶ 10).

49.     In November, 2017 Plaintiff submitted an inmate request form inquiring about the new curative treatment for Hepatitis-C. (Plaintiff's Motion for Judgement Exhibit J)

50.     People can live with Hepatitis-C for years without significant symptoms or serious damage.  (Newsome Affd., ¶ 5; Perkins Affd. ¶¶ 4-5; Britt Affd., ¶ 5-6).

51.     Blood work drawn on October 2, 2017 showed Plaintiff's liver enzymes to be within normal limits. (Ex. N; Doc 205, Stip. a. 1.,  c).

52.     Thirty percent of people with Hepatitis-C will clear it without medical treatment. (Perkins Affd., ¶ 6).

53.     Not every one with Hepatitis-C will benefit from the treatment Plaintiff was asking for. (Perkins Affd., ¶ 7; Britt Affd., ¶ 7).

54.     Not every one with Hepatitis-C should be provided the treatment Plaintiff was asking for.  (Perkins Affd., ¶ 7; Britt Affd., ¶ 8).

55.     Patient selection is important to the success of the treatment plaintiff was requesting. (Perkins Affd., ¶ 8).

56.     Once the Hepatitis-C treatment is started, it is detrimental to interrupt it. (Perkins Affd., ¶ 9; Newsome Affd., ¶ 9).

57.     Plaintiff was a poor candidate for the treatment he requested due to his demonstrated non-compliance with medical advice. (Perkins Affd., ¶ 8; Welch Affd. ¶ 8).

58.     While Plaintiff was in the Finney County jail, he was not exhibiting symptoms indicating an immediate need for treatment for Hepatitis-C. (Perkins Affd., ¶ 10; Britt Affd., 10; Newsome Affd., ¶ 5).

59.     On May 31, 2018, Plaintiff was seen at Genesis to discuss several of his medical issues, including his hepatitis.  No medical treatment was prescribed or suggested for the hepatitis. (Ex. MM; Doc 205, Stip.  c.).

60.     A CT scan was conducted in September, 2018 for Plaintiff's abdominal pain.  The physician's report of that procedure noted that Plaintiff's AST and ALT were mildly elevated but made no recommendation for treatment for the hepatitis. (Ex. W; Doc 205, Stip.  c.).

61.     No healthcare provider advised jail staff that the chronic condition with which Plaintiff had lived for over a decade without serious damage had become serious or required immediate treatment.  (Newsome Affd., ¶¶ 5,8; Orebaugh Affd., ¶¶ 6-7; Lawson Affd., ¶¶ 6-7; Bascue Affd., ¶ 5; Welch Affd., ¶ 7).

62.     No healthcare provider recommended any testing that was not done or that further testing was clinically indicated.  (Newsome Supp. Affd. ¶ 3).

63.     It was known that Plaintiff would be moved to KDOC upon completion of his criminal case and that the treatment he was requesting would be available to him there without interruption.  (Newsome Affd, ¶ 7; Welch Affd., ¶ 8).

64.     When Plaintiff arrived at KDOC, he was provided treatment for his Hepatitis-C. (Doc. 205, Stip. a.3).

65.     Plaintiff has been cured of Hepatitis-C. (Doc. 205, Stip. a.4).

66.     Lab reports after Plaintiff was cured show his AST and ALT values to be well within normal limits.  (Ex. LL; Doc 205, Stip. a. 4.,   c).

67.     Sheriff Bascue was not involved in Plaintiff's healthcare.  ( Bascue Affd., ¶ 3).

68.     It was the policy of the Finney County Sheriff to provide medical treatment that was obviously necessary and to follow the recommendations and advice of inmates' physicians concerning needed treatment.  (Bascue Affd., ¶ 7; Welch Affd., 4-5).

69.     Finney County Jail policies gave authority to the medical personnel to determine what medical consults and treatment were needed.  (Welch Affd., ¶ 3-5. Ex. NN).

70.     Sheriff Bascue was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C. (Bascue Affd., ¶ 4).

71.     Sheriff Bascue did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician.  (Bascue Affd., ¶ 6).

72.     Lt. Lawson was never aware or advised that Plaintiff was in need of immediate treatment for hepatitis C. (Lawson Affd, ¶ 7).

73.     Lt. Lawson did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician.  (Lawson Affd., ¶ 6).

74.     Capt. Orebaugh was never aware or advised that Plaintiff was in need of immediate treatment for hepatitis C.  (Orebaugh Affd., ¶ 7).

