## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**PAUL GUEBARA,**

      **Plaintiff,**

      **v.**

      **Case No. 5:19-CV-3025-JAR**

**KEVEN BASCUE, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Paul Guebara, a prisoner proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action asserting that employees of the Finney County Jail and the Finney County Health Department violated his Eighth and Fourteenth Amendment rights.  Plaintiff alleges that all defendants were deliberately indifferent to his serious medical needs by failing to treat his Hepatitis-C ("Hep-C") during the time in which Plaintiff was detained in the Finney County Jail ("FCJ").  Plaintiff names as Defendants the following FCJ employees: Sheriff Keven Bascue, Administrator Mark Welch,[1] Captain Jeff Orebaugh, Lieutenant Kyle Lawson, and Jail Nurse Michelle Newsome[2] (collectively, "Jail Defendants").  Plaintiff also names as Defendants the Finney County Health Department ("FCHD"), and the following FCHD employees: Director Harold Perkins, M.D., Advanced Practice Registered Nurse ("APRN") Hannah Britt,[3] and APRN

---

[1] On the docket sheet, Defendant Welch's name is spelled "Welsh," which is how Plaintiff spells it in his Complaint.  The Court adopts the spelling "Welch" as this is the spelling used by Defendants in their briefings and exhibits.  *See* Doc. 217-6 (Welch Affidavit).

[2] Defendant Newsome was the contract nurse at FCJ, though she was employed by FCHD.  She is represented by the attorney for the jail and is joined in the Jail Defendants' motion.

[3] Hannah Britt was known by her maiden name at the time the events underlying this suit took place, therefore she is listed as "Hannah Douty" in Plaintiff's Amended Complaint.  Doc. 88.  The Court refers to her married name, Britt, in this Order.

Gretchen Dowdy (collectively, "FCHD Defendants").  Plaintiff sues all defendants in their individual and official capacities.

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 209), Jail Defendants' Cross-Motion for Summary Judgment (Doc. 216), and FCHD Defendants' Cross-Motion for Summary Judgment (Doc. 214).[4]  Plaintiff has also filed a Motion to Withdraw Objections (Doc. 230).  The motions are fully briefed and the Court is prepared to rule.  For the reasons explained below, the Court denies Plaintiff's motion for summary judgment, grants Jail Defendants' motion for summary judgment, and grants FCHD Defendants' motion for summary judgment.  The Court also grants Plaintiff's motion to withdraw objections.

Furthermore, the Court determines that the Clerk's entry of default against Dowdy shall be set aside.  The Court gives Plaintiff notice of its intent to enter summary judgment for Dowdy, and orders him to respond to this notice within 30 days or summary judgment will be entered for Dowdy.

## I.    Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[5]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[6]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a

---

[4] Defendant Dowdy did not join the FCHD Defendants' motion.  She did not respond to this suit and the clerk entered default against her on November 16, 2022.  Doc. 170.

[5] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[6] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the non-moving party."[7]  A fact is "material" if, under

the applicable substantive law, it is "essential to the proper disposition of the claim."[8]  A dispute

of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact

could resolve the issue either way."[9]  To prevail on a motion for summary judgment on a claim

upon which the moving party also bears the burden of proof at trial, the moving party must

demonstrate that "no reasonable trier of fact could find other than for the moving party."[10]

The moving party initially must show the absence of a genuine dispute of material fact

and entitlement to judgment as a matter of law.[11]  Once the movant has met the initial burden of

showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial."[12]  The nonmoving

party may not simply rest upon its pleadings to satisfy its burden.[13]  Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial from

which a rational trier of fact could find for the nonmovant."[14]  In setting forth these specific

facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or

specific exhibits incorporated therein."[15]  A nonmovant "cannot create a genuine issue of

---

[7] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[8] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[10] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[11] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[12] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[13] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[14] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[15] *Adler*, 144 F.3d at 671.

material fact with unsupported, conclusory allegations."[16]  A genuine issue of material fact must be supported by "more than a mere scintilla of evidence."[17]

The Court applies this same standard to cross motions for summary judgment.  Each party bears the burden of establishing that no genuine issue of material facts exists and that they are entitled to judgment as a matter of law.[18]  "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[19]  But where the cross motions overlap, the Court may permissibly address the legal arguments together.[20]  Each motion is viewed in the light most favorable to the non-moving party.[21]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.'"[22]  In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary judgment.[23]

In deciding this motion, the Court is mindful that Plaintiff proceeds *pro se*; therefore, the Court must construe his pleadings liberally.[24]  However, *pro se* plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a genuine issue of material fact

---

[16] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[17] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[18] *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[19] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citation omitted).

[20] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

[21] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[23] *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.3d 789, 794 (10th Cir. 1988)).

[24] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

exists.[25]  The Court cannot assume the role of advocate,[26] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[27]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[28]

## II.    Uncontroverted Facts

The following material facts are either uncontroverted, stipulated, or viewed in the light most favorable to the non-moving party.  The Court disregards conclusory allegations without specific supporting facts that do not have probative value[29] and "statements of mere belief."[30] The Court does not consider facts presented by the parties that the record does not support or that are not relevant to the legal issues presented.  Nor does the Court consider legal arguments included in the parties' statements of fact.

Plaintiff was diagnosed with Hep-C in 2003.  Hep-C can be a chronic condition, and some people can live with it for years without a serious increase in liver damage.  Thirty percent of people with Hep-C will clear it without medical treatment.  Plaintiff was diagnosed while serving time for an unrelated offense at a Kansas Department of Corrections ("KDOC") facility. After his release, Plaintiff was arrested in 2015 for a subsequent offense and lodged at FCJ awaiting trial.  Plaintiff was detained in FCJ from February 26, 2015, to March 21, 2019.  During

---

[25] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[26] *Hall*, 935 F.2d at 1110.