75.     Capt. Orebaugh did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician.  (Orebaugh Affd., ¶ 6).

76.     Mark Welch was never aware or advised that Plaintiff was in need of immediate

-10-

treatment for hepatitis C. (Welch Affd, ¶ 6-8).

77.     Mark Welch did not deny Plaintiff any treatment that was obviously necessary or mandated by a physician. (Id.).

78.     Jail Administrator Mark Welch spoke with medical personnel at the health department and was advised that it would be best to let the treatment Plaintiff was demanding be provided at the KDOC facility to which he would be sent. (Welch Affd., ¶ 8).

79.     Michelle Newsome was never aware or advised that Plaintiff was in need of immediate treatment for Hepatitis C.  (Newsome Affd., 6-8).

80.     In response to Plaintiff's request for treatment, Michelle Newsome consulted an APRN, who advised that Plaintiff was not symptomatic and not in need of immediate treatment. (Michelle Newsome's supplemental answer to Interog. 9; Newsome Supp. Affd, ¶ 2).

81.     If plaintiff's healthcare providers had recommend the treatment Plaintiff requested, it would have been provided.  (Welch Affd., ¶ 9).

## ARGUMENT AND AUTHORITY

### I.     No constitutional right of Plaintiff has been violated.

In order for defendants to be liable on a constitutional claim for dely or denial of medical care, they must be deliberately indifferent to a serious medical need.  *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Walton v. Gomez*, 745 F. 3d 405, 429 (10th Cir 2014).   This standard involves an objective and a subjective component.

The objective component requires "objective evidence that the deprivation at issue was in fact sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Mata v. Saiz,* 427 F. 3d 745 (10th Cir. 2005); *Gardiner v. MacBryde,* 2020 U.S.Dist. LEXIS 603 *26 (D. Kan. 2020).   In order

to constitute a "serious medical need" for purposes of an eighth amendment claim, the condition must have been "diagnosed by a physician *as mandating treatment* or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (emphasis added) *Gee v. Pacheco,* 627 F. 3d. 1178, 1192 (10th Cir. 2010); *Sealock v. Colorado,* 218 F. 3d 1205,1209 (10th Cir, 2000).

The subjective component requires that the officials knew of an excessive risk and knowingly disregarded it. *Mata,* 427 F. 3d at 751.

Neither component can be established in this case.

### A.    The objective component cannot be established.

The treatment Plaintiff demanded was not a serious medical need. Hepatitis-C *can* be a serious condition and, therefore, the *allegation* of failure to treat Hepatitis-C is sufficient to get past a motion to dismiss. *See Bush v. Doe,* 858 Fed. Appx. 520, 523 (3rd Cir. 2021); *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017). The district court in this case also held that the allegation was sufficient to survive screening. (Doc. 62, p. 7). However, we are now at the summary judgment stage and it is incumbent upon Plaintiff to present evidence that his particular condition constituted a "serious medical need" at the time he was incarcerated in Finney County. Merely having a diagnosis of Hepatitis-C, without more, does not meet this burden.

> But persuasive authority from within this District and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") suggests a diagnosis of chronic Hepatitis-C, without more, does not constitute an objectively serious medical need for purposes of an Eighth Amendment deliberate indifference claim. See, e.g., *Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (concluding Hepatitis-C was not an objectively serious medical need because there was no evidence the plaintiff suffered substantial harm from any delay in treatment);

> *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016)
> (concluding the plaintiff's Hepatitis-C was not an objectively serious
> medical need before 2006, because there was no evidence he
> suffered serious complications), aff'd in part, vacated in part on other
> grounds, 882 F.3d 1270 (10th Cir. 2018).

*McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020).

Plaintiff is required to show that a physician mandated a need for the treatment or that it should have been obvious to a layman. There is no evidence in the record to support either proposition -- in fact, the uncontroverted facts negate both.

Plaintiff's physicians were aware of Plaintiff's Hepatitis-C diagnosis but mandated no treatment for it, indicating instead that this condition would just be monitored. (SOF 46-47, 59-61). Medical personnel advised the jailers and Nurse Newsome that Plaintiff was not exhibiting symptoms indicating a need for immediate treatment. (SOF 58,61, 70- 80). An APRN specifically consulted on the question by the jail nurse advised that, because he was not symptomatic, the treatment Plaintiff was requesting could wait until he arrived at the KDOC facility where it could be administered under existing protocols without interruption. (SOF 78, 79).