[27] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[28] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[29] *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1143 (10th Cir. 2005) (citations omitted).

[30] *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

this time, Plaintiff did not receive treatment for Hep-C and he was not exhibiting symptoms indicating an immediate need for treatment.  It was the FCJ policy to provide medical treatment that was obviously necessary and to follow the recommendations and advice of inmates' physicians concerning treatment.

When Plaintiff was booked into FCJ in 2015, he completed a medical screening form. Plaintiff did not indicate that he had previously tested positive for Hep-C.  In June of 2015, Plaintiff submitted a medical care request form which reported that he had stomach pain. Plaintiff related this stomach pain to the blood pressure medication he was taking, and he was advised by the FCJ nurse, Defendant Newsome, to take the medication with a meal.  Newsome was Plaintiff's first point of contact for medical care.  Newsome acted as liaison between FCJ and FCHD, as well as between FCJ and other health providers.

After Plaintiff continued to report that he was in pain, he was transported to see outside healthcare providers on July 7, 2015.  Plaintiff was also seen by a Compass Health Doctor for stomach pain on September 4, 2015, who recommended that he take his medication with food. Plaintiff filed a request for medical care on September 8, noting that "Dr. Jack" had put him in for a snack at night since his medications hurt his stomach.  Newsome responded that Plaintiff could use commissary for snacks, but that the doctors do not have the authority to make decisions about snacks.  In response, Plaintiff asked to be taken off all medications.

Plaintiff continued to request medical care for his stomach pain and was seen by Newsome on September 17, 2015.  Newsome noted that Plaintiff had high blood pressure and bloating in his stomach, and an APRN at FCHD reviewed the findings and ordered a prescription for omeprazole.  Plaintiff was also scheduled for a visit at FCHD on September 28, 2015.  On this visit, Defendant Britt ordered a CT scan of Plaintiff's stomach, as well as blood work.  The

blood work was completed on September 30, 2015, and indicated that Plaintiff was "reactive" to Hep-C and that he had a bacterial infection (H. pylori).  The lab report stated that supplemental testing was recommended for the Hep-C as clinically indicated.  Based on these results, Britt called Newsome to prescribe antibiotics to treat the bacterial infection and continue the omeprazole.  Britt also noted in a record that Plaintiff's liver enzymes were mildly elevated and that she "[would] attempt to add a hepatitis panel acute."[31]  This panel was not ordered.

Plaintiff had his CT scan on October 14, 2015, which showed a hiatal hernia and possible gastritis, but showed that the liver, gallbladder, pancreas, spleen, and both kidneys were "unremarkable."[32]  Newsome discussed the results of the blood work with Plaintiff on November 9, 2015, regarding both the infection and the Hep-C.[33]  At this time, Newsome provided Plaintiff with information about Hep-C and hernias.  Plaintiff also requested curative treatment for his Hep-C at this time, but Newsome told him that he would not receive treatment because the jail would not pay for it.

Meanwhile, on October 17, 2015, Plaintiff was found unconscious in his cell and sent to the St. Catherine Hospital emergency room, where he remained for three days.  Matthew Byrnes was the emergency room doctor who treated Plaintiff during this time.  In Dr. Byrnes' report, which detailed his attempts to discover the cause of Plaintiff's collapse, he noted that Plaintiff had Hep-C but did not attribute the collapse to the Hep-C, stating "will just monitor this for now."[34]  Dr. Byrnes conducted numerous tests while Plaintiff was in the emergency room,

---

[31] Doc. 217-33.

[32] Doc. 209-4 at 54.

[33] Doc. 209-5 at 3.

[34] Doc. 209-4 at 11–12.

including blood cultures, a "tox screen," lumbar puncture, brain scans, and "EEG."[35] Nevertheless, Dr. Byrnes was not able to identify the cause of Plaintiff's collapse and resulting symptoms, noting on his discharge sheet that he "[did] not have a good explanation for all this."[36]  FCHD records from October 20, 2015, note that Plaintiff was again not taking any of his medications and refusing all care.[37]

On January 14, 2016, Newsome saw Plaintiff for high blood pressure.  At this point, Plaintiff had been refusing to take his medications for months.  Plaintiff agreed to take the medications after she explained the danger of high blood pressure, but only "to prove they don't work."[38]

Plaintiff did not report further stomach pain until August 25, 2017, and he stated on the medical request form that the pain had started three weeks earlier.  In response, Newsome scheduled Plaintiff for an exam at FCHD.  On October 2, 2017,  Defendant Dowdy ordered a "prostrate-specific ag" test ("PSA") and a comprehensive metabolic panel, which included a "hepatitis panel acute."  The results indicated that Plaintiff's PSA levels were elevated and that he was "reactive" to Hep-C.  Regarding the Hep-C panel, the lab noted that retesting on a second sample was needed, if clinically indicated.  Dowdy did not order a second sample for retesting.

On October 9, 2017, Dowdy phoned Newsome and made a written record of the phone call.[39]  In that record, Dowdy wrote that she discussed the Hep-C diagnosis and the elevated PSA with Newsome, and that Newsome indicated that Plaintiff was aware of the Hep-C.  Dowdy also

---

[35] *See id.* at 11–18.

[36] *Id.* at 14.

[37] Doc. 217-15.

[38] Doc. 217-39.

[39] Doc. 209-4 at 58.

noted that Plaintiff had been refusing all recommended medications "for HTN and gastritis" and that Plaintiff refused to provide a stool sample for H. pylori testing.