The mere fact that one is diagnosed with Hepatitis-C, does not mean that there is an *immediate* need for treatment. (SOF 50-54). Thirty percent of persons with Hepatitis C will clear the disease without medical treatment. (SOF 52). A person with Hepatitis C can live for a long time without symptoms or damage. (SOF 50). Not everyone who has Hepatitis C will benefit from treatment. (SOF 54). Patient selection for treatment is important to the success of the treatment demanded. One of the factors is whether the patient has a history of non-compliance with medical care. (SOF 55, 57). Plaintiff in this case has a significant history of non-compliance. (SOF 15-20).

Another factor is that, once the treatment Plaintiff was asking for in this case has begun, it is detrimental to interrupt it.  It is better to wait to begin it at a time when it will not be interrupted. (SOF 56).  The move from Finney County to KDOC could have resulted in an interruption that could be avoided by waiting to start the treatment until Plaintiff arrived at the KDOC facility.

Plaintiff has named no medical experts to establish a need for immediate treatment.  All of the evidence in the record that addresses that issue indicates that there was no need for immediate treatment. (SOF 46-47, 59-61,  58, 61, 70, 72, 74, 76, 77, 78, 80).  None of it indicates there was.

In the light of those facts, it also cannot be fairly said that a need for immediate treatment that was not seen or mandated by any of multiple healthcare providers should have been obvious to laymen jailers.

Thus, Plaintiff's chronic and non symptomatic Hepatitis-C was not a "serious medical condition" while he was in the Finney County Jail.

### B.    Subjective.

Even if it is assumed that Plaintiff's Hepatitis-C was a serious condition and that it should have been treated while he was in Finney County, there is no evidence that the jailers knew that and disregarded it.  "A prison official acts with deliberate indifference only if he knows that the inmate is facing "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.". . . Accordingly, not every claim of inadequate prison medical treatment violates the Eighth Amendment.  *Estelle* recognized that a prison official is not liable under the Eighth Amendment if his mental culpability falls short of deliberate indifference. 429 U.S. at 105-06." *Shipps v. Groves,* 2023 U.S. App. LEXIS 10781 *3-4 (10th Cir. 2023).

In this case, all any of the jail defendants knew was that Plaintiff had a diagnosis of Hepatitis-

C and some of them knew that he wanted a particular treatment.  None of them knew of any medical support for Plaintiff's demand – because there was none.  Sheriff Bascue was not involved in Plaintiff's healthcare and was never aware of any need for treatment.  (SOF 67, 70-71).  Jail Administrator Welch was never aware of a need for treatment.  (SOF 76-77).  Welch consulted the medical personnel at the health department and was advised that the better choice was to let the treatment be provided at the KDOC facility where it could be provided without interruption. (SOF 78).  Capt. Orebaugh was never made aware of a need for treatment.  (SOF 74).  Lt. Lawson was not aware of any need for treatment.  (SOF 72).  Nurse Newsome was not aware that Plaintiff was in need of the treatment at the Finney County jail.  (SOF 79).  She discussed Plaintiff's request for the treatment with the APRN who advised that it was not an immediate need.  None of the jail personnel or Nurse Newsome denied any treatment recommended by any healthcare provider.  (SOF 71, 73, 75, 77).  If Plaintiff's healthcare providers had recommended the treatment, it would have been provided.  (SOF 81).

The jailers are not medical personnel and they did what the law requires of them – they followed the recommendations of Plaintiff's healthcare providers.  Plaintiff was given access to physicians who were aware of his Hepatitis-C diagnosis.  None of them recommended that he be treated for it in any way.  In particular, none of them recommended that the treatment Plaintiff requested be provided immediately.  None of them suggested that the curative treatment could not wait until he arrived at KDOC where it would be available without interruption.  In fact, when specifically asked about Plaintiff's requested treatment, they advised that it would be better to wait until he arrived at KDOC to begin the treatment.