On November 10, 2017, Plaintiff submitted a medical care request form to Newsome asking about the cure and treatment for Hep-C, as well as why he had not been getting treatment. In response, Newsome consulted Dowdy about whether Plaintiff needed Hep-C treatment, and Dowdy advised that Plaintiff was not symptomatic and not in immediate need of treatment. Not all people with Hep-C should be provided with curative treatment, and patient selection is important to success. Given Plaintiff's non-compliance with medical care, he was not a good candidate for curative treatment. Dowdy and Newsome knew that Plaintiff's stay in the FCJ was temporary, and that the treatment would be available to him without interruption in KDOC.

Plaintiff filed a grievance on January 10, 2018, to FCJ Administrator Defendant Welch, where he complained that FCJ was denying him treatment for Hep-C and his stomach ailment. Welch wrote a response to Plaintiff, explaining in part that Plaintiff did not have a medical need with immediate life threatening implications. Welch also noted that when FCJ did respond to Plaintiff's requests for treatment, Plaintiff did not cooperate and hindered treatment. Welch pointed specifically to Plaintiff's numerous refusals of blood pressure medication and Plaintiff's non-compliance with providing a stool sample. Welch also spoke with medical personnel at FCHD about Plaintiff's request for Hep-C treatment, and was advised that it would be best to let the Hep-C treatment Plaintiff requested be provided at the KDOC facility.

At some point between October and January, Plaintiff provided a stool sample for bacterial testing but it was lost by the laboratory. Newsome informed Plaintiff that it was lost on January 22, 2018, and requested that Plaintiff provide another sample. Plaintiff provided another stool sample on April 12, 2018, and Newsome sent it to the laboratory. On April 30, 2018,

Plaintiff was seen for stomach pain by Dr. Jenna Fry at Genesis, and she prescribed omeprazole and amlodipine, as well as ordered another CT scan.  Plaintiff did not take these medications.

Plaintiff saw Dr. Fry again on May 31, 2018 for a check-up.  Dr. Fry noted that Plaintiff had not been taking his blood pressure medication and that he discontinued omeprazole because it made the pain worse.  Dr. Fry referred Plaintiff to St. Catherine Hospital Dr. Kurt Kessler for a colonoscopy, and Dr. Kessler saw Plaintiff for a medical history and physical exam on June 25, 2018.  Dr. Kessler noted that Plaintiff had Hep-C in his history section, and noted that Plaintiff's liver enzymes were mildly elevated.  Dr. Kessler did not order any testing or treatment for the Hep-C.  After discussion with Plaintiff about the surgical risks, Dr. Kessler scheduled a colonoscopy and upper endoscopy exam to try to find a cause for the stomach pain.  On June 27, 2018, Plaintiff submitted a medical request form stating "don't order meds" and Newsome confirmed that no medication had been ordered.

Dr. Kessler conducted the colonoscopy and upper endoscopy exam on September 24, 2018.  Dr. Kessler found mild antral gastritis and noted that the colonoscopy was totally normal.[40]  Dr. Kessler had a follow-up visit with Plaintiff on October 26, 2018, where he discussed a possible gallbladder ultrasound with Plaintiff and the accompanying officers.  Dr. Kessler also noted the possibility of secondary gain, and continued Plaintiff's Prilosec medication.[41]  On October 28, 2018, Plaintiff filed a medical care request form asking to be taken off his medication.  Newsome responded that Dr. Kessler wanted Plaintiff on the medication long term, but Plaintiff confirmed that he wanted to discontinue the medication.[42]

---

[40] Doc. 209-4 at 56.

[41] Doc. 217-29.

[42] Doc. 217-25.

In 2019, Plaintiff was convicted and transferred to a KDOC facility.  Within a week of Plaintiff's transfer to KDOC, he received testing for Hep-C and was soon enrolled in Hep-C treatment.  Plaintiff was cured of Hep-C within a few months and his liver enzymes were within normal limits.  In July 2019, a KDOC test revealed that Plaintiff had Stage Two fibrosis in his liver, which is identified as moderate fibrosis.

## III.   Discussion

Plaintiff asserts deliberate indifference claims against all Defendants under § 1983, in both their individual and official capacities.  Defendants invoke qualified immunity as a defense to the individual capacity claims.  As explained in detail below, Plaintiff fails to overcome the qualified immunity hurdle because he does not show that Defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs.  He also fails to carry his burden on the second prong of the qualified immunity test to cite to clearly established case law supporting his claim.  The Defendants are entitled therefore to qualified immunity.  Moreover, the Court's finding that Defendants did not violate Plaintiff's constitutional rights precludes official capacity liability.

### A.   Individual-Capacity Claims

Section 1983 provides for suit against a government official to impose individual liability for actions taken under color of state law.[43]  In order to establish individual liability under § 1983, a plaintiff need only show that the official, "acting under color of state law, caused the deprivation of a federal right."[44]  It is Plaintiff's burden under § 1983 "to establish what each

---

[43] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[44] *Id.*

defendant actually did and how that act (or omission) violated [Plaintiff's] constitutional rights."[45]

However, suing a state official in his individual capacity opens the door for the official to assert the defense of qualified immunity, as each individual Defendant asserts here.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions"[46] and protects "all but the plainly incompetent or those who knowingly violate the law."[47]  Defendants' invocation of qualified immunity changes the summary judgment burdens on the individual capacity claims as follows:

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct.  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"[48]

### 1.    Constitutional Violation

To satisfy the first prong of the qualified immunity test, Plaintiff must show that each Defendant violated his constitutional rights by delaying his Hep-C treatment.  As a pretrial detainee, Plaintiff's rights flowed from the Fourteenth Amendment's due process clause, which entitled him "to the same degree of protection regarding medical attention as that afforded

---

[45] *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1273 (10th Cir. 2022) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2013)).