Plaintiff appears to be under the impression that his mere demand for a particular treatment

makes it mandatory, even if no health care provider agrees that he needed it then and every provider specifically consulted about his request advised against it.  But a prisoner's disagreement with the medical judgement of his providers does not arise to a claim of constitutional dimensions.  *Coulhurst v. Campbell,* 2009 U.S. Dist. LEXIS 148826 (D. N.M. 2009); *Olson v. Stotts,* 9 F. 3d 1475 (10th Cir. 1993).   A failure to provide medical care, even if negligent and even if constituting medical malpractice, does not give rise to a constitutional violation.  *Perkins v. Kansas Dep't of Corrections,* 165 F. 3d 803, 811 (10th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).  The mere fact that Plaintiff requested a treatment that was available but was not provided does not show deliberate indifference when there is no medical indication of a need for the treatment at the time it was demanded and, in fact, there was medical indication that it would not be a good idea to begin the treatment prior to transfer to the KDOC facility.

Plaintiff points to two lab reports that contain the language that further testing was recommended or needed as or if "clinically indicated."  But no provider who reviewed those reports suggested that the further testing was clinically indicated or ordered it.  All of them who specifically addressed Plaintiff's Hepatitis-C indicated they would just monitor it or specifically recommended against starting the treatment at the Finney County jail.

The treatment Plaintiff was demanding is expensive and, Plaintiff claims that he was told that cost was a factor in the decision.  For purposes of this motion, Plaintiff's testimony may be accepted as true, but it does not show deliberate indifference.  Everyone, incarcerated or not, has to consider the cost of medical treatment in making a decision as to whether and when it will be received.  Being incarcerated does not free Plaintiff from such considerations:

Defendants allegedly delayed treating Bush's Hepatitis C for a

> nonmedical reason: cost. To be sure, "the deliberate indifference
> standard of *Estelle* does not guarantee prisoners the right to be
> entirely free from the cost considerations that figure in the medical-
> care decisions made by most non-prisoners in our society." *Reynolds
> v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997).

*Bush v. Doe*, 858 Fed. Appx. 520, 523 (3rd cir 2021).

Thus, even if it is taken as true that cost was a consideration in the decision to deny Plaintiff's request to be immediately provided with the curative treatment, that fact alone does not establish deliberate indifference. This was a relatively new treatment, with which jailers, particularly those in rural parts of the country, were not familiar. There was no apparent or medically documented need to administer the treatment immediately. Plaintiff was not a good candidate due to his non compliant and resistive behavior. It would have been detrimental to have started the treatment only to have it interrupted. Plaintiff's disputes with the Finney County Jailers had resulted in a history of non-compliance with medical recommendation, hunger strikes, suicide threats that did not bode well for starting the treatment in Finney County. It was known that Plaintiff would be transferred to KDOC and that the transfer could interrupt his treatment. It was known that the treatment was available at KDOC from providers who already had a policy and procedure in place for administering it without interruption, if medically indicated. There was no indication that Plaintiff was suffering or would suffer harm as a result of waiting until he went to KDOC where the treatment could be administered at the cost of the state – rather than a single rural county -- without interruption under an established protocol. Under these circumstances, considering the cost as one factor is not indicative of deliberate indifference, particularly when no physician is suggesting immediate treatment or that a delay would be medically problematic.

Moreover, Plaintiff's testimony is that he was told that cost was a factor. He does not

provide any evidence that will meet his burden of establishing which, if any, of the individual defendant's actually made a decision to deny the treatment because of the cost.  It is the plaintiff's burden to prove individual involvement of a particular defendant.  *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018)  A hearsay statement indicating that cost was a factor in someone's mind does not establish deliberate indifference at all.  It certainly does not establish deliberate indifference by any identifiable individual defendant.

This situation presents the classic example of a mere disagreement between an inmate and his healthcare providers about the timing of a treatment or, at most, medical negligence.  There is simply no evidence to indicate that any jail defendant knew that plaintiff had a condition for which any physician mandated treatment or that a need for such treatment was obvious.  There is simply no evidence that any defendant was aware of an excessive risk to plaintiff and disregarded it.  There was no deliberate indifference and no constitutional violation.

**II. No harm shown.**

" 'If the claim alleges inadequate or delayed medical care, the prisoner must show that the delay in treatment resulted in "substantial harm.' *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)".  *Shipps v. Groves*, *supra* at 4.