[46] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[47] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

[48] *Estate of Beauford*, 35 F.4th at 1261–62 (quoting *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018)) (citation omitted).

convicted inmates under the Eighth Amendment."[49]  The Eighth Amendment requires that the government provide necessary medical care to those it is punishing by incarceration.[50]  However, prison officials are only liable under the Eighth Amendment when their failure to provide medical care rises to the level of deliberate indifference, which constitutes the "unnecessary and wanton infliction of pain."[51]  Plaintiff must therefore satisfy the deliberate indifference test to overcome the Defendants' invocation of qualified immunity.

"'Deliberate indifference' involves both an objective and a subjective component."[52] "The objective component is met if the deprivation is 'sufficiently serious.'"[53]  Typically, a medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[54]  "But a plaintiff can also satisfy the objective component based on a 'delay in medical care . . . if the delay resulted in substantial harm.'"[55]  Since Plaintiff's Hep-C has been cured, he can only recover for an Eighth Amendment violation under the heightened delay standard.[56]  "[T]he 'substantial harm' caused by a delay in treatment may be a permanent

---

[49] *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citing *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990)); *see Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (citations omitted).

[50] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

[51] *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

[52] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

[53] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[54] *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

[55] *Paugh v. Uintah County*, 47 F.4th 1139, 1155 (10th Cir. 2022) (quoting *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1262 (10th Cir. 2022)).

[56] *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) ("[D]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.") (quoting *Sealock*, 218 F.3d at 1210).

physical injury, or it may be 'an intermediate injury, such as the pain experienced while waiting for treatment and analgesics.'"[57]

The subjective prong of the deliberate indifference test focuses on "the mental state of the defendant regarding the risk of harm."[58]  "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety . . . .'"[59]  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."[60]

### a.    Jail Defendants

Plaintiff must prove that each Jail Defendant was deliberately indifferent to his need for medical treatment to establish a constitutional violation.  Plaintiff does not dispute the evidence in the record detailing the multitude of care he received for his stomach pain, but he argues that he received no treatment for Hep-C.  Specifically, Plaintiff alleges that Newsome was the gatekeeper for the jail and he could not get a referral to a Hep-C specialist without her approval, and that she told him that the jail would not pay for Hep-C treatment because it was too expensive.  Plaintiff asserts that Defendants Lawson, Orebaugh, Welch, and Bascue knew of his need for Hep-C treatment but refused to help.  Plaintiff provides evidence in the record to show that, while he has been cured of Hep-C in KDOC, he has stage two fibrosis in his liver, and he blames this fibrosis on the Jail Defendants' refusal to allow him to access Hep-C specialists.

---

[57] *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006)).

[58] *Estate of Beauford*, 35 F.4th at 1267 (citing *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022)).

[59] *Mata*, 427 F.3d at 751 (quoting *Farmer*, 511 U.S. at 837).

[60] *Farmer*, 511 U.S. at 838.

### i.      Objective Prong

Plaintiff must show that the delay in treating his Hep-C caused him substantial harm. Plaintiff argues that his persistent pain during his time at FCJ, as well as his resulting fibrosis, satisfy the substantial harm requirement.  Jail Defendants argue that Plaintiff has not shown that his liver damage is substantial or that it was caused by the delay in treatment.

"The plaintiff selects 'what harm to claim.'"[61]  Plaintiff references two harms throughout his briefings: (1) the pain he suffered while his treatment was delayed, and (2) fibrosis. Since multiple physicians ordered treatment for Plaintiff's stomach pain, the Court finds that the pain itself was sufficiently serious under the Eighth Amendment.  However, there is no evidence that it was caused by the delay in treating Plaintiff's Hep-C.[62]  None of the medical professionals who treated Plaintiff's stomach pain related the pain to his Hep-C.  Plaintiff himself initially blamed his blood pressure medications for the pain.[63]  All of Plaintiff's medical providers were aware of his Hep-C, as it was included in his medical history and lab reports, but none suggested that the Hep-C could be causing Plaintiff's pain.  Instead, every physician or APRN who treated Plaintiff discounted the Hep-C in their searches for a cause of the pain.  And despite their knowledge of the stomach pain, both Britt and Dowdy declared Plaintiff's Hep-C to be non-symptomatic.  Without evidence showing that the stomach pain was caused by the delay in treating Plaintiff's Hep-C, the stomach pain cannot satisfy the "substantial harm" requirement.

Turning to the fibrosis, there is no reliable information before the Court regarding the symptoms of fibrosis, including whether it is irreversible.  But even assuming it is a sufficiently

---

[61] *Paugh v. Uintah County*, 47 F.4th 1139, 1155 (10th Cir. 2022) (quoting *Mata*, 427 F.3d at 753).

[62] *See Murray v. Edwards Cnty. Sheriff's Dep't*, 248 F. App'x 993, 999 (10th Cir. 2007) ("But while he may have presented evidence of a sufficiently serious harm with respect to his depression, he failed to show that it was *caused* by the continuous illumination of his cell." (citing *Mata*, 427 F.3d at 753)).

[63] Docs. 217-26; 217-23.

serious harm, Plaintiff offers no evidence that it was caused by the delay in treatment during the time in which Plaintiff was incarcerated in the FCJ.  As Defendants point out, Plaintiff has had Hep-C since at least 2003.  The Court cannot determine whether any fibrosis he experienced between 2015 and 2019 is attributable to the 12 years Plaintiff had Hep-C before entering FCJ, or to other factors.