Plaintiff has identified no expert witness to establish that he has suffered any harm, let alone substantial harm.  But the harm he claims is not harm that lies within the realm of a lay jury and, therefore, requires expert testimony.  "The standard of care for treating hepatitis doesn't fall within the realm of common knowledge" and requires expert testimony.  *Sperry v. Corizon Health, Inc.,* 2022 U.S. App. LEXIS 4874 ( 10th Cir. 2022).  *See also: McCleland v. Raemisch,* 2021 U.S. App. LEXIS 29490 (10th Cir. 2021)(expert testimony necessary to establish causation in a claim for

delayed treatment for hepatitis C); *Zartner v. Miller,* 760 Fed. Appx. 558 (10th Cir. 2019)(given the two separate uses of force that could have caused the fracture, causation entails a medical question beyond a layperson's ordinary experience); *Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (concluding that expert medical testimony was necessary on the "medical question" of "[w]hat causes a bone to fracture" because the injury had been complex, involved a complicated surgery, and causation went "beyond the sphere of the ordinary juryman"); *Harvey v. United States*, 685 F.3d 939, 952-53 (10th Cir. 2012) (upholding summary judgment for the defendant because expert testimony was necessary to show causation between improper medical treatment and further injury to a hand that had been fractured); *Smith v. Curran*, 28 Colo. App. 358, 472 P.2d 769, 771 (Colo. App. 1970) (requiring expert testimony because "the cause of an infection" is a matter lying "within the field of medical experts").

Whether the Plaintiff was in need of immediate treatment for hepatitis is not within the purview of a lay jury.  Even more complex and subtle is the question of whether Plaintiff suffered any harm, let alone substantial harm, during the period of time between his request for the treatment and its successful administration at the KDOC facility.  The only evidence in the record on the issue is that people can live for years without significant harm.  Plaintiff had, in fact, lived with this condition for at least 18 years before he came to the jail.  He is now cured.  He has not even established that he has significant liver damage at all, let alone, what if any occurred between 2015 and 2019.

Plaintiff's previous statements in pleadings and court conferences, suggest that he will contend that he had abdominal pain that he attributes to his Hepatitis-C.  But the record is replete with complaints of abdominal pain that no physician attributed to Hepatitis-C.  Rather, his abdominal

pain was attributed to a variety of possible causes.  (SOF 22-23, 25-32, 38-44).  Plaintiff himself attributed his abdomnial pain to other causes.  (SOF 25, 32). One of his physicians suggested that the cause of his complaints could be "secondary gain." (SOF 43).

Further complicating the issue is the question of whether earlier treatment would have prevented any injury of which the Plaintiff complains.  In fact, even though he is now cured, he contends that his liver continues to deteriorate as time passes.  (Doc. 209-2, p. 2) Assuming this is true, is this because of the 18 years he lived with the condition without any treatment at all?  Or would it be happening even if the treatment had been provided earlier?  No lay jury can answer those questions and Plaintiff has designated no expert who can.  Indeed it is not even known if an expert even could determine what, if any damage occurred in the 4 or less years Plainitff was in the Finney County jail versus what had already occurred as a result of the 18 previous years or would have continued to occur, even if the treatment had been provided when Plaintiff first requested it.

Plaintiff may attempt to offer his own explanation of medical records or literature, but he has no medical expertise and such attempts by him do not constitute admissible evidence.

> Mr. McCleland's exhibits in support of his Responses to the Motions for Summary Judgment include his medical records, large amounts of scientific literature, his rebuttals to the expert opinions of Defendant Tiona and Dr. Randolph O. Maul, and documents from separate lawsuits. . . .. Plaintiff, however, fails to offer any witness competent to interpret his medical records or the scientific literature, and this court concludes Mr. McCleland fails to demonstrate the requisite expertise to interpret these documents himself or to offer rebuttal opinions to those of Defendant Tiona and Dr. Maul. See Fed. R. Evid. 701-703, 803(18); cf. *Gibson v. Vanjani*, No. 17-CV-01705-EMC, 2018 U.S. Dist. LEXIS 144658, 2018 WL 4053458, at *9 & n.5 (N.D. Cal. Aug. 24, 2018) (sustaining the defendants' hearsay objections to the pro se plaintiff's use of internet medical articles regarding Hepatitis-C since the plaintiff was not competent to testify as an expert as to these articles). Further,

> while the court can take judicial notice of documents publicly filed in other lawsuits, the court may not consider them for the truth of the matter asserted. See *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

*McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *6.

Plaintiff cannot establish that he suffered any harm by not being provided the treatment he requested, before he arrived at KDOC.  He certainly cannot establish that he suffered substantial harm in that time frame.

### III.   Qualified immunity

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless the Plaintiff proves otherwise.  *See  Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991).  "Qualified immunity protects public officials performing discretionary functions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Anderson v. Willis*, 917 F. Supp. 2d 1190, 1195 (D. Kan. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken.  *Laidley v. McClain*, 914 F.2d 1386, 1394 (10th Cir. 1990).