Since Defendants pointed out the absence of evidence on causation, it was Plaintiff's responsibility to come forward with specific facts demonstrating that there was a genuine issue for trial.[64]  Plaintiff argues that causation is clear because a CT scan conducted in 2015 pronounced his liver "unremarkable," whereas KDOC diagnosed him with fibrosis in 2019.  But Plaintiff has not been qualified to interpret medical records and Plaintiff has offered no evidence regarding the nature of CT scans to establish that they can detect fibrosis.  In fact, Plaintiff has not offered any evidence to prove causation other than the fact that he was diagnosed with stage two fibrosis in 2019.  Crucially, the record suggests he might have developed fibrosis at any time between 2003 to 2019.

To satisfy the objective prong of the deliberate indifference test, Plaintiff must show that the delay in treatment resulted in substantial harm.  Viewing the evidence in the light most favorable to Plaintiff, he has not raised a genuine issue of fact regarding causation.  Since Plaintiff fails to satisfy the objective prong of the deliberate indifference test, he also fails to make out a constitutional violation under the first prong of the qualified immunity test.  Therefore, Jail Defendants are entitled to qualified immunity.

### ii.    Subjective Prong

---

[64] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment must enter, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.").

Even if Plaintiff could establish that he suffered substantial harm from the delay in treatment, he fails to establish the subjective prong of deliberate indifference for any of the Jail Defendants.  The subjective prong focuses on the mental state of the defendants regarding the risk of the harm; Plaintiff must show both that Jail Defendants knew of the substantial risk of serious harm, and that they disregarded it.[65]

Plaintiff does not, and could not, argue that any of the Jail Defendants were deliberately indifferent to his stomach pain.  For the record establishes that Plaintiff quickly received care whenever he complained of pain.  Instead, Plaintiff argues that each Jail Defendant knew of the risk of untreated Hep-C and disregarded the substantial risk that Plaintiff would suffer serious harm.  Jail Defendants respond that none of them knew that Plaintiff's Hep-C presented a serious risk of harm, because none of his medical providers ever suggested treatment.

While a court may infer that a prison official knew of a risk from circumstantial evidence,[66]  Plaintiff does not carry his burden in showing that either the risk was obvious, or that any of the Jail Defendants disregarded the risk.  It is uncontroverted that not everyone with Hep-C requires treatment, and that people can go without treatment for many years without significant harm.  At most, the evidence shows that Newsome and Welch knew of a *potential* risk of harm from Hep-C, because they both consulted with FCHD staff regarding whether treatment was necessary.  However, the fact that they consulted with medical staff regarding the potential risk demonstrates care, not indifference.  Moreover, it was reasonable for Newsome and Welch to rely on medical professionals to determine whether any treatment was necessary.

---

[65] *See Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1267 (10th Cir. 2022).

[66] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

"Prison officials generally may rely on the advice and course of treatment prescribed by medical personnel."[67]

Regarding Newsome, the Court finds that she was not deliberately indifferent to Plaintiff's stomach pain or his Hep-C diagnosis.  She was aware of a potential risk due to untreated Hep-C, but she did not disregard this risk.  Rather, she consulted with Plaintiff's APRN, Dowdy, who informed her that (1) there was no need to treat Plaintiff's Hep-C in the jail, and (2) it would be better to wait to treat it until Plaintiff was in KDOC.  Even if cost played a role in Newsome's mind, there is no evidence that cost played a role in Dowdy's recommendation that Plaintiff not be treated immediately.  And regarding Plaintiff's symptoms of stomach pain, Newsome fulfilled her role as gatekeeper by ensuring that Plaintiff had access to care whenever he exhibited a need for a doctor's attention.  "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met."[68]  Newsome ensured that Plaintiff was seen by medical professionals whenever he was in pain, and she followed their advice regarding future treatment for Hep-C.  This behavior cannot be condemned as the wanton infliction of pain.[69]

Turning to Welch, the only evidence in the record of his involvement is that he responded to a grievance requesting treatment for Hep-C, and he consulted with FCHD staff who told him that Plaintiff did not need immediate treatment.  Since Welch consulted with FCHD staff, he was aware of Plaintiff's diagnosis and knew that there was a possible need for treatment.  However,

---

[67] *Estate of Beauford*, 35 F.4th at 1265.

[68] *Id.* at 1270–71 (quoting *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006)).

[69] *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . .").

Welch was advised that Plaintiff did not need Hep-C treatment immediately, and he knew that Plaintiff had received a plethora of treatment for his stomach pain. There is no evidence to support an inference that Welch knew that Plaintiff's Hep-C was serious, nor that he knowingly disregarded such a risk.

Additionally, there is no evidence in the record to raise a genuine issue of material fact that Lawson, Orebaugh, or Bascue knew that Plaintiff's Hep-C presented a substantial risk of serious harm. Plaintiff offers no evidence regarding whether any of these Defendants were even involved in Plaintiff's medical care, other than in responding to grievances.[70] And the grievance forms in the record are insufficient to raise a genuine issue that Bascue, Orebaugh, and Lawson knew that Plaintiff's Hep-C presented any risk at all. Plaintiff asserts that Lawson prevented his grievances from being reviewed, but offers no evidence other than his grievances complaining about this alleged behavior. At most, Plaintiff alleges that Bascue, Lawson, and Orebaugh "failed to act when they became aware that Plaintiff was not getting the medical attention he desired."[71] But without evidence indicating that these Defendants knew of a substantial risk, and disregarded it, Plaintiff cannot satisfy the subjective prong of the deliberate indifference test for Bascue, Orebaugh, or Lawson.