Once a qualified immunity defense is asserted, the burden shifts to the Plaintiff to meet a two part test.  *Saucier v. Katz,* 533 U.S. 194, 201(2001); *Green v. Post,* 574 F.3d 1294, 1300 (10th Cir 2009).  First, Plaintiff must establish that an individual defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).  Second, if Plaintiff establishes that a constitutional right was violated, then he must also show that the violated right was clearly

established.  *Cortez* v *McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).   Although a plaintiff must

establish both elements, the Court may consider the elements in any order.  *Pearson v. Callahan*, 555

U.S. 223, 236 (2009).

Whether a right is clearly established is examined under the "specific context of the case, not

as a broad general proposition."  *Saucier*, 533 U.S. at 201.   A right is clearly established if "every

reasonable official would have understood what he is doing violates" the constitutional right at issue.

*Alford v. Buchholz,* 2021 WL 168761 at \*5-6 (D. Kan. 2021)(quoting *Reichle v. Howard,* 566 U.S.

658, 664 (2012); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  For this to be the case "there must

be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other circuits must have found the law to be as the Plaintiff maintains."  *Cortez*, 478 F.3d at

1114-15 (citing *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

In defining the allegedly clearly established right at issue, the Court must not define the right

at too high a level of generality.  *Mullenix*, 136 S. Ct. at 308.   That is because general propositions

of law are "of little help in determining whether the violative nature of particular conduct is clearly

established."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).   Instead, the Court is tasked with

defining the clearly established right at issue by looking at the specific context of the case.  *Pompeo

v. Bd. of Regents*, 852 F.3d 973, 981 (10th Cir. 2017) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657

(2014)).   In other words, "the clearly established law must be 'particularized' to the facts of the

case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017).   Otherwise, plaintiffs would be able to render the

defense of qualified immunity essentially toothless by always alleging the violation of extremely

abstract rights. *Id.*

The first prong is addressed above – Plaintiff cannot establish the elements of his claim of

a violation of his constitutional rights by deliberate indifference to a serious medical need.

Plaintiff will not be able to meet the second prong by pointing to any case law before 2019 that made it clear to every jailer that it would violate the 8th amendment to fail to give an inmate with chronic hepatitis the treatment he was demanding, when he wanted it, despite the fact that he had been seen by multiple physicians who were aware of his condition but prescribed no treatment for it, and when the jailers knew that the inmate would be able to get the treatment he wanted at the KDOC without interruption.  The jail nurse and the jail administrator both specifically addressed Plaintiff's request with medical personnel and were told that Plaintiff was not a good candidate for the treatment and that, if he were to receive it, it would be better to wait until he arrived at KDOC.

Further complicating Plaintiff's position is the undisputed fact that he frequently was non-compliant and resistive of attempts by his health care providers to determine the cause of his complaints.  Plaintiff alleges that he was experiencing abdominal pain that he now attributes to his Hepatitis-C.  But no doctor has made that connection and Plaintiff was uncooperative with their attempts to determine the cause of his abdominal pain.

Tenth Circuit precedent taught officers in Defendants' position before 2019 that Hepatitis-C that is not symptomatic and that has not been shown to have resulted in substantial harm is not a serious medical need.  *McCleland v. Raemisch*, 2020 U.S. Dist. LEXIS 180233, *21-22 (D. Colo. 2020) (citing *Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (concluding Hepatitis-C was not an objectively serious medical need because there was no evidence the plaintiff suffered substantial harm from any delay in treatment); *Vasquez v. Davis*, 226 F. Supp. 3d 1189, 1207 (D. Colo. 2016), aff'd in part, vacated in part on other grounds, 882 F.3d 1270 (10th Cir. 2018) (concluding the plaintiff's Hepatitis-C was not an objectively serious medical need before 2006,

because there was no evidence he suffered serious complications).

> Under these circumstances, the court finds that plaintiff fails to establish an Eighth Amendment claim. Defendants clearly acknowledge that plaintiff had a serious condition that was continuously monitored through clinic visits and lab tests.  Plaintiff fails to establish that defendants were deliberately  indifferent under both an objective and subjective analysis. First, there is no evidence of a deprivation that was sufficiently serious to meet the objective component. The care providers recognized plaintiff's condition and provided ongoing monitoring. Second, there is no evidence of defendants knowingly disregarding risk to plaintiff's health.