Plaintiff insists that he should have been allowed access to a Hep-C specialist for further testing and treatment. He states that the only reason FCHD staff pronounced him non-symptomatic was because they failed to do any testing that would reveal symptoms. But "the

---

[70] *See Sperry v. Corizon Health, Inc.*, No. 21-3008, 2022 WL 538120, at *4 (10th Cir. Feb. 23, 2022) (noting that the plaintiff had to allege facts showing that prison officials personally participated in constitutional violations, and "the denial of a grievance isn't enough for participation."); *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (stating that "the mere response and denial of [the plaintiff's] grievance are insufficient to establish the requisite personal participation under § 1983).

[71] *Morris v. Berkebile*, No. 14-cv-1296, 2015 WL 5474469, at *7 (D. Colo. Sept. 8, 2015); *see Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 838, 843 (10th Cir. 2004) ("Copying [the Warden] with correspondence outlining his complaints about medical care, without more, does not sufficiently implicate Warden under § 1983.").

decision to conduct specific testing generally falls within the bounds of medical judgment."[72]  It was reasonable for Newsome to rely on Dowdy's determination that Plaintiff did not need further testing, nor treatment.  "Plaintiff's evidence indicates that he was provided, rather than denied, medical attention . . . .  While Plaintiff believes his . . . condition required additional treatment . . . an inference of deliberate indifference cannot be drawn simply because the prisoner 'disagrees with a diagnosis or a prescribed course of treatment.'"[73]  Plaintiff also challenges the credibility of Newsome and Welch's statements regarding their consultations with FCHD staff about Hep-C.  He repeatedly states that there is no evidence that these conversations ever took place.  But Newsome and Welch's affidavits constitute evidence.  Plaintiff offers bare, self-serving assertions that fail to controvert those affidavits.[74]

In sum, Plaintiff fails to raise a genuine dispute regarding whether any of the Jail Defendants were subjectively aware of a substantial risk, let alone whether they disregarded such a risk.  Nor is there evidence to support a finding that the risk was obvious.  Instead, the evidence shows that the Jail Defendants listened to professional medical advice regarding further treatment, and responded to Plaintiff's symptoms with care.  Plaintiff fails to establish the subjective prong of the deliberate indifference test for any of the Jail Defendants and thus fails to establish that he suffered a constitutional violation.  Jail Defendants are entitled to qualified immunity.

### b.  FCHD Defendants

---

[72] *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1272 (10th Cir. 2022) (citing *Self*, 439 F.3d at 1232).

[73] *Mathison v. Wilson*, 719 F. App'x 806, 809 (10th Cir. 2017) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).

[74] *See Perotti v. Serby*, 786 F. App'x 809, 814 (10th Cir. 2019) (noting that affidavits constitute evidence and courts cannot disregard affidavits simply because of the source); *United States v. Stein*, 881 F.3d 853, 857–58 (11th Cir. 2018) (en banc) (stating that affidavits may be used to defeat summary judgment even when they are self-serving).

The main distinction in Plaintiff's § 1983 claims against the FCHD Defendants is that he does not dispute his access to treatment, but rather the adequacy of treatment that FCHD provided.  Specifically, Plaintiff alleges that it was deliberately indifferent for Britt not to order further testing on his lab samples, and for Defendant Perkins not to review Britt's work and correct the error.

Since the objective prong of deliberate indifference focuses on the alleged harm identified by the Plaintiff, rather than what the defendants subjectively knew,[75] the Court's discussion of the objective prong above applies in equal force to the claims against Britt and Perkins.  For the same reasons discussed above, the Court concludes that Plaintiff does not satisfy the objective prong because he does not show that his alleged harms were caused by the delay in Hep-C treatment.

Moreover, Plaintiff fails to satisfy the subjective prong of deliberate indifference for Britt and Perkins.  A medical professional's failure to treat a serious medical condition properly does not necessarily constitute deliberate indifference.[76]  This is because "the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim."[77]  "'[A]bsent an extraordinary degree of neglect,' the subjective component of the deliberate-indifference test is not satisfied 'where a doctor merely exercises his [or her] considered medical judgment.'"[78]

---

[75] *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

[76] *See Estate of Vallina v. Petrescu*, 757 F. App'x 648, 651 (10th Cir. 2018) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

[77] *Mata*, 427 F.3d at 751 (citation omitted).

[78] *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1270 (10th Cir. 2022) (alteration in original) (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Britt cared for Plaintiff in 2015, and she ordered the blood work that revealed Plaintiff was "reactive" to Hep-C.  The lap report stated that further testing was recommended to confirm the diagnosis if "clinically indicated."[79]  Britt did not order further testing.  The Court finds no evidence that Britt was deliberately indifferent by deciding not to follow up on the retesting.  The uncontroverted facts show that Plaintiff was not exhibiting symptoms indicating an immediate need for treatment for Hep-C during the time Britt was involved in his care.  The decision to order a particular test falls squarely within medical judgment,[80] and without contrary evidence that Plaintiff was exhibiting a need for treatment, there is no genuine issue of fact about whether Britt disregarded a known serious risk to Plaintiff's health.

Furthermore, there is no evidence that Perkins was personally involved in Plaintiff's medical care, other than through his supervisory position as Medical Director of FCHD.  But even if Plaintiff properly alleged supervisory liability[81] or personal participation, the uncontroverted evidence shows that Plaintiff did not exhibit symptoms indicating an immediate need to be treated for Hep-C from 2015 to 2019.  Even if Perkins should have perceived a risk, there is no indication that his failure to do so went beyond malpractice to constitute the knowing disregard of a substantial risk of harm.[82]  There simply is no evidence in the record to support a finding that Perkins was deliberately indifferent to Plaintiff's need for treatment.