*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1170-1171 (D. Kan 2016).

These defendants are, therefore, entitled to qualified immunity.

### IV.    There is no evidence to support a *Monell* claim.

Plaintiff has not named the Board of County Commissioners as a defendant as required by K.S.A. 19-105 to assert a claim against the county.  While an entity claim can be asserted by suing an official in his official capacity, neither Plaintiff's complaints nor the Pretrial Order indicates that Plaintiff is asserting an official capacity claim.  But, even if he is asserting such a claim, summary judgement on that claim is appropriate as well.

### A.    There has been no constitutional deprivation.

Before a municipal entity can be liable for a constitutional deprivation, there must first be an actionable deprivation by one of its officers.  A municipal entity "may not be held liable where there was no underlying constitutional violation by any of its officers." *Donahue v. Wihongi,* 948 F.3d 1177, 1199 (10th Cir. 2020) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)); *Rowell v. Bd. of Cty. Comm'rs*, 978 F.3d 1165, 1175 (2020).

For the reasons set forth above in sections I and II, there has been no constitutional

deprivation by any officer of the Sheriff or the county and, the *Monell* claim fails for lack of a deprivation.

### B.   No deprivation occurred a result of a policy of he Sheriff or County.

*Respondeat superior* is not applicable to a claim alleging violations of constitutional rights brought under 42 U.S.C. §1983.  "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978).  "[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997.)  This requirement distinguishes between acts of the *municipality* and acts of *employees* of the municipality.  *Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 770 (10th Cir. 2013).  *Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202,* 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006.)  In order to impose liability on the County, the alleged violations must be shown to be have been caused by some custom, practice or policy of the County or a final policy maker such as the Sheriff .  *Rife v. Okla. Dep't. Of Pub. Safety,* 854 F.3d 637, 654 (10th Cir. 2017); *Kramer v. Wasatch Cty Sheriff's Office,* 743 F.3d 726, 758 (10th Cir. 2014)(a municipality may only be liable "if it had a custom, practice, or policy that encouraged or condoned the unconstitutional behavior . . . .")

The only evidence in the record on the policy of the Finney County Sheriff and Jail is that any needed medical care was to be provided to inmates.  (SOF 68).  The policy of the jail gave the medical professionals at the health department the authority to determine what consults or treatments were needed.  An agreement was entered into with the Finney County Health Department and its medical personnel to provide and examination and treatment in the jail and to schedule an outside appointments need to "ensure an appropriate standard of care."  (SOF 69).  Any recommendations

of healthcare providers were to be followed.  (SOF 68).  This is an entirely appropriate policy and no less than the law requires.

Plaintiff requested a particular treatment, the Jail Administrator talked to the medical providers at the health department and followed their advice.

There is simply no evidence to support the conclusion that the failure to provide the treatment when Plaintiff demanded it was a result of some unconstitutional policy of the County or the Sheriff.

## CONCLUSION

Plaintiff was provided medical care - -lots of it.  He was not provided one thing he demanded. But that was because it was not medically indicated and, in fact, the medical providers recommended against it.  Following that advice is simply not a violation of Plaintiff's constitutional rights and these defendants are entitled to summary judgment.

> WATKINS CALCARA, CHTD.
>
> /s/ ALLEN G. GLENDENNING
> Allen G. Glendenning, #12187
> 1321 Main Street - Suite 300
> P.O. Drawer 1110
> Great Bend, Kansas  67530
> (620) 792-8231   Fax (620) 792-2775
> aglenden@wcrf.com
> Attorneys for Defendants Kevin Bascue,
> Mark Welch, Jeff Orabaugh, Kyle Lawson
> and Michelle Newsome

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2023, a copy of the above and foregoing Memorandum in support of Motion for Summary Judgment was filed electronically with the clerk of the court which will send a notice of electronic filing to all registered counsel of record, and that a copy was mailed, postage prepaid and properly addressed, to:

Paul Guebara, #40223
Ellsworth Correctional Facility
P.O. Box 107
Ellsworth, KS 67439
Pro-Se Plaintiff

Brian C. Wright
Wright Law Office, Chtd.
113 W. 13th Street
Hays, KS 67601
Attorney for Finney County Health Dept.,
Harold Perkins and Hannah Britt (Douty)

/s/ ALLEN G. GLENDENNING
Allen G. Glendenning, #12187