---

[79] *See* Doc. 209-4 at 1.

[80] *See Estelle*, 429 U.S. at 107 (stating that "the question whether an X-ray or additional diagnostic techniques or forms of treatment *is indicated* is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.") (emphasis added).

[81] To establish supervisory liability, Plaintiff must first establish that a subordinate violated a constitutional right.  *Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023).  As described above, Plaintiff does not do so here.  "Next, a plaintiff must establish three elements to hold a supervisor liable personally: (1) personal involvement; (2) causation; and (3) state of mind."  *Id.* (citing *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)).  Plaintiff does not attempt to satisfy this test.

[82] *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

Plaintiff argues that the care provided by FCHD Defendants was constitutionally inadequate.  But he fails to controvert the fact that he was not symptomatic for Hep-C during the time in which FCHD Defendants were involved in his treatment.  He also fails to controvert the fact that not all patients with chronic Hep-C should be provided curative treatment.  Plaintiff insists that the two lab reports stating further testing was needed if "clinically indicated" were definitive proof that he needed further testing.  But it is uncontroverted that Britt did not think Plaintiff needed further testing when she cared for him in 2015.  It is also uncontroverted that Dowdy did not think Plaintiff needed further testing when she cared for him in 2017.  And finally, it is uncontroverted that, upon a review of Plaintiff's records, Perkins did not think Plaintiff needed treatment during the entire time he was incarcerated in FCJ.

There is simply no evidence that any of the individual FCHD Defendants knowingly disregarded a risk to Plaintiff's health.  Instead, they provided a course of treatment consistent with his symptoms of stomach pain, and determined that Plaintiff did not need further testing or treatment for Hep-C.  Even if those decisions were wrong, the Eighth and Fourteenth Amendments punish only defendants who were deliberately indifferent, not those who made reasonable but mistaken judgment calls.

Since Plaintiff fails to establish either the objective or the subjective prong with respect to Britt or Perkins, they are entitled to qualified immunity on the individual-capacity claims.

### 2.      Clearly Established

Even if Plaintiff could satisfy the first prong of the qualified immunity test by showing that each Defendant was deliberately indifferent to his serious medical needs, he does not carry his burden on the second prong of the test.  It is Plaintiff's responsibility to come forward with specific Supreme Court or Tenth Circuit case law that shows it was clearly established that

Defendants' actions violated the Constitution.[83]  Precedent is considered "on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue."[84]

### a.    Jail Defendants

Here, Plaintiff needed to point to case law finding a constitutional violation under similar circumstances to his own: (1) the detainee was not exhibiting symptoms; (2) his medical providers recommended against treatment; and (3) the jail officials knew that the detainee would receive the treatment once he was transferred to a prison.  Plaintiff has not shown that it was clearly established that delaying Hep-C treatment, under these or similar circumstances, would violate the Constitution.  Nor has Plaintiff shown that any precedent applies with "obvious clarity."[85]

Plaintiff points to landmark Supreme Court cases such as *Estelle*[86] and *Farmer*,[87] which elucidated the deliberate indifference standard.  However, "[t]his general recitation of the deliberate indifference standard cannot provide a source of clearly established law that controls in this case because the statement of law is insufficiently particular to the facts at hand.  'The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality.'"[88]  Plaintiff has not carried his burden of showing that it was clearly established at the time of the alleged violation that the Jail Defendants' conduct violated the Constitution.

---

[83] *See Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017).

[84] *Id.* (internal quotations and emphasis omitted).

[85] *Id.*

[86] *Estelle v. Gamble*, 429 U.S. 97 (1976).

[87] *Farmer v. Brennan*, 511 U.S. 825 (1994).

[88] *Estate of Vallina v. Petrescu*, 757 F. App'x 648, 650 (10th Cir. 2018) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)).

Therefore, even if Plaintiff could overcome the first prong of the qualified immunity test, he fails to overcome the second.  Jail Defendants are entitled to qualified immunity.

### b.    FCHD Defendants

To satisfy the second prong of the qualified immunity test for Britt and Perkins, Plaintiff needed to point to case law from the Tenth Circuit or Supreme Court that found a constitutional violation when medical providers delayed care under similar circumstances to his own.  These circumstances include: (1) a pre-trial detainee who was diagnosed with a chronic condition; (2) the detainee was not symptomatic or in need of immediate treatment; (3) medical providers knew he could receive treatment without disruption upon transfer to a prison; and (4) medical providers chose not to treat the condition immediately.  If Plaintiff could not find similar cases, he needed to cite to precedent that applied to the conduct at issue with obvious clarity.[89]

Instead, Plaintiff cites to the Eighth and Fourteenth Amendments, as well as to landmark deliberate indifference cases, to show that it is clearly established that deliberate indifference to a prisoner's serious medical needs is unconstitutional.  Again, such a general recitation of the law cannot satisfy the second prong of the qualified immunity test.  The deliberate indifference standard itself does not put medical providers on notice that it would violate the Constitution to delay treatment for a patient under these, or similar, circumstances.  Therefore, Plaintiff failed to satisfy his burden on the second prong of the qualified immunity test.  Britt and Perkins are entitled to qualified immunity.

### B.    Official-Capacity Claims

---

[89] *Lowe*, 864 F.3d at 1208 (internal quotations omitted).

Plaintiff asserts official-capacity claims against all Defendants, which is a way of pleading an action against Finney County.[90]  To make out an official capacity claim, Plaintiff must show that the allegedly unconstitutional acts resulted from a government policy or custom, and that there is a causal link between the government's policy or custom and the violations.[91]  However, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[92]  In fact, it would be "inconceivable" to hold a municipality liable where its officers inflicted no constitutional harm.[93]

The Court's finding that the Jail Defendants did not violate Plaintiff's constitutional rights precludes a finding that Finney County is liable for any constitutional violation.  Similarly, the Court's finding that Britt and Perkins did not violate Plaintiff's rights precludes a finding that FCHD can be held liable for the official-capacity claims.  Plaintiff also fails to make out an entity claim against Finney County or FCHD because he does not set forth specific facts showing that the denial of Hep-C treatment resulted from a specific policy or custom, and that there is a causal link between the policy or custom and the denial.[94]  Without such a showing, Plaintiff cannot establish municipal liability.

For all of the reasons stated above, the Court grants both the Jail Defendants' motion for summary judgment and the FCHD Defendants' motion for summary judgment.  Plaintiff's motion for summary judgment is denied.

---

[90] *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[91] *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996).

[92] *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citations omitted).

[93] *Id.* (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

[94] *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996).

### C.    Defendant Dowdy

On Plaintiff's motion,[95] and pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court entered default against Dowdy for her failure to participate in this action.[96]  A clerk's entry of default does not require the Court to award default judgment, but is merely the preliminary step.[97]  The next step is for the party to either (1) request that the Clerk award default judgment when the claim is for "a sum certain or a sum that can be made certain by computation,"[98] or (2) "apply to the court for default judgment."[99]  In the Court's Order directing the Clerk to enter default against Dowdy, Plaintiff was directed to move for default judgment upon resolution of the remaining claims.[100]  However, now that the Court has awarded summary judgment in favor of all other Defendants, the Court considers whether there is good cause to set aside the Clerk's entry of default.[101]

Courts may "set aside an entry of default for good cause."[102]  "In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious

---

[95] Doc. 166.

[96] Doc. 170.

[97] *See* Fed. R. Civ. P. 55(a), (b); *Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment.").

[98] Fed. R. Civ. P. 55(b)(1).

[99] Fed. R. Civ. P. 55(b)(2).

[100] Doc. 169.  *See, e.g.*, *Jetcraft Corp. v. Banpais, S.A. De C.V.*, 166 F.R.D. 483, 485 (D. Kan. 1996).

[101] Fed. R. Civ. P. 55(c); *see Miller v. Madison*, No. 1:12-CV-0874, 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) ("Because Rule 55(c) does not refer to a motion requirement, a court may set aside an entry of default *sua sponte*."); *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) ("[T]he district court had the authority to set aside *sua sponte* an entry of default against [defendant] for good cause.").

[102] *Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x 744, 750 (10th Cir. 2009).

defense is presented.'"[103]  "These factors are not 'talismanic' and the court may consider other factors."[104]  Additionally, courts need not consider all the factors.[105]

Here, Dowdy failed to participate in this suit entirely.  However, Dowdy's default did not prevent Plaintiff from litigating his claims, as it would have in a case with only one defendant.  Instead, Plaintiff has litigated his claims all the way to the summary judgment stage, and the Court has decided the merits of the case by awarding summary judgment in favor of all other Defendants.  Given the resolution of Plaintiff's claims on the merits, the Court finds that there is good cause to set aside the entry of default against Dowdy.[106]

Additionally, the Court hereby provides Plaintiff with notice of its intent to award summary judgment in favor of Dowdy because of the similarity of Plaintiff's allegations, and evidence, against Britt and Dowdy.  Plaintiff alleged that Dowdy was deliberately indifferent to his Hep-C based on the same conduct as Britt.[107]  Just like Britt, Dowdy provided Plaintiff with care for his stomach pain, but did not order further Hep-C testing despite a lab report stating that further testing was needed "if clinically indicated."[108]  Above, the Court decided the merits of this claim in favor of Britt, and it is inclined to apply the same reasoning to decide in favor of Dowdy.  However, pursuant to Fed. R. Civ. P. 56(f)(1), the Court may grant summary judgment for a non-movant only after giving Plaintiff notice and a reasonable time to respond.  Therefore,

---

[103] *Id.* (quoting *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)).

[104] *Hunt v. Ford Motor Co.*, No. 24-3054, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995) (quoting *In re Dierschke*, 975 F.2d at 184).

[105] *Id.*

[106] *See Roberts v. Generation Next, LLC*, No. 18-cv-0975, 2020 WL 1917087, at *4 (D.N.M. Apr. 20, 2020) (finding good cause to set aside a default judgment against a defendant after dismissing all remaining claims against other defendants on the merits.)

[107] Doc. 88.

[108] Doc. 209-4 at 2.

Plaintiff has 30 days to file a response as to why the Court should not enter summary judgment for Dowdy based on its findings above.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Withdraw Objections (Doc. 230) is **granted**, and Plaintiff's Motion for Summary Judgment (Doc. 209) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants Bascue, Lawson, Newsome, Orebaugh, and Welch's Motion for Summary Judgment (Doc. 216) is **granted**, and Defendants Britt, Perkins, and FCHD's Motion for Summary Judgment (Doc. 214) is **granted**.

**IT IS FURTHER ORDERED BY THE COURT** that the Clerk shall **set aside** the Entry of Default against Dowdy (Doc. 170).

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff has **30 days** to respond to the Court's notice of intent to grant summary judgment in favor of Dowdy.

**IT IS SO ORDERED.**

Dated: December 1, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